```
Printed: 05/09/05          Housing Court Western Division                    Page  01
Updated: 05/09/05                  CASE DOCKET

05-CV-00114
CLOUTIER - v.- TRUSTEES OF MILLBANK PLACE                    FILED
                                                         IN CLERK'S OFFICE

              CA        05 - 30093 MAS             12:20  Next Cal:  /  /
                                                          Last Cal:  /  /
                                                 U.S. DISTRICT CO  App Date:  /  /
                                                 DISTRICT OF MA    Dsp Date:  /  /
                                                                   Interpreter:
```

| No. | Doc | Date | Description | N | C | T | J | W | HCT |
|-----|-----|------|-------------|---|---|---|---|---|-----|
| 1 | 1 | 03/24/05 | Verified Complaint w/ Jury Demand | . | . | . | . | . | jys |
| 2 | 2 | 03/29/05 | Tracking order, track X | x | . | . | . | . | jys |
| 3 | 3 | 04/04/05 | track x issued in error-Atty. notified. | . | . | . | . | . | jys |
| 4 | 4 | 04/04/05 | Tracking order, track A | x | . | . | . | . | jys |
| 5 | 5 | 04/12/05 | Return of service, completed | . | . | . | . | . | mhp |
| 6 | 6 | 04/12/05 | Certificate of serv w/reference to track | . | . | . | . | . | mhp |
| 7 | 7 | 04/22/05 | Notice of filing of removal | . | . | . | . | . | mhp |
| 8 | 8 | 05/09/05 | Cert. copies forwarded to U.S. District | . | . | . | . | . | csc |

A TRUE COPY
IN WITNESS WHEREOF, I hereunto set
my hand, and have caused the seal of
the Housing Court for the County of
Hampden to be affixed on  05-07-05

_Karen Cutush_
Asst Clerk



COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, ss.                         HOUSING COURT DEPARTMENT
                                       WESTERN DIVISION
                                       CIVIL ACTION NO. 05CV114

---

COLLEEN A. CLOUTIER and DONALD L. CLOUTIER,    )
              Plaintiffs                        )
                                                )
vs.                                             )
                                                )
TRUSTEES OF MILLBANK PLACE CONDOMINIUM          )
TRUST, HAMPSHIRE PROPERTY MANAGEMENT GROUP      )
INC., and MARCUS, ERRICO, EMMER & BROOKS, P.C., )
              Defendants                        )

---

## <u>NOTICE OF FILING OF REMOVAL</u>

Pursuant to 28 U.S.C. § 1446(d), the Defendants, Trustees of Millbank Place

Condominium Trust, Hampshire Property Management Group, Inc., and Marcus, Errico,

Emmer & Brooks, P.C., hereby give notice that on April 21, 2005 they have filed with the

United States District Court for the District of Massachusetts the attached Notice of

Removal, thereby removing this case to that Court and precluding action in the

Commonwealth of Massachusetts Housing Court – Western Division, unless and until the

case is remanded.





A TRUE COPY
IN WITNESS ...... ......          ......nto set
my hand, and have ....... ....... the seal of
the Housing Court for the County of
Hampden to be affixed on 5-0 f-05
_____
Asst. Clerk

Respectfully submitted,

Counsel for the Defendants,

Trustees of Millbank Place
Condominium Trust, Hampshire
Property Management
Group, Inc., and Marcus,
Errico, Emmer & Brooks, P.C.

*Paul J Barresi*

Paul J. Barresi/BBO #566757
Marcus Errico Emmer & Brooks , PC
45 Braintree Hill Office Park #107
Braintree MA  02154
781-843-5000

DATED:  April 21, 2005

## CERTIFICATE OF SERVICE

I, Paul J. Barresi, hereby certify that on April 21, 2005, I served the foregoing

Defendants' Notice of Filing of Removal by mail, first class postage prepaid to:

Joseph J. Lange, Esq.
Lyon & Fitzpatrick, LLP
14 Bobala Road, 4th Floor
Holyoke, MA 01040

*Paul J Barresi*

Paul J. Barresi

# EXHIBIT A

-IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

CIVIL ACTION NO. _____

COLLEEN A. CLOUTIER and DONALD L. CLOUTIER,       )
       Plaintiffs                                    )
                                                 )
vs.                                                    )
                                               )
TRUSTEES OF MILLBANK PLACE CONDOMINIUM       )
TRUST, HAMPSHIRE PROPERTY MANAGEMENT GROUP  )
INC., and MARCUS, ERRICO, EMMER & BROOKS, P.C.,   )
       Defendants                                 )
                                               )

## **NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446(d), the Trustees of

Millbank Place Condominium Trust, Hampshire Property Management Group, Inc., and

Marcus, Errico, Emmer & Brooks, P.C., which parties are all of the Defendants in the

case of <u>Colleen A. Cloutier and Donald L. Cloutier vs. Trustees of Millbank Place</u>

<u>Condominium Trust, Hampshire Property Management Group, Inc., and Marcus, Errico,</u>

<u>Emmer & Brooks, P.C.</u>, Case No. 05 CV 114, Western Division Housing Court of the

Commonwealth of Massachusetts, hereby remove said case to the United States District

Court for the District of Massachusetts.  As grounds for their removal, the Defendants

state as follows:

1.      On or about April 1, 2005, the Defendants, or some of them, received a

copy of the complaint and summons in the case captioned <u>Colleen A. Cloutier and</u>

<u>Donald L. Cloutier vs. Trustees of Millbank Place Condominium Trust, Hampshire</u>

Property Management Group, Inc., and Marcus, Errico, Emmer & Brooks, P.C., Case No.
05 CV 114, Western Division Housing Court of the Commonwealth of Massachusetts.

2.    Pursuant to 28 U.S.C. § 1441(b), the United States District Court for
Massachusetts has jurisdiction over this case, and thus the case is properly removable.
More specifically, Count VII of the Plaintiffs' complaint alleges that two of the
Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k. Because
the Plaintiffs allege that a federal statute has been violated, removal to federal court is
proper.

3.    A state action that includes a federal claim may be removed by the
Defendant to federal court.  Ching v. Mitre, 921 F.2d 11 (1st Cir. 1990).

4.    When deciding, for removal purposes, whether a case presents a federal
claim or right, a court is to ask whether the plaintiff's claim to relief rests upon a federal
right and the court is to look only to the plaintiff's complaint to find the answer.
Kingsley v. Lania, 221 F.Supp. 93 (D.Mass. 2002).

5.    Pursuant to 28 U.S.C. § 1446(d), the Defendants have given notice of the
removal of this case to Plaintiffs' counsel in accordance with the attached certificate of
service, and the Defendants have filed a copy of this notice with the clerk of
Commonwealth of Massachusets Western Division Housing Court, the state court from
which this case has been removed.

Respectfully submitted,

Counsel for the Defendants

Trustees of Millbank Place
Condominium Trust, Hampshire
Property Management
Group, Inc., and Marcus,
Errico, Emmer & Brooks, P.C.

Paul J. Barresi/BBO #566757
Marcus Errico Emmer & Brooks , PC
45 Braintree Hill Office Park #107
Braintree MA  02154
781-843-5000

DATED:  April 21, 2005

CERTIFICATE OF SERVICE

I, Paul J. Barresi, hereby certify that on April 21, 2005, I served the foregoing Defendants' Notice of Removal upon Joseph J. Lange, Esq., Lyon & Fitzpatrick, LLP, 14 Bobala Road, 4th Floor, Holyoke, MA 01040 by mail, first class postage prepaid.

Paul J. Barresi

# *COMMONWEALTH OF MASSACHUSETTS*
## HOUSING COURT DEPARTMENT
## OF THE TRIAL COURT

Hampden, ss.

Western Division
Docket No.: 05 CV 114

|  |  |
|---|---|
| *COLLEEN A. CLOUTIER and DONALD L.* *CLOUTIER,* | ) |
| Plaintiffs | ) |
| v. | ) |
|  | ) *CERTIFICATE OF SERVICE* |
| *TRUSTEES OF MILLBANK PLACE* | ) |
| *CONDOMINIUM TRUST, HAMPSHIRE PROPERTY* | ) |
| *MANAGEMENT GROUP, INC. and MARCUS,* | ) |
| *ERRICO, EMMER & BROOKS, P.C.,* | ) |
| Defendants | ) |

   I, Joseph J. Lange, Esquire, hereby certify that on April 8, 2005 I served the within Tracking Order "A" upon all parties of interest in this case by mailing copies, thereof, postage prepaid to:

Hampshire Property Management Group, Inc.
15 Brewster Court
Northampton, MA 01060

Paul J. Barresi, Esquire
Marcus, Errico, Emmer & Brooks, P.C.
45 Braintree Hill Office Park, Suite 107
Braintree, MA 02184

Trustees of Millbank Place Condominium Trust
351 Pleasant Street
Northampton, MA 01060

A TRUE COPY
IN WITNESS WHEREOF, I hereunto set
my hand and have caused the seal of
the Housing Court for the County of
Hampden to be affixed on 05-09-05
*[signature]*
Asst Clerk

*[signature]*
Joseph J. Lange, Esquire - BBO# 564577
Lyon & Fitzpatrick, LLP
14 Bobala Road, 4th Floor
Holyoke, MA 01040
(413) 536-4000 - Fax (413) 536-3773

U:\WP80\C\Cloutier\CertificateOfService.wpd

COMMONWEALTH OF MASSACHUSETTS
HOUSING COURT WESTERN DIVISION

COLLEEN A. CLOUTIER

                    Plaintiff

            - v. -                            No. 05-CV-00114

TRUSTEES OF MILLBANK PLACE

                    Defendant

### TRACKING ORDER "A"

    Please take notice pursuant to Standing Order 1-04 that the
above entitled matter is assigned to the AVERAGE "A" TRACK and that
the following deadlines apply:

| | | |
|---|---|---|
| Service of process and returns of service | 90 days | 07/04/2005 |
| Case management conference | 120 days | 08/02/2005 |
| Rule 12, 19, 20 motions | 150 days | 09/01/2005 |
| Rule 15 motions, discovery completed | 450 days | 06/28/2006 |
| Rule 56 motions | 840 days | 07/23/2007 |
| Rule 16 pretrial conference and trial set | 960 days | 11/20/2007 |
| Case disposed | 1080 days | 03/19/2008 |

    The plaintiff is required to serve a copy of this tracking
order on all defendants before the deadline for filing return of
service.

                                _____
                                Robert G. Fields
                                Clerk Magistrate

Date: April 04, 2005

ECMS: TRACK-A

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT     CONTRACT     EQUITABLE RELIEF     OTHER

# Commonwealth of Massachusetts

HOUSING COURT DEPARTMENT                           WESTERN DIVISION

Civil Action No: ___05 CV 114_____

COLLEEN A. CLOUTIER and
DONALD L. CLOUTIER_____, Plaintiff (s)

     v.                                    **SUMMONS**

TRUSTEES OF MILLBANK PLACE CONDOMINIUM
TRUST, HAMPSHIRE PROPERTY MANAGEMENT
GROUP, INC. and MARCUS, ERRICO,_____, Defendant(s)
EMMER & BROOKS, P.C.

To the above-named Defendant:   Hampshire Property Management Group, Inc.

  You are hereby summoned and required to serve upon  Joseph J. Lange, Esquire_____,
plaintiff's attorney, whose address is  Lyon & Fitzpatrick, LLP
14 Bobala Road, 4th Floor, Holyoke, MA 01040_____
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be
taken against for the relief demanded in the complaint. You are also required to file your answer to
the complaint in the office of the Clerk of this court at Springfield either before service upon
plaintiff's attorney or within a reasonable time thereafter.

  Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any
other action.

  WITNESS, William H. Abrashkin, Esquire, at Springfield, _____
IN WITNESS whereof, I hereunto set
my hand, and have caused the seal of
the Housing Court for the County of
Hampden to be affixed on 05-09-05

_Kален Ann Hall_
    Asst Clerk                                    Clerk-Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedures.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
  If separate summons are used for each defendant, each should be addressed to the particular
  Defendant.

cls: 11-16-00

                      (4)

COMMONWEALTH OF MASSACHUSETTS
HOUSING COURT WESTERN DIVISION
_____

COLLEEN A. CLOUTIER

                    Plaintiff

        - v. -                              No. 05-CV-00114

TRUSTEES OF MILLBANK PLACE

                    Defendant

_____


### TRACKING ORDER "A"

     Please take notice pursuant to Standing Order 1-04 that the
above entitled matter is assigned to the AVERAGE "A" TRACK and that
the following deadlines apply:

| | | |
|---|---|---|
| Service of process and returns of service | 90 days | 07/04/2005 |
| Case management conference | 120 days | 08/02/2005 |
| Rule 12, 19, 20 motions | 150 days | 09/01/2005 |
| Rule 15 motions, discovery completed | 450 days | 06/28/2006 |
| Rule 56 motions | 840 days | 07/23/2007 |
| Rule 16 pretrial conference and trial set | 960 days | 11/20/2007 |
| Case disposed | 1080 days | 03/19/2008 |

     The plaintiff is required to serve a copy of this tracking
order on all defendants before the deadline for filing return of
service.

                                    _____
                                    Robert G. Fields
                                    Clerk Magistrate

Date: April 04, 2005                        A TRUE COPY
                              IN WITNESS WHEREOF, I hereunto set
                              my hand, and have caused the seal of
                              the Housing Court for the County of
ECMS: TRACK-A                 Hampden to be affixed on  05-09-05
                              _____
                                    Asst Clerk

```
Mailing list: April 04, 2005                      FILE COPY

P1 ATTY
Joseph J. Lange, Esq.
Lyon, Ferriter & Fitzpatrick, LLP
14 Bobala Road - Whitney Place
Holyoke, MA 01040

P2 ATTY
Joseph J. Lange, Esq.
Lyon, Ferriter & Fitzpatrick, LLP
14 Bobala Road - Whitney Place
Holyoke, MA 01040

D1
Trustees of Millbank Place
Condo. Trust

Northampton, MA

D2
Hampshire Prop. Mgmt.
Group, Inc.
15 Brewster Court
Northampton, MA

D3
Marcus, Errico, Emmer &
Brooks, PC
45 Braintree Hill Office Park, Suite 107
Braintree, MA
```

```
ECMS: ADDRESS                                   FILE COPY
```

COMMONWEALTH OF MASSACHUSETTS
HOUSING COURT WESTERN DIVISION
_____

COLLEEN A. CLOUTIER

                    Plaintiff

        - v.-                              No. 05-CV-00114

TRUSTEES OF MILLBANK PLACE

                    Defendant

_____

### TRACKING ORDER "X"

    Please take notice pursuant to Standing Order 1-04 that the
above entitled matter is assigned to the ACCELERATED "X" TRACK and
that the following deadlines apply:

| | | |
|---|---|---|
| Service of process | 10 days | 04/08/2005 |
| Returns of service filed | 30 days | 04/28/2005 |
| Motions hearing | 21 days | 04/19/2005 |
| Discovery completed | 65 days | 06/02/2005 |
| Rule 16 pretrial conference and trial set | 65 days | 06/02/2005 |
| Case disposed | 95 days | 07/04/2005 |

    The plaintiff is required to serve a copy of this tracking
order on all defendants before the deadline for filing return of
service.



                              _____
                              Robert G. Fields
                              Clerk Magistrate

Date: March 29, 2005                    A TRUE COPY
                              IN WITNESS WHEREOF, I hereunto set
                              my hand, and have caused the seal of
                              the Housing Court for the County of ___
                              Hampden to be affixed on  05-09-05

ECMS: TRACK-X                 _____
                              Asst Clerk



Mailing list: March 29, 2005                              FILE COPY

P1 ATTY
Joseph J. Lange, Esq.
Lyon, Ferriter & Fitzpatrick, LLP
14 Bobala Road - Whitney Place
Holyoke, MA 01040

P2 ATTY
Joseph J. Lange, Esq.
Lyon, Ferriter & Fitzpatrick, LLP
14 Bobala Road - Whitney Place
Holyoke, MA 01040

D1
Trustees of Millbank Place
Condo. Trust

Northampton, MA

D2
Hampshire Prop. Mgmt.
Group, Inc.
15 Brewster Court
Northampton, MA

D3
Marcus, Errico, Emmer &
Brooks, PC
45 Braintree Hill Office Park, Suite 107
Braintree, MA

ECMS: ADDRESS                                           FILE COPY

# COMMONWEALTH OF MASSACHUSETTS
## HOUSING COURT DEPARTMENT
### OF THE TRIAL COURT

Hampshire, ss.

Western Division
Civil Action No.

0 5 C V 1 1 4

————————————————  )
*COLLEEN A. CLOUTIER and DONALD L.*  )
*CLOUTIER,*  )
       Plaintiffs  )
v.  )
   )
*TRUSTEES OF MILLBANK PLACE*  )
*CONDOMINIUM TRUST, HAMPSHIRE PROPERTY*  )
*MANAGEMENT GROUP, INC. and MARCUS,*  )
*ERRICO, EMMER & BROOKS, P.C.,*  )
       Defendants  )
————————————————  )

## VERIFIED COMPLAINT WITH JURY DEMAND

1.    The Plaintiffs, Colleen A. Cloutier and Donald L. Cloutier (hereinafter referred to as the "CLOUTIERS") are adult individuals residing at 38 Manor House Court, Holyoke, Massachusetts.

2.    The Defendant, the Trustees of the Millbank Place Condominium Trust (hereinafter referred to as the "TRUSTEES"), are the duly elected/appointed members of the governing body of the Millbank Place Condominium Trust under a Declaration of Trust recorded with the Registry of Deeds which Organization of Unit Owners is the organization of unit owners of the Millbank Place Condominium, a condominium established by Master Deed dated October 24, 1986 and recorded with the Hampshire County Registry of Deeds (hereinafter referred to as "Registry of Deeds") in Book 2833, Page 241, (hereinafter referred to as the "Condominium"). The Condominium is located in Northampton, Hampshire County, Massachusetts.

1

3.      The Defendant, Hampshire Property Management Group, Inc. (hereinafter referred to as "HAMPSHIRE PROPERTY MANAGEMENT") is a Massachusetts corporation having a place of business at 15 Brewster Court, Northampton, Massachusetts.

4.      The Defendant, Marcus, Errico, Emmer & Brooks, P.C. (hereinafter referred to as "MARCUS, ERRICO") is a Massachusetts corporation having a place of business at 45 Braintree Hill Office Park, Suite 107, Braintree, Massachusetts.

5.      The CLOUTIERS were record owners of Unit #12 at the Condominium (hereinafter referred to as the "Unit"), pursuant to a Unit Deed dated May 10, 2001 and recorded with the Registry of Deeds in Book 6207, Page 25.

## FACTS

6.      Ownership of the Unit is subject to the terms of the Master Deed including membership in the organization of Unit Owners.

7.      Pursuant to §6(B) of the Master Deed, the "common elements" consist of:

        "All portions of the Building at 351 Pleasant Street not included in any Unit by Virtue of Paragraph (5) above, including, without limitation, the following to the extent such may exist from time to time:

        (i)     The foundations, structural members, beams, supports, exterior walls, exterior doors, frames for the exterior windows and doors leading from Units to common areas, roof and entrances and exits of the Building, common walls within the Building, and structural walls or other structural components contained entirely within any Unit;"

        A copy of the Master Deed is attached hereto as Exhibit "A."

8.      Pursuant to §6(D) of the Master Deed, "the glass in windows of the Unit are not Common Elements."

9.      Section 11(A) of the Master Deed states as follows:

        "(A) The organization through which the Unit Owners will manage and regulate the Condominium established hereby is the Condominium Trust.   The Condominium Trust establishes an organization of which the Unit Owners shall be members and in which Unit Owners shall have Beneficial Interest in

2

proportion to the percentage of undivided interest in the Common Elements of the Condominium to which they are entitled under this Master Deed."

10. Section 14 of the Master Deed, states as follows:

"Each Unit Owner shall have an easement in common with owners of all other Units to use all pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements located in any of the other Units serving his Unit. Each Unit shall be subject to use of the pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements serving such other Units and located in such Unit. The Trustee shall have a right of access to each Unit to inspect the same, to remove violations therefrom, and to maintain, repair, or replace the Common Elements contained therein or elsewhere in the Building."

11. Exhibit 3 to the Master Deed identifies the boundaries of the units. It defines the boundary of the Units as it pertains to windows as the interior surface of the glass and window frames.

12. On or about October 18, 2002, the Plaintiff, Colleen Cloutier, notified the TRUSTEES that the "window" in the dining room roof area of the Unit leaked, causing water damage to the CLOUTIERS' personal property and damage to the walls and floors of the Unit. A copy of the letter is attached hereto as Exhibit "B."

13. On or about October 30, 2002, the Defendant, HAMPSHIRE PROPERTY MANAGEMENT responded to the Plaintiff, Colleen Cloutier's request for repairs, and indicated that the TRUSTEES' responsibility for making said repairs was uncertain. A copy of the letter is attached hereto as Exhibit "C."

14. The CLOUTIERS believe that the "window" is part of the roof as it is a skylight and not the responsibility of the CLOUTIERS to maintain and repair, but solely the responsibility of the TRUSTEES. Alternatively, the leak is caused by faulty common elements which is the responsibility of the TRUSTEES.

15. On December 27, 2002, HAMPSHIRE PROPERTY MANAGEMENT made demand on the CLOUTIERS' tenants to make further rent payments to the TRUSTEES.

16. On March 25, 2003, the TRUSTEES through MARCUS, ERRICO made demand on the CLOUTIERS' tenants to make further rent payments to the TRUSTEES.

17. The CLOUTIERS' tenants failed to pay rent from April 2003 (partial payment of $310.00) to their vacating the Unit in early September 2003.

3

18. The rental rate for the Unit was $1,200.00.

19. Based on the TRUSTEES' failure to make repairs, the CLOUTIERS' tenants failed to pay their rent to the CLOUTIERS.

20. Due to the failure of the TRUSTEES to make repairs to the Unit which is their responsibility, the CLOUTIERS were unable to rent the Unit to their financial detriment.

21. Due to the failure of the TRUSTEES to make repairs to the three skylights in the Unit, the CLOUTIERS had to place the Unit up for sale in November 2003.

22. On November 17, 2003, the CLOUTIERS signed Agreement to Purchase to sell the Unit with a provision that the TRUSTEES remedy the water leak above the sunroom or have a scheduled plan for such repairs.

23. Subsequently, the prospective purchaser was prepared to close as early as January 28, 2004. However due to HAMPSHIRE PROPERTY MANAGEMENT and MARCUS, ERRICO's failure to respond to the CLOUTIERS' or the buyer's requests for a schedule of repairs the closing was continued.

24. From July 25, 2003 to March 9, 2004, the TRUSTEES failed to respond to the CLOUTIERS' counsel's request to repair the water damage, provide an accounting as to the outstanding amount owed and provide the CLOUTIERS with an itemized reinstatement amount to cure the obligation allegedly owed by the CLOUTIERS.

25. In response to CLOUTIERS counsel's written request of July 25, 2003, MARCUS, ERRICO first provided the CLOUTIERS with a written itemization on March 10, 2004.

26. After March 10, 2004, MARCUS, ERRICO first confirmed in writing to the CLOUTIERS' counsel and CLOUTIERS that MARCUS, ERRICO or HAMPSHIRE PROPERTY MANAGEMENT had not collected any rent from the CLOUTIERS' tenants.

27. On or about March 10, 2004, the TRUSTEES attempted to make repairs to the skylights at the Unit. Lizotte Glass Inc. indicated that all three glass units of the skylights needed to be repaired as two panes of glass were filled with water and one was fogged.

28. Based on the delay in the TRUSTEES making repairs, the closing on the Unit was re-scheduled to take place on April 23, 2004. However, during a "walk through" of the Unit on the evening of April 22nd, the skylights were leaking water.

4

29.   As such, the prospective buyer would not close due to the water leaks and at the same time her interest rate on the loan was to expire as of April 23, 2004. Therefore, it cost the CLOUTIERS an additional $359.00 to relock the buyer's interest rate as she was holding the CLOUTIERS responsible for the delay. Furthermore, the buyer refused to close until the skylights were replaced to make certain that there were no more water leaks.

30.   The skylights were repaired on or about May 18, 2004. The TRUSTEES made the CLOUTIERS pay $ 1,193.00 of the $3,579.00 for the repairs representing one pane of glass.

31.   During the time between the Tenants failing to pay rent and the sale of the Unit, the CLOUTIERS continue to accrue condominium fees to the TRUSTEES and pay interest to Northampton Cooperative Bank on the note secured by a first mortgage on the Unit. In addition, the CLOUTIERS accrued additional real estate taxes to the City of Northampton.

32.   The Unit was sold to a third party on May 19, 2004.

33.   The CLOUTIERS have subsequently learned that the only similar Unit to theirs at the Condominium was experiencing the same water leaks with the same "opening" and the TRUSTEES repaired the problem and presumably at the TRUSTEES' cost a lengthy time before the TRUSTEES repaired the CLOUTIERS' skylights.

34.   The TRUSTEES on various occasions have asserted that the Declaration of Trust, §2 allegedly states, "common expenses, profit and funds, b. budget states, 'the Board of Trustees may assess a late charge of ten ($10.00) dollars per month for each late payment or a part thereof if the amount due is not paid by the tenth (10th) day of each month that the amount due remains unpaid. The amounts due hereunder, together with late charges shall constitute a lien on the unit."

35.   The TRUSTEES have assessed excessive late charges against the CLOUTIERS by compounding the late charge for each month. A copy of the CLOUTIERS' ledger provided by the TRUSTEES' agent, MARCUS, ERRICO, is attached hereto as Exhibit "D."

36.   During the Spring of 2004, the Cloutiers' counsel obtained payoff figures for the outstanding amount owed on the Unit which were as follows:

    1.     March 10, 2004       $7,047.84;
    2.     April 5, 2004         $7,524.60;
    3.     April 30, 2004       $7,833.60; and
    4.     May 13, 2004        $8,634.36.

Copies of the payoff figures are attached hereto collectively as Exhibit "E."

37.   At the time, the monthly condominium charge on the Unit was $184.76. The additional charges are for either attorney's fees and/or late charges.

38.   As for the attorney's fees and any continued monthly charges, any fees incurred by the TRUSTEES were due to their failure to repair the skylights, and the CLOUTIERS are not responsible.

39.   On or about October 27, 2004, the CLOUTIERS through counsel sent a demand letter to the Defendants in accordance with M.G.L. c. 93A, § 9 ("Demand Letter") which letter was received by them. A copy of the letter is attached hereto as Exhibit "F".

40.   On or about November 24, 2004, the Defendants, through counsel, sent a letter to the CLOUTIERS' counsel, in reply to the Demand Letter. In this letter, the Defendants denied any and all liability and made an unacceptable offer of settlement. A copy of the reply letter is attached hereto as Exhibit "G" ("Reply Letter").

## COUNT I
## (BREACH OF CONTRACT)

41.   The CLOUTIERS reallege paragraphs 1 through 40, supra, with full force and effect as if restated herein.

42.   The TRUSTEES breached the Master Deed by failing to maintain, repair and to replace the Common Elements.

43.   The CLOUTIERS suffered damages to the Unit and their personal property by the failure of the TRUSTEES to stop the water damage to the CLOUTIERS' Unit caused by faulty Common Elements.

44.   The failure of the TRUSTEES to respond timely to such requests is also a breach of contract.

45.   As a result of the TRUSTEES' breaches of contract, the CLOUTIERS have suffered damages including but not limited to lost rental income, lost of the use of the unit, additional condominium charges, interest charges to Northampton Cooperative Bank and damage to their personal property.

## COUNT II
## (NEGLIGENCE)

46.   The CLOUTIERS reallege paragraphs 1 through 45, supra, with full force and effect as if restated herein.

47.   The TRUSTEES acted and/or failed to act so negligently or recklessly as to cause damage to the CLOUTIERS.

48.   As a result of the TRUSTEES' negligence, the CLOUTIERS have suffered damages including but not limited to lost rental income, lot of the use of the unit, additional condominium charges, interest charges to Northampton Cooperative Bank and damage to their personal property.

## COUNT III
## (BREACH OF IMPLIED WARRANTY)

49.   The CLOUTIERS reallege paragraphs 1 through 48, supra, with full force and effect as if restated herein.

50.   The Unit was purchased by the CLOUTIERS subject to the Master Deed of the TRUSTEES which includes provisions including but not limited to the requirement that the TRUSTEES would maintain, repair and replace the Common Elements so that the Unit would be fit for quiet enjoyment, use, occupation and conveyance.

51.   As of October 18, 2002, the TRUSTEES were aware that repairs to the Unit needed to be done, but the TRUSTEES failed to remedy the defects to the Unit.

52.   The failure of the TRUSTEES to make said repairs so that the Unit would be fit for quiet enjoyment, use, occupation and conveyance is a breach of the implied warranty between the parties.

53.   As a result of the TRUSTEES' breach, the CLOUTIERS have suffered damages including but not limited to lost rental income, interest charges to Northampton Cooperative Bank and damage to their personal property.

7

## COUNT IV
## (BREACH OF EXPRESS WARRANTY)

54.    The CLOUTIERS reallege paragraphs 1 through 53, supra, with full force and effect as if restated herein.

55.    The Unit was purchased by the CLOUTIERS subject to the Master Deed of the TRUSTEES which includes provisions including but not limited to the requirement that the TRUSTEES would maintain, repair and replace the Common Elements so that the Unit would be fit for quiet enjoyment, use, occupation and conveyance.

56.    As of October 18, 2002, the TRUSTEES were aware that repairs to the Unit needed to be done, but the TRUSTEES failed to remedy the defects to the Unit.

57.    The failure of the TRUSTEES to make said repairs so that the Unit would be fit for quiet enjoyment, use, occupation and conveyance is a breach of the express warranty between the parties.

58.    As a result of the TRUSTEES' breach, the CLOUTIERS have suffered damages including but not limited to lost rental income, lost of the use of the unit, additional condominium charges, interest charges to Northampton Cooperative Bank and damage to their personal property.

## COUNT V
## (BREACH OF FIDUCIARY DUTY)

59.    The CLOUTIERS reallege paragraphs 1 through 58, supra, with full force and effect as if restated herein.

60.    The Unit was purchased by the CLOUTIERS subject to the Master Deed of the TRUSTEES which includes provisions including but not limited to the requirement that the TRUSTEES would maintain, repair and replace the Common Elements so that the Unit would be fit for use, occupation and conveyance.

61.    As of October 18, 2002, the TRUSTEES were aware that repairs to the Unit needed to be done, but the TRUSTEES failed to remedy the problems to the Unit.

62.    Based on the relationship of the parties, the TRUSTEES have a fiduciary duty to the CLOUTIERS.

8

63.  The failure of the TRUSTEES to make said repairs so that the Unit would be fit for use, occupation and transfer is a breach of the TRUSTEES' fiduciary duty.

64.  In addition, the TRUSTEES by attempting to collect rents from the CLOUTIERS' tenants had a fiduciary duty to account to the CLOUTIERS for the rents and advise the CLOUTIERS as to the status so that they could attempt to collect the rents.

65.  As a result of the TRUSTEES' breach of fiduciary duty, the CLOUTIERS have suffered damages including but not limited to lost rental income, interest charges to Northampton Cooperative Bank and damage to their personal property.

## COUNT VI
## (VIOLATIONS OF M.G.L. c. 271 §49)

66.  The CLOUTIERS reallege paragraph 1 through 65, supra, with full force and effect as if restated herein.

67.  By the TRUSTEES compounding the late charges each month for each late monthly condominium charge, it is punitive in nature.

68.  As the late charges exceed 20% annual interest, it is a usurious interest rate.

69.  The late charges exacted from the CLOUTIERS by the TRUSTEES are unconscionable, grossly excessive, in violation of the law, and constitute an usurious consideration.

70.  The TRUSTEES are in violation of M.G.L. c. 271, §49.

71.  The CLOUTIERS have suffered damages.

## COUNT VII
## (VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT)

72.  The CLOUTIERS reallege paragraphs 1 through 71, supra, with full force and effect as if restated herein.

73.  On numerous occasions, the agent of the TRUSTEES, Hampshire Property Management Group has sent communications to the CLOUTIERS demanding money in violation of 15 U.S.C. §1692e including but not limited to the letters from Hampshire Property Management which are attached hereto collectively as Exhibit "H".

74.  The CLOUTIERS are entitled to damages as allowed under 15 U.S.C. §1692k.

## COUNT VIII
## (VIOLATIONS OF M.G.L. C.93A)

75. The CLOUTIERS reallege paragraphs 1 through 74, supra, with full force and effect as if restated herein.

76. At all times relevant hereto, the Defendants were engaged in trade or commerce within the Commonwealth of Massachusetts.

77. The TRUSTEES have engaged in unfair and deceptive acts and/or practices undertaken wilfully and knowingly to the detriment of the CLOUTIERS by allowing water damage to the Unit when the failure to repair the skylight is the responsibility of the TRUSTEES. In addition, the TRUSTEES violated M.G.L. c. 93A by failing to take responsibility to make those repairs.

78. The TRUSTEES, HAMPSHIRE PROPERTY MANAGEMENT and/or MARCUS, ERRICO by violating the usury laws under M.G.L. c. 271, §49 have violated M.G.L. c. 93A.

79. The TRUSTEES or its agents, HAMPSHIRE PROPERTY MANAGEMENT and MARCUS, ERRICO in the collection of the condominium fees and attorney's fees have violated 940 CMR 7.04 and 7.07.

80. The TRUSTEES or its agents by violating 940 CMR 7.04 and 7.07 have also violated M.G.L. c. 93A.

81. The refusal to offer relief was made in bad faith with knowledge or reason to know that the acts of the Defendants violated M.G.L. c. 93A, § 2.

82. The acts of the Defendants constitute an unfair or deceptive act or practice within the meaning of M.G.L. c. 93A, §§ 2 and 9.

83. As a result of the unfair and deceptive acts and/or practices committed by TRUSTEES, the CLOUTIERS have suffered damages including but not limited to the damages set forth in the Demand Letter.

10

WHEREFORE, the Plaintiffs, Colleen A. and Donald L. Cloutier pray for the following relief:

I.     On Counts I - VI:

    1.     Judgment against the Defendants in the amount of actual damages including interest and court costs; and

    2.     Any such other and further relief to the Plaintiffs as this Court deems just and equitable.

II.    On Counts VII:

    1.     Judgment against the Defendants in the amount of actual damages including interest and court costs;

    2.     Judgment against the Defendants in the amount of damages as provided in 15 U.S.C. §1692k including but not limited to attorney's fees; and

    3.     Any such other and further relief to the Plaintiffs as this Court deems just and equitable.

III.   On Count VIII:

    1.     Judgment against the Defendants in the amount of actual damages, plus interest, court costs and attorneys' fees;

    2.     That any Judgment against the Defendants be doubled or trebled as the Court deems appropriate; and

    3.     Any such other and further relief to the Plaintiffs as this Court deems just and equitable.

## JURY DEMAND

The Plaintiffs hereby demand trial by Jury on all issues properly triable to a Jury.

PLAINTIFFS,
COLLEEN A. CLOUTIER and
DONALD L. CLOUTIER
By Their Attorney

Dated:   March 21, 2005

Joseph J. Lange, Esquire - BBO #564577
Lyon & Fitzpatrick, LLP
14 Bobala Road, 4th Floor
Holyoke, MA  01040
(413) 536-4000 - Fax (413) 536-3773



A TRUE COPY
IN WITNESS WHEREOF, I hereunto set
my hand, and have caused the seal of
the Housing Court for the County of
Hampden to be affixed on 05·09·05

Asst Clerk

12

Exhibit A

MASTER DEED

of

MILLBANK PLACE CONDOMINIUM

I, MICHAEL G. SISSMAN, being the sole owner of the land together with the buildings thereon, located at 351 through 369 Pleasant Street, Northampton, Massachusetts, and being more particularly described in Paragraphs (3) and (4) below, do hereby, by duly executing and recording this Master Deed, submit said land, together with the buildings and improvements erected thereon, and all easements, rights and appurtenances belonging thereto to the provisions of Chapter 183A of the General Laws of the Commonwealth of Massachusetts and do hereby state that Grantor proposes to create, and does hereby create, with respect thereto a condominium to be governed by and subject to the provisions of Chapter 183A and to that end, Grantor declares and provides the following:

(1)  Name.  The name of the condominium shall be MILLBANK PLACE CONDOMINIUM.

(2)  Definitions.  As used in this Master Deed, the following terms shall have the following meanings unless the context hereof otherwise requires.

"Buildings" shall have the meaning set forth in Paragraph (4) hereof.

"Chapter 183A" shall refer to Chapter 183A of the General Laws of Massachusetts as from time to time amended.

"Common Elements" shall mean the common areas and facilities of the Condominium as so described and designated in Paragraph (6) hereof.

"Condominium" shall mean the MILLBANK PLACE CONDOMINIUM submitted to the provisions of Chapter 183A by this Master Deed.

"Condominium Trust" shall mean the Declaration of Trust of MILLBANK PLACE CONDOMINIUM TRUST of even date to be recorded with the Registry of Deeds herewith and referred to in Paragraph (11) hereof, the names and addresses of the original and present Trustees of which Trust are as follows:

> Michael G. Sissman, P. O. Box 1096, Northampton, Massachusetts, 01061-1096.

"Grantor" shall mean Michael G. Sissman.

"Improvements" shall mean and include the buildings and other improvements now or hereafter located on the Land.

"Land" shall have the meaning set forth in Paragraph (3) hereof.

"Premises" shall mean the Land and the Improvements.

"Registry of Deeds" shall mean the Hampshire County Registry of Deeds.

"Trustees" shall have the meaning set forth in Paragraph (11) hereof.

"Units" shall mean the commercial and residential dwelling units comprising the condominiums of the Condominium.

"Unit Owner" shall mean the owner or owners of a Unit.

Capitalized terms used herein which are defined in the Condominium Trust and which are not specifically defined herein shall have the meaning given to them in the Condominium Trust.

(3)  Description of Land.  The Land shall include a certain parcel of land located at 351-369 Pleasant Street, Northampton, Massachusetts and being more particularly bounded and described on Exhibit 1 annexed hereto and incorporated herein.

(4)  Description of Buildings.  The buildings on the Land are described on Exhibit 2 annexed hereto and incorporated herein.

(5)  Description of Units.

(A)  The Building contains those Units listed on Exhibit 3 annexed hereto and incorporated herein.

(B)  The designation of each Unit in the Building, a statement of its location, approximate area, number and composition of rooms, immediate Common Elements to which it has access, and its proportionate interest in the Common Elements of the Condominium are set forth in Exhibit 3 annexed hereto and incorporated herein.

The proportionate interest of the respective Units in the Common Elements has been determined on the basis of the approximate relation which the fair value of each Unit on the date of the Master Deed bears to the then aggregate fair value of all the Units.

(C)  Each Unit includes the ownership of all utility lines, heating, plumbing, electrical, and other apparatus and other equipment, which exclusively serve and are located within the individual Unit.

(D)  Each Unit Owner shall have the right, as appurtenant to their Unit, to use, in common with the owners of the other Units served thereby, such entrances to and from the public streets, yards, and walkways, as serve as common access to and from such Units (each of the foregoing comprises a portion of the Common Elements therefor).

(E)  Except as hereinbefore otherwise provided, each Unit Owner shall have the right, as appurtenant to their Unit, to use, in common with the owners of the other Units served thereby, all utility lines and other common facilities located in any of the other Units or in the Common Elements described in Paragraph (6) hereof, and serving that Unit.  Nothing herein shall otherwise be construed to limit the right of any Unit Owner to otherwise use other Common Elements in accordance with the intended purposes thereof.

(F)  The Condominium Trust, hereinafter described in Paragraph (11), has a right of entry to each Unit to effect emergency repairs or other

-2-

necessary repairs which the Unit Owner has failed to perform and for
other purposes as set forth in Chapter 183A, Section (4), subsection
(2).

(G)  All exclusive easements appurtenant to a Unit, excluding,
however, any exclusive easement of use with respect to a storage bin,
shall be conveyed only with the Unit to which said easement is
appurtenant and shall not be severable from such Unit; provided,
however, that notwithstanding the foregoing, a Unit Owner may convey
his exclusive easement of use with respect to any parking space to
another Unit Owner.

(H)  Each Unit shall be subject to the obligations and conveyed with
the rights as set forth in any of the foregoing subsections, if and so
far as applicable to that Unit.

(6)  Description of the Common Elements.  The common areas and facilities
of the Condominium (hereinbefore and hereinafter called the "Common
Elements") consist of:

(A)  The Land together with the benefit of and subject to all rights,
easements, restrictions and agreements of record, if any, so far as
the same may be in force;

(B)  All portions of the Building at 351 Pleasant Street not included
in any Unit by virtue of Paragraph (5) above, including, without
limitation, the following to the extent such may exist from time to
time:

(i)  The foundations, structural members, beams, supports,
exterior walls, exterior doors, frames for the exterior windows
and doors leading from Units to common areas, roof and entrances
and exits of the Building, common walls within the Building, and
structural walls or other structural components contained
entirely within any Unit;

(ii)  The main entrances, steps and stairway, the entrance
vestibule, hallways serving more than one Unit, the mailboxes,
utility areas, and other facilities in such hallways;

(iii)  Installations of services such as heat, telephone,
electric power, gas, hot and cold water, excluding all utility
lines and equipment contained within and servicing a single Unit;

(iv)  All conduits, chutes, ducts, sewer, drainage, water and
other pipes, plumbing, wiring, flues and other facilities for the
furnishing of services described above in subparagraph (iii)
which are contained in portions of the Building contributing to
the structure or support thereof, and all such facilities
contained within any Unit which serve parts of the Building other
than the Unit within which such facilities are contained,
together with an easement of access thereto for maintenance,
repair, and replacement, as aforesaid;

(v)  Notwithstanding the above, all elements of 369 Pleasant
Street that are within the outer plane of the foundation or the
outer plane of the exterior walls, including the whole of the

-3-

roof, are not common elements, but are a part of the 369 Pleasant Street Unit.

(C)  All land areas, and facilities, and other improved or unimproved areas on the Land and not within any Unit, except that certain portions of the Common Elements may be limited or restricted in terms of use by Grantor;

(D)  The glass in windows of the Units are not Common Elements;

(E)  Such additional common areas and facilities as may be defined in Chapter 183A.

Each Unit Owner shall be entitled to an undivided beneficial interest in the Common Elements in the percentages shown on Exibit #3 as overall beneficial interest attached to this Master Deed and incorporated herein by reference (hereinafter "Beneficial Interest").

The Trustees in their sole and absolute discretion, may designate certain portions of the Common Elements for limited or restrictive use, and such designations or restrictions shall be upon such terms and conditions, and with such stipulations and agreements, as the Trustees shall deem advisable, and the purposes of this Paragraph may be carried out by the Rules and Regulations of the Condominium Trust (which are an exhibit to the Condominium Trust).

The use of Common Elements shall be subject to the provisions of (a) this Master Deed, (b) the Condominium Trust, hereinafter referred to in Paragraph (11) hereof and the By-Laws and Rules and Regulations promulgated pursuant thereto, and (c) Chapter 183A as amended.

(7)  _Parking Spaces_.  Grantor reserves for himself, his successors and assigns the right and power to grant easements to any Unit purchaser at the time of the first Unit Deed for the exclusive use of parking spaces in the Common Elements of the Condominium for any lawful purpose during the existence of the Condominium, but such easement shall end upon the permanent withdrawal of the Premises from condominium status.  The parking spaces are shown on the Site Plan of the Condominium recorded herewith.

(8)  _Floor Plans_.  The floor plans of the Building and the Units therein, together showing the layout of each of the buildings constituting the Building, setting forth the Units within each of the buildings constituting the Building, and the Building comprising the Condominium, and depicting the Unit numbers, layout, location and dimensions, main entrance and immediate Common Elements to which each Unit has access, all "as built," and bearing the verified statement of a registered architect, certifying that the plans, taken together, fully and accurately depict the layout location, Unit numbers, and dimensions of the Units as built are recorded with and made a part of this Master Deed.

Said plans are listed on a schedule annexed hereto and incorporated herein, which together with copies of said plans are collectively referred to as Exhibit 4.

-4-

(9)  Statement of Purposes.  The Units are intended to be used as follows:

(A)  Units 1 through 12 shall be used for residential purposes.  All such Units may also be secondarily used for any purpose permitted by the applicable zoning ordinance, but subject to the restrictions set forth herein, and in the Condominium Trust, the By-Laws, and Rules and Regulations thereto.  Units A through D shall be used for commercial purposes.  The 369 Pleasant Street unit may be used for either residential or commercial purposes, so long as both such uses are permitted by the Northampton Zoning Ordinance.

B).  The following conditions and restrictions shall apply to the use and occupancy of the parking spaces:

(1)  The parking spaces may be used only for parking of vehicles which fit within the area of a single parking space and which are duly registered with the appropriate Registry of Motor Vehicles. No boats, trailers (whether capable of independent operations or attached to an automobile or other vehicle), and the like may be parked in any parking spaces except with the written consent of the Trustees.  Only one vehicle is allowed in each parking space.

(2)  All vehicles shall be parked within the respective parking spaces designated to said Unit.

(3)  During normal business hours the customers of the commercial units may utilize the parking area for reasonable periods of time, as established and limited by the Board of Trustees.

(4)  A Unit Owner, by written permission, may permit any tenant, guest, servant, licensee, or other party, to use the parking space which said Unit Owner is entitled to use, but all parties using said parking space shall comply with the provisions relating to such use contained in this Master Deed and the Condominium Trust.

(5)  In instances where vehicles using the parking areas and parking spaces do not comply with the foregoing provisions, the Trustees are authorized to allow the towing of the noncomplying vehicles at the expense of the owners of such vehicles.

(C)  The following conditions and restrictions shall apply to the tenanting, renting and/or leasing of Units:

(1)  Each and every lease, license and/or tenancy agreement must be for the entire Unit and must be in writing and be for a term of not less that thirty (30) days.

(2)  No Unit may be tenanted, rented, let, leased, or licensed for transient or hotel purposes;

(3)  Every lease, license or tenancy agreement permitting non-owner occupants use or possession or occupancy of a Unit shall include a provision requiring the non-owner occupant to comply with all terms and conditions of this Master Deed,

-5-

specifically including but not limited to this Paragraph (9) and Paragraph (10), the Condominium Trust, and the Rules and Regulations and shall require that the failure of said non-owner occupant to comply with any of the terms of said Master Deed, Condominium Trust, and/or Rules and Regulations shall be a default under said lease, license, or tenancy agreement. There shall be attached to each such written instrument a copy of the Rules and Regulations and copy of Paragraphs (9) and (10) of the Master Deed;

(4)  The provisions of the within Paragraph (9) (C) (3) shall not apply to any holder of a mortgage who obtains title to or takes possession of a Unit by foreclosure or pursuant to any other remedies provided in the mortgage or by applicable law.

(D)  Notwithstanding the provisions contained in Paragraphs (9) and (10) hereof, the Grantor, or any successor to his interest in the Condominium, including but not limited to mortgagees and assignees but excluding those purchasing individual Units, hereby reserve (s) the right, until all of the Units have been sold by Grantor or such sucessor, to:

(i)  lease any Units owned by the Grantor;

(ii)  use any Units owned by the Grantor as models for display for purposes of selling or leasing of Units or for any other lawful purpose.

(10)  Restrictions on Use.  Unless otherwise permitted in a writing executed by a majority of the Trustees pursuant to the provisions thereof:

(A)  No Unit shall be used for any purpose not specified in Paragraph (9) above;

(B)  The architectural integrity of the Building and the Units shall be preserved without modification, and to that end, no awning, screen, antenna, sign, banner or other device, and no exterior change, addition, structure, projection, decoration or other feature shall be erected or placed upon or attached to the Building, any Unit, or any part thereof, except that the five commercial units may place signs in the designated signage area and on the street sign(s).  This Paragraph (10) shall not restrict the right of Unit Owners to decorate the interiors of their Units as they may desire;

(C)  The owners of any Unit may at any time and fron time to time change the use and designation of any room or space within such Unit, subject to the provisions of Paragraphs (9) and (10) hereof, and may modify, remove and install nonbearing walls lying wholly within such Unit; provided, however, that any and all work with respect to the removal and installation of interior walls or other improvements shall be done expediously in a good and workmanlike manner, pursuant to a building permit duly issued therfor (if required by law) and pursuant to plans and specification which have been submttied to and approved by the Trustees.  In particular, the four commercial Units locatd in the Main building are expected to vary the interior of the Unit

-6-

periodically and are hereby authorized to do so.

(D)  No Unit shall be used or maintained in a manner contrary to or inconsistent with this Master Deed and the Condominium Trust.

(E)  The use of the Common Elements may also be restricted under the provisions of the Condominium Trust.

These restrictions shall be for the benefit of all Unit Owners and shall be administered on behalf of the Unit Owners by the Trustee and shall be enforceable solely by the Trustees, insofar as permitted by law, and insofar as permitted by law shall be perpetual; and to that end may be extended at such time or times and in such manner as permitted or required by law for the continued enforceability thereof.  No Unit Owner shall be liable for any breach of the provisions of this paragraph except such as occur during his or her Unit ownership.

(11)  <u>Management and Regulatory Organization</u>.

(A)  The organization through which the Unit Owners will manage and regulate the Condominium established hereby is the Condominium Trust. The Condominium Trust establishes an organization of which the Unit Owners shall be members and in which Unit Owners shall have Beneficial Interest in proportion to the percentage of undivided interest in the Common Elements of the Condominium to which they are entitled under this Master Deed.

(B)  The Units of the Condominium vary in that one is located in the 369 Pleasant Street structure, which is an old, though rehabilitated building, and the other twelve Units are in the main building, a structure newly built; further twelve of the Units are residential units, and the others are commercial.  Because of these differences, there are some costs and expenses which belong to one group of Units and not to another group.  See the Condominum Trust Article XII, Section 6 for a more detailed description.  The Trustees shall divide the expenses of the Condominium as appropriate to these differences; Exhibit 3 specifies the various interests.

(C)  The Trustee have enacted By-Laws which are set forth in the Condominium Trust, pursuant to and in accordance with provisions of Chapter 183A (the "By-Laws").  The term "Trustees" as hereinafter used shall be deemed to include the successors in trust to the original trustees and to mean the trustees or trustee for the time being under the Condominium Trust.

(12)  <u>Amendments</u>.  This Master Deed may be amended by an instrument in writing (a) signed by one or more Unit Owners entitled to sixty-seven (67%) percent or more of the Beneficial Interest in the Common Elements, and (b) signed and acknowledged by a majority of the Trustees of the Condominium Trust, and (c) duly recorded with the Registry of Deeds; PROVIDED, HOWEVER, that:

(A)  The date on which any instrument of amendment is first signed by a Unit Owner shall be indicated thereon as the date thereof, and no such instrument shall be of any force or effect unless the same has

-7-

been so recorded within six months after such date;

(B)  No instrument of amendment which alters the dimensions of any Unit shall be of any force or effect unless the same has been signed by the Owners of the Unit so altered;

(C)  No instrument of amendment which alters the percentage of the Beneficial Interest to which any Unit is entitled in the Common Elements shall be of any force or effect unless the same has been signed be all Unit Owners, and said instrument is recorded as an Amended Master Deed;

(D)  No instrument of amendment affecting any Unit in any manner which impairs the security of the holder of a mortgage of record shall be of any force or effect unless the same has been assented to by the holder of such mortgage;

(E)  No instrument of amendment which alters this Master Deed in any manner which would render it contrary to or inconsistent with any requirements or provisions of Chapter 183A shall be of any force or effect;

(F)  No instrument of amendment which purports to affect any rights reserved to or granted to the Grantor shall be of any force or effect before the Grantor has conveyed title to all Units unless the Grantor executes the instrument of amendment;

(G)  The Beneficial Interest of each Unit of the Condominium shall be held and exercised as a Unit and shall not be divided among several owners of any such Unit.  To that end, whenever any Unit is owned of record by more than one person, the several owners of such Unit shall: (a) determine and designate which one of such owners shall be authorized and entitled to cast votes, execute instruments, and otherwise exercise the rights appertaining to such Unit hereunder, and (b) notify the Trustee of such designation by notice in writing signed by all of the record owners of such Unit.  Any such designation shall take effect upon receipt by the Trustees and may be changed at any time and from time to time by notice as aforesaid.  In the absence of any such notice of designation, the Trustee may designate any one such owner for such purposes.

(13)  Units Subject to Master Deed, Unit Deed, Condominium Trust, etc.

(A)  All present and future owners, tenants, visitors, servants and occupants of a Unit shall be subject to, and shall comply with, the provisions of:  (a) this Master Deed, (b) the Unit Deed conveying such Unit, (c) the Condominium Trust and By-Laws, (d) the items affecting the title to and the use of the Land, and (e) Chapter 183A.  The acceptance of a deed or conveyance or the entering into occupancy of any Unit shall constitute an agreement that (a) the provisions of (1) this Master Deed, (2) the Unit Deed, if any, conveying such Unit, (3) the Condominium Trust and the By-Laws and Rules and Regulatons promulgated pursuant thereto, as they may be amended from time to time, and (4) the said items affecting title to an use of the Land are accepted and ratified by such owner, tenant, visitor, servant, or

-8-

occupant, and all of such provisions shall be deemed and taken to be covenants running with the land, and shall bind any person having at any time any interest or estate in such Unit, as though such provisions were recited and stipulated at length in each and every deed or conveyance or lease thereof, and (b) any violation of the provision of this Master Deed, such Unit Deed, the Condominium Trust and By-Laws or Rules and Regulations promulgated pursuant thereto by any such person shall be deemed a violation of the duties of the Unit Owner.

(B)  The failure of any Unit Owner to comply with any of the provisions of the Master Deed, condominium Trust, the Rules and Regulations adopted pursuant to said Trust, and Chapter 183A shall give rise to a cause of action in the Trustees and any aggrieved Unit Owner, which they may enforce in any manner permitted by law, including without limitation by court action for injunctive relief and/or damages.

(14)  Pipes, Wires, Ducts, Cables, Conduits, Public Utility Lines, and other Common Elements Located Inside of Units.

Each Unit Owner shall have an easement in common with owners of all other Units to use all pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements located in any of the other Units serving his Unit. Each Unit shall be subject to use of the pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements serving such other Units and located in such Unit.  The Trustees shall have a right of access to each Unit to inspect the same, to remove violations therefrom, and to maintain, repair, or replace the Common Elements contained therein or elsewhere in the Building.

(15)  Encroachments.  If any portion of the Common Elements encroaches upon any Unit, or if any Unit now encroaches upon any portion of the Common Elements, or if any such encroachment shall occur hereafter as a result of settling or shifting of the Building or alteration or repairs of the Common Elements made by or with the consent of the Trustees, or as a result of condemnation or eminent domain proceedings, a valid easement shall exist for such encroachment and for the maintenance of the same so long as such Building shall stand.

(16)  Right to Combine Units, Erect Partitions Around Stairways, etc.

(A)  If at any time the title to any Units which are on the same floor as one another and share a common interior wall as a Unit boundary, is held by the same Unit Owner, then the said Unit Owner shall have the right to open a passage in said common wall to connect the Units directly to one another without first having to obtain the consent for the construction necessary to connect the Units from the Trustees of the Condominium Trust; provided, however, that the work of combining the Units would not jeopardize the soundness or safety of the Building, in which event the Unit Owner would be required to obtain the unanimous consent of all Unit Owners of the Building and the mortgagees of record to perform the work after said Unit Owner first

-9-

submits written plans and specifications of the proposed work to the Trustees.

(B)   If at any time the title to any Units which are located above or below one another are held by the same Unit Owner, then the said Unit Owner shall have the right to construct internal stairways connecting said Units, without having to first obtain the consent for said construction necessary to connect the Units from the Trustees; provided, however, that the work of combining the Units would not jeopardize the soundness or safety of the Building; in which event, the Unit Owner would be required to obtain the unanimous consent of all Unit Owners of the Building and the mortgagees of record to perform the work. The work of constructing said internal stairway shall include opening an area in the Common Elements located between the lower Unit and upper Unit opening within the concerned Units, and such structural modification and changes to said flooring as necessary for the construction, safety, and serviceability of the stairway.

(C)   Unit Owners performing any construction work under this Paragraph (16) of the Master Deed shall: (a) secure all appropriate licenses and permits necessary for such work, in the name of the Trustees, at Unit Owner's sole cost and expense; (b) provide contractors and subcontractors insurance, comprehensive public liability insurance, and other appropriate insurances, insuring the said Unit Owner, the Trustees, and other occupants, of the Condominium Units and the Condominium against personal injury and property damage arising out of said work; (c) perform all construction work in a good and workmanlike manner, and in compliance with all applicable laws and ordinances, regulations, and orders of governmental authorities having jurisdiction thereof and the insurers of the Condominium; (d) diligently perform all work and perform the work so as to minimize interferences with the peaceful use and possession of the premises by the occupants of the Condominium, and promptly discharge any and all mechanics and materialmen's liens arising from said work.

     Any such connecting passageway or stairway structure or stairway enclosure and appurtenant equipment thereto shall be maintained and serviced at the expense of the owners of the Units connected by said passageway or stairway, including without limitation the cost of all structural maintenance and repair to the Common Element arising from said passageway or stairway or stairway enclosure.

(17)   Additional Rights for Benefit of Holders of Mortgages.

     Grantor and the Unit Owner hereby agree as follows:

(A) That in the event any right of first refusal in case of the sale of a Unit is adopted by the Unit Owners and incorporated in this Master Deed or the Condominium Trust, such right of first refusal shall not impair the rights of a holder of a mortgage to:

     (i)   foreclose or take title to a Unit pursuant to the remedies provided in the mortgage; or

     (ii)   accept a deed (or assignment) in lieu of foreclosure in the

-10-

event of default by a mortgagor; or

(iii) sell or lease a Unit acquired by a holder of a mortgage through the procedures set forth in Paragraph (i) and/or (ii) above;

(B)  That any person taking title to a Unit through a foreclosure sale duly conducted by a holder of mortgage shall be exempt from any right of first refusal adopted by the Unit Owners and incorporated in this Master Deed or the Condominium Trust;

(C)  That any mortgagee who obtains title to a Unit by foreclosure or pursuant to any other remedies provided in the mortgage or by law will not be liable for such Unit's unpaid Common Charges, dues or other assessments which accrued prior to the acquisition of title to such Unit by the mortgagee;

(D)  That unless at least sixty seven (67%) percent of holders of first mortgages on the individual Units (based upon one vote for each mortgage owned) of the Condominium have given their prior written approval, neither the Unit Owners nor the Trustees shall be entitled to:

(i)  by act or omission, seek to abandon or terminate the Condominium (except in the event of substantial destruction of the Condominium premises by fire or other casualty or in the case of eminent domain) .

(ii)  change the pro rata interest or obligations of any individual Unit for the purpose of: (a) levying assessments or charges or allocating distributions of hazard insurance proceeds or condemnation awards; or (b) determining the pro rata share of ownership of each Unit in the Common Elements;

(iii)  partition or subdivide any Unit;

(iv)  by act or omission, seek to abandon, partition, subdivide, encumber, sell, or transfer the Common Elements, PROVIDED, HOWEVER, that the granting of easements for public utilities or for other public purposes consistent with the intended use of the Common Elements by the Condominium and the exercise of other actions with respect to granting special rights of use or easements of Common Elements contemplated herein or in the Condominium Trust, including the granting of exclusive rights and easements of use with respect to parking spaces and storage bins, shall not be deemed an action for which any prior approval of a mortgagee shall be required under his subparagraph;

(v)  use hazard insurance proceeds for losses to any property of the Condominium (whether to Units or to Common Elements) for other than the repair, replacement, or reconstruction of such property of the Condominium, except as provided by statute in case of a taking of or substantial loss to the Units and/or Common Elements;

(vi)  take any action or make any decision to terminate professional management and assume self-management of the Condominium.

(vii) take any action to amend any material provisions of this Master Deed and the Condominium Trust as the term "material" is defined by the Federal National Mortgage Association (FNMA) and Federal Home Loan Mortgage Corporation (FHLMC) guidelines.

(E) That all taxes, assessments, and charges which may become liens prior to a first mortgage under the laws of the Commonwealth of Massachusetts shall relate only to the individual Units and not to the Condominium as a whole;

(F) That in no case shall any provision of the Master Deed or the Condominium Trust give a Unit Owner or any other party priority over any rights of a mortgagee of the Unit pursuant to its mortgage in the case of a distribution to such Unit Owner of insurance proceeds or condemnation awards for losses to or a taking of such Unit and/or the Common Elements;

(G) That any holder, insurer, or guarantor of any first mortgage, upon request to the Trustees, will be entitled to:

(i) written notification from the Trustees of any default by its borrower who is a Unit Owner with respect to any obligation of such borrower under this Master Deed or the provisions of Condominium Trust which is not cured within sixty (60) days;

(ii) inspect the books and records of the Condominium Trust during normal business hours;

(iii) receive an annual financial statement of the Condominium Trust within ninety (90) days following the end of any fiscal year of the Condominium Trust;

(iv) written notice of all meetings of the Condominium Trust, and be permitted to designate a representative to attend all such meetings; and

(v) prompt written notification from the Trustees of any damage by fire or other casualty to the Unit upon which the lender holds a mortgage or proposed taking by condemnation or eminent domain of said Unit or the Common Elements.

(vi) written notice of a lapse, cancellation or material modification of any insurance policy or fidelity bond maintained by the Trustees.

(vii) receive written notice of any action which requires the consent of a specified percentage of eligible mortgagees. The provisions of this section may not be amended or rescinded without the written consent of all First Mortgagees, which consent shall appear on the instrument of amendment as such instrument is duly recorded with the Registry of Deeds in accordance with the requirements of this Master Deed.

(H) That no agreement for professional management of the Condominium or any other contract with Grantor may exceed a term of three (3) years, and that any such agreement shall provide for termination by either party without cause and without payment of a termination fee on ninety (90) days' or less written notice.

-12-

(18)  Conflicts.  If any provision of this Master Deed shall be invalid or shall conflict with Chapter 183A, or if any provision of this Master Deed conflicts with any other provision thereof or with any provision of the Condominium Trust, then the following rules of construction shall be used:

    (A)  In the event of a conflict between the Master Deed and Chapter 183A, the provisions of Chapter 183A shall control;

    (B)  The invalidity of any provision of the Master Deed shall not impair or affect the validity or enforceability of the other provisions of this Master Deed, and this Master Deed shall continue in full force and effect as if such invalid provision had never been included herein.

    (C)  In the event of any conflict between the preceding Paragraph and any other provisions of this Master Deed or the Condominium Trust, the provisions of said preceding Paragraph shall control.

    (D)  In the event of any conflict between the Master Deed and the Condominium Trust, the provisions of the Master Deed shall control.

(19)  Waiver.  No provision contained in this Master Deed shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur.

(20)  Captions.  The captions herein are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of this Master Deed nor the intent of any provision hereof.

(21)  Assignment of Rights of Grantor.  Grantor, by deed or by separate assignment, shall be entitled to assign any and all of his rights hereunder and under the Condominium Trust, at any time and from time to time, to any person, trust, entity, or the Condominium Trust as may be determined by Grantor.

(22)  Registering and Recording.  All documents and instruments required to be recorded hereunder shall be so recorded with the Registry of Deeds.


    EXECUTED as a sealed instrument on this        day of 1986.



                                    MICHAEL G. SISSMAN


                      COMMONWEALTH OF MASSACHUSETTS

Hampshire, ss.                                                        , 1985

    Then personally appeared the above named MICHAEL G. SISSMAN and

acknowledged his execution of the foregoing instrument to be his free act
and deed, before me,

_____

Notary Public
My commission expires:

TABLE OF CONTENTS

| SECTION | SUBJECT | PAGE NO. |
|---|---|---|
| (1) | Name | 1 |
| (2) | Definitions | 1 |
| (3) | Description of Land | 2 |
| (4) | Description of Building | 2 |
| (5) | Description of Units | 2 |
| (6) | Description of Common Elements | 3 |
| (7) | Parking Spaces and Garages | 4 |
| (8) | Floor Plans | 4 |
| (9) | Statement of Purposes | 5 |
| (10) | Restrictions on Use | 6 |
| (11) | Management and Regulatory Organization | 7 |
| (12) | Amendments | 7 |
| (13) | Units Subject to Master Deed, Unit Deed Condominium Trust, etc | 8 |
| (14) | Pipes, Wires, Ducts, Cables, Conduits, Public Utility Lines, and other Common Elements Located Inside of Units | 9 |
| (15) | Encroachments | 9 |
| (16) | Right to Combine Units, Erect Partitions Around Stairways, etc. | 9 |
| (17) | Additional Rights for Benefit of Holders of Bona Fide First Mortgages | 10 |
| (18) | Conflicts | 12 |
| (19) | Waiver | 13 |
| (20) | Captions | 13 |
| (21) | Assignment of Rights of Grantor | 13 |
| (22) | Registering and Recording | 13 |

| EXHIBIT | SUBJECT |
|---|---|
| Exhibit 1 | Land |
| Exhibit 2 | Building |
| Exhibit 3 | Units |
| Exhibit 4 | Plans |

EXHIBIT 1

A parcel of land located in Northampton, Hampshire County, Massachusetts, bounded and described as follows:

Beginning at an iron pin in the Westerly line of Pleasant Street, thence running S. 16 40' 07" E. along said Pleasant Street, a distance of One Hundred Sixty Eight and Seventy Three Hundredths (168.73) feet to a granite bound, which bound is N. 16 40' 07" W. a distance of Four and No Hundredths (4.00) feet from Northampton Coordinate System point designated N: 11,650.915, E: 31,451.657; thence turning and running S. 33 02' 26" W. a distance of One Hundred Fifty Six and Sixty Four Hundredths (156.64) feet to a point at the land now oroformerly of Stephen P. Cahillane, et als; thence turning and running N. 39 49' 20" W. a distance of Seventy and No Hundredths (70.00) feet to an iron pin; thence continuing N. 28 04' 19" W. a distance of One Hundred Seventy and Forty Hundredths (170.40) feet to an iron pin, the last two courses being along the land now or formerly of said Cahillane, et als; thence turning and running N. 61 15' 55" E. a distance of One Hundred Eighty Four and Seventy Seven Hundredths (184.77) feet, along other land of Michael G. Sissman, sometimes called the "Hugo's Property", to the point of beginning. Containing 33,381 square feet, more or less.

Being the parcel shown on the Record Plan of Millbank Place Condominiums in Northampton, Massachusetts, Prepared for Michael G. Sissman, by Almer Huntley, Jr. & Associates, Inc., dated June 19, 1986, recorded in the Hampshire County Registry of Deeds, Book of Plans 138, Page 100.

And further conveying seven easements in various parcels of real estate, all of which are shown on the above referenced plan, which easements are more particularly described in the deed of Leonard C. Jekanowski recorded in the Hampshire County Registry of Deeds, as Document No.         .

Being all and the same premises conveyed to Michael G. Sissman by deed of Forrest Voges, dated May 30, 1985, recorded in the Hampshire County Registry of Deeds, Book 2570, Page 213; and a portion of the premises conveyed to Michael G. Sissman by deed of John F. Skibiski Realty Partnership, dated July 2, 1984 recorded in the Hampshire County Registry of Deeds, Book 2470, Page 118, which portion is Parcel B of "Plan of Land" dated September 7, 1984, recorded in the Hampshire County Registry of Deeds, Book of Plans 130, Page 17; and being all and the same easements conveyed to Michael G. Sissman by deed of Leonard C. Jekanowski recorded in Hampshire County Registry of Deeds as Document No.         .

-16-

EXHIBIT 2

The buildings on the land described in Exhibit 1 are two, they are described as follows:

(1)   351 Pleasant Street, called the main building, is a three story, wood-framed building with a full basement.  The foundation is concrete.  The roof is shingled and pitched.  The ground floor is designed to contain four commercial Units with plate glass display windows; two thirds of the basement is part of the commercial Units. The top two floors contain four residential Units each.  Each of the Units has separately metered electric and gas service; the 4 commercial Units are served by one water meter; the 12 residential Units are served by one water meter.

(2)   369 Pleasant Street, is a two-story structure, wood framed, with a basement, stone foundation and slate roof structure that long predates the creation of this condominium.  All of its utilities are separately provided and metered.  It contains one Unit which may be either commercial or residential, as it is as of the date of this Master Deed, a prior, non-conforming residential use structure in the zone.

EXHIBIT 3
TO
MASTER DEED
OF
MILLBANK PLACE CONDOMINIUM
(see Exhibit 3A for Beneficial Interest)

| UNIT NUMBER | FLOOR LEVEL | APPROX. AREA IN SQUARE FEET | NO & COMPOSITION OF ROOMS |
|---|---|---|---|
| 351 Pleasant Street – | | | |
| A | B, 1st southerly end of building | 2,550 on 1st 2,668 on B | 2: com. in 1st, com. in B |
| B | B, 1st south central part of building | 1,230.5 on 1st 1,230.5 on B | same |
| C | B, 1st north central part of building | 1,230.5 on 1st 1,230.5 on B | same |
| D | 1st northerly part of building | 2,497 | 1: com. in 1st |
| 1 | 2nd north, rear | 1,081 | 7: 2BR, K, LR/D, B, sun rm., mech. |
| 2 | 2nd north, front | 1,164 | same |
| 3 | 2nd center, rear | 1,152 | 6: 2BR, K, LR/D, B, mech. |
| 4 | 2nd center, front | 1,152 | same |
| 5 | 2nd south, rear | 1,061 | 7: 2BR, K, LR/D B, mech, sun rm |
| 6 | 2nd south, front | 1,164 | same |
| 7 | 3rd north, rear | 1,061 | same |
| 8 | 3rd north, front | 1,164 | same |
| 9 | 3rd center, rear | 1,152 | 6: 2BR, K, LR/D, B, mech |

Exhibit 3, Page 2.

| UNIT NUMBER | FLOOR LEVEL | APPROX. AREA IN SQUARE FEET | NO & COMPOSITION OF ROOMS |
|---|---|---|---|
| 10 | 3rd center, front | 1,152 | same |
| 11 | 3rd south, rear | 1,081 | 7: 2BR, K, LR/D, B, mech, sun rm |
| 12 | 3rd south, front | 1,164 | same |
| 369 Pleasant | 1st, 2nd, basement | B: 670.5 1st: 670.5 and porches of 88 and 73; 2nd:  670.5 | 7 rooms,2 porch K, DR, B, LR, 2BR, storage rm, K, DR, B, LR, storage porch, porch. |

In addition, Units 1-12 will each have an easement over one storage space for each Unit located in the Basement, northerly part of 351 Pleasant Street.

LEGEND

Floor Level:                    Rooms:

B is Basement            LR/D is Living Room/Dining
                                                         Room
1st is First Floor       BR is Bedroom
2nd is Second Floor      K is Kitchen
3rd is Third Floor       B is Bathroom
                         com is Commercial Space
                         mech. is Utility Room
                         sun rm. is Sun Room

Units 1 through 6 have an immediate access to an interior hallway on the second floor, which leads to stairway and building exits at each end of the building.
Units 7 through 12 have an immediate access to an interior hallway on the third floor, which leads to stairway and building exits at each end of the building.
Unit A has access to the interior stair at the southerly end of the building and to the southerly front and rear exits.
Unit B has access to the southerly front and rear exits.
Unit C has access to the northerly front and rear exits.
Unit D has access to the stair at the northerly end of the building and to the northerly front and rear exits.
369 Pleasant Street Unit has access from the front door to the front porch and thence to common area, and from the storage porch to the common area.
All as shown on the floor plans filed herewith and made a part hereof and listed on Exhibit 4.

Exhibit 3, Page 3.

BOUNDARIES:

The boundaries of the Units 1 through 12 and A through D, with respect to the floors, ceilings and the walls, doors and windows thereof are as follows:

A.  Floors:

plane of the upper surface of the concrete slab in the basement level areas and the plane of the upper floor joists in all other floors.

B.  Ceilings:

the plane of the lower surface of the ceiling studs.

C.  Perimeter Walls:

the plane of the surface facing such unit of the wall studs or the plane of the surface facing such Unit of the masonry where masonry is the finish material.

D.  Exterior Building Walls, Doors and Windows:

(i) walls:        the plane of the surface facing such unit of the wall studs.

(ii) doors:       the exterior surface of the doors uitilized to provide ingress to an egress from each Unit.

Exhibit 3, Page 3.

(iii) windows:    the interior surface of the glass and window frames.

The 369 Pleasant Street Unit is bounded by the outer plane of its exterior walls, cellar walls, cellar floor and roof, and includes all porches.

The unit dimensions shown on the Plans extend to the plane of the surface facing such Unit of the interior finish surface of the walls, doors, ceilings or floors, as the case may be, although the boundaries extend as indicted below.

There are seventeen (17) Units in the Condominium.

There are                 Parking Spaces in the Condominium.

-20-

EXHIBIT 3A
TO
MASTER DEED
OF
MILLBANK PLACE CONDOMINIUM

| UNIT | OVERALL BENEFICIAL INTEREST | MAIN BUILDING BENEFICIAL INTEREST | 369 PLEASANT BENEFICIAL INTEREST | RESIDENTIAL BENEFICIAL INTEREST | COMMERCIAL BENEFICIAL INTEREST |
|---|---|---|---|---|---|
| A | 12.934 | 13.473 | 0 | 0 | 31.707 |
| B | 6.219 | 6.478 | 0 | 0 | 15.244 |
| C | 6.219 | 6.478 | 0 | 0 | 15.244 |
| D | 11.442 | 11.917 | 0 | 0 | 28.049 |
| 1 | 4.726 | 4.922 | 0 | 7.983 | 0 |
| 2 | 4.975 | 5.181 | 0 | 8.403 | 0 |
| 3 | 4.478 | 4.663 | 0 | 7.563 | 0 |
| 4 | 4.478 | 4.663 | 0 | 7.563 | 0 |
| 5 | 4.975 | 5.181 | 0 | 8.403 | 0 |
| 6 | 4.726 | 4.922 | 0 | 7.983 | 0 |
| 7 | 5.473 | 5.699 | 0 | 9.244 | 0 |
| 8 | 5.473 | 5.699 | 0 | 9.244 | 0 |
| 9 | 4.478 | 4.663 | 0 | 7.563 | 0 |
| 10 | 4.478 | 4.663 | 0 | 7.563 | 0 |
| 11 | 5.473 | 5.699 | 0 | 9.244 | 0 |
| 12 | 5.473 | 5.699 | 0 | 9.244 | 0 |
| 369 PLEASANT | 3.980 | 0 | 100.000 | 0 | 9.756 |
| | 100.000 | 100.000 | 100.000 | 100.000 | 100.000 |

Colleen Cloutier
351 Pleasant Street #12
Northampton, Massachusetts 01060

October 18, 2002

Hampshire Property Management Group
15 Brewster Court
Northampton, MA 01060

Since as far back as 1993, I have been complaining about my overhead windows leaking into my dining room area. Although we have continually tried to stop the leaks from the inside, the water continues to pour in. My china cabinet, dining room table, hope chest and flooring have been damaged from the water. The window casings and sills below the overheads are saturated with water, as well as the wall to the side of the windows. I had to install ceramic tile on the wall below the windows to cover the water damage. The overhead window casings are pulling away. The cracking sounds that the overheads make is frightening. I fear that the entire area is ready to collapse.

I have been told repeatedly that the leaking is not the responsibility of the condo association, but my insurance covers only from the sheetrock in because that is what I own. At the end of September 2002, I received a call from your company requesting that someone be allowed into my unit on October 1, 2002 at 10:00 am to look at the overhead windows. No one came.

I have been harassed continually ever since North River Management Company was fired and your company took over. Immediately after North River Management was fired, I was informed that I owed approximately $1200 in back condo fees, but was provided with no proof that I owed the money. I have owned my condo for over 10 years and no longer have cancelled checks for that entire period. I paid those fees against my better judgement and despite the fact that North River Management did not keep proper records.

I have never been served any delinquency notice by any sheriff at any time since I have owned the condo, so I dispute that portion of the delinquency notice. I also dispute the late charges and the condo fees because your company has ignored my requests to repair the damage to the overheads. I have contacted my insurance company and they have stated more than once that the damage is the responsibility of the condo association and should be covered under the building's insurance policy, not mine.

I have also been complaining that all the windows in my unit are causing water damage because, when they are even cracked open slightly, rain water pours in causing the wood surrounds and sills to become water logged. This is because there are no eaves to protect the inside of the unit. I backed off on that complaint for years because I was afraid that I would end up paying a special assessment for the repairs and did not believe that I should bear the responsibility.

If these issues cannot be resolved reasonably between us, then I will pursue court action against the condo association and your management company. And I am requesting that you stop harassing me by informing my mortgage company that I am delinquent in paying my condo fees.

I am leasing my condo as of November 1, 2002 and will contact you regarding the new tenants. They will need parking passes and guest parking passes. In the years since I purchased my unit I've seen this building's owner-occupancy rate surge and now, owners are moving out again. My mother pays less money at Fairway Village than I pay and that is ridiculous. There is no landscaping, the hallways and stairwells are never repaired, the unit windows are never washed and legitimate complaints are ignored.

I can be reached at 413-533-1981. I am disputing the validity of the entire debt, and requesting that you provide me with verification of the $1200 debt that I disputed yet paid when your company took over the management of the building from Jekanowski and O'Neil.

Sincerely,

Colleen Cloutier

*My copy*

THE HAMPSHIRE PROPERTY MANAGEMENT GROUP, INC.

October 30, 2002

Colleen & Donald Cloutier
351 Pleasant Street #12
Northampton, MA  01060



Dear Colleen and Donald

This letter is in response to your letter dated October 18, 2002. I will address the items
that you discus by paragraph.

The only complaint I ever received about the overhead windows came from one of your
neighbors. When we telephoned you to inspect the windows, we wanted the window
company to look at all four of these windows at Millbank Place. Unfortunately, the
gentleman from the window company was unable to keep the appointment due to jury
duty. When we telephoned you to rearrange the appointment, your phone had been
disconnected. These windows are a difficult item to assign responsibility to a unit owner
or the condominium association because the Condominium Documents describe part of
the window as common area and part of the window as unit owner responsibility.
Nonetheless, we have requested R&R Windows to inspect and repair one of the overhead
windows at the property to determine the reasons for the windows' failure. Once R&R
Window has analyzed and repaired one window, we should be able to determine the
cause of the failure and to understand better what is/is not common or unit owner
responsibility.

I cannot address the issue in your third paragraph because I was not involved in the
property at that time. However, I sent you a letter on April 3, 2002 (enclosed) stating that
you owed $390 in past fees from 2001, and $498 for 2002. If you did not have copies of
cancelled checks for 2001, you could have called your bank to request copies.

*858*

Massachusetts Law, Chapter 183 states that unit owners, regardless of other issues,
including maintenance issues, must pay condominium fees. **This is the law.** As I
mentioned in the letter to you dated August 8, 2002 (copy enclosed) the Condominium
Documents of Millbank Place One Condominiums provide instructions for charging late
fees to delinquent owners. Hampshire Property Management will continue to charge late
fees as necessary. Since the certified letter that I sent you on September 3, 2002 came
back to my office unsigned and undelivered, I will continue to serve you notice by
sheriff, so that I am certain you receive these notices. Indeed, at some point soon, I may
turn the condominium fee collection process over to an attorney. Any legal fees incurred
would be your expense.

I have not heard before your letter that you or any other owner at Millbank Place One has
problems with leaking windows other than the overhead windows. I am not sure what
you mean by there being no eaves; perhaps you mean gutters. Until I look into this
further, I would recommend that you keep your windows closed when it rains.

As I mentioned, the Condominium Association is looking into resolving the overhead window problem, however, this does not impact on how I will continue to attempt to collect the condominium fees that you owe, including contacting your mortgage company. You currently owe $417.70, and will owe an additional $166 on November 1.

Please send information on your tenants as soon as possible. As you know, the parking lots are patrolled and you don't want your tenants to be towed because they are not registered.

Fairway Village condominium fees run from $179 to $195 per month. The two properties cannot really be compared because they are so different, but one simple reason for the difference in fees is that Millbank Place One has twelve residential and five commercial units to share all the costs at the property. Fairway Village has ninety-one.

As I mentioned previously, I cannot provide you with any information regarding the $1200, because you did not pay that amount, nor did I request that amount when Hampshire Property Management began managing Millbank Place One Condominiums on January 1, 2002. Again, I suggest that you go to your bank and recreate the history of your payments to the Condominium Association.

Should you have any questions, please call me at 582-9970 extension 100.

Yours truly,

Patricia Taylor
Senior Property Manager

Enc.

Cc: Board of Trustees

1 copy first class mail
1 copy certified # 7002 0460 0002 0582 7964

BALANCE        417.70
    NOV        166.00
    DEC        166.00
    JAN        166.00
    FEB        166.00
    MAR        166.00

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA 01040**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| | Due Y/E 2001 | 390.00 | | 390.00 |
| 12/31/01 | Condo Fee | 130.00 | | 520.00 |
| 01/01/02 | condo fee increase | 36.00 | | 556.00 |
| 01/01/02 | Condo Fee | 166.00 | | 722.00 |
| 02/01/02 | Condo Fee | 166.00 | | 888.00 |
| 03/01/02 | Condo Fee | 166.00 | | 1,054.00 |
| 04/01/02 | chk# 357 jan, jan increase and feb fee | | 332.00 | 722.00 |
| 04/16/02 | Condo Fee | 166.00 | | 888.00 |
| 05/01/02 | chk# 361 payment on past due | | 166.00 | 722.00 |
| 05/08/02 | Condo Fee | 166.00 | | 888.00 |
| 06/01/02 | chk# 342 bal on 2001 past due and parc payment fo | | 166.00 | 722.00 |
| 06/04/02 | chk# 04400575 bal on feb, mar,april,may and june | | 722.00 | 0.00 |
| 06/20/02 | Condo Fee | 166.00 | | 166.00 |
| 07/01/02 | Late fee-July | 10.00 | | 176.00 |
| 07/11/02 | Condo Fee | 166.00 | | 342.00 |
| 08/01/02 | Late fee-July | 10.00 | | 352.00 |
| 08/11/02 | Late fee-Aug. | 10.00 | | 362.00 |
| 08/11/02 | Condo Fee | 166.00 | | 528.00 |
| 09/01/02 | late fee-July | 10.00 | | 538.00 |
| 09/10/02 | Late fee-Aug | 10.00 | | 548.00 |
| 09/10/02 | Late fee-Sept | 10.00 | | 558.00 |
| 09/10/02 | Notice | 16.00 | | 574.00 |
| 09/16/02 | Notice | 19.70 | | 593.70 |
| 09/16/02 | chk# 417105 july,1 july LF's, Aug, 2 Aug LF's | | 362.00 | 231.70 |
| 09/17/02 | Condo Fee | 166.00 | | 397.70 |
| 10/01/02 | sept late fee | 10.00 | | 407.70 |
| 10/11/02 | oct late fee | 10.00 | | 417.70 |
| 10/11/02 | Condo Fee | 166.00 | | 583.70 |
| 11/01/02 | late fee-sept | 10.00 | | 593.70 |
| 11/11/02 | late fee-oct | 10.00 | | 603.70 |
| 11/11/02 | late fee-nov | 10.00 | | 613.70 |
| 11/11/02 | Condo Fee | 166.00 | | 779.70 |
| 12/01/02 | late fee - sept | 10.00 | | 789.70 |
| 12/11/02 | late-oct | 10.00 | | 799.70 |
| 12/11/02 | late fee - nov | 10.00 | | 809.70 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA  01040**

| | |
|---|---|
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 809.70 |
| 12/11/02 | late fee - dec | 10.00 | | 819.70 |
| 12/12/02 | legal fee | 25.00 | | 844.70 |
| 12/23/02 | Hampden County Sheriffs | 28.65 | | 873.35 |
| 12/23/02 | Hampden County Sheriffs | 17.55 | | 890.90 |
| 01/01/03 | Condo Fee | 166.00 | | 1,056.90 |
| 01/11/03 | sept late fee | 10.00 | | 1,066.90 |
| 01/11/03 | oct- late fee | 10.00 | | 1,076.90 |
| 01/11/03 | nov - late fee | 10.00 | | 1,086.90 |
| 01/11/03 | dec - late fee | 10.00 | | 1,096.90 |
| 01/11/03 | jan - late fee | 10.00 | | 1,106.90 |
| 02/01/03 | Condo Fee | 166.00 | | 1,272.90 |
| 02/10/03 | sept - late fee | 10.00 | | 1,282.90 |
| 02/10/03 | oct - late fee | 10.00 | | 1,292.90 |
| 02/10/03 | nov - late fee | 10.00 | | 1,302.90 |
| 02/10/03 | dec - late fee | 10.00 | | 1,312.90 |
| 02/10/03 | jan - late fee | 10.00 | | 1,322.90 |
| 02/10/03 | feb - late fee | 10.00 | | 1,332.90 |
| 03/01/03 | Condo Fee | 174.30 | | 1,507.20 |
| 03/11/03 | sept - late fee | 10.00 | | 1,517.20 |
| 03/11/03 | oct - late fee | 10.00 | | 1,527.20 |
| 03/11/03 | nov - late fee | 10.00 | | 1,537.20 |
| 03/11/03 | dec - late fee | 10.00 | | 1,547.20 |
| 03/11/03 | jan - late fee | 10.00 | | 1,557.20 |
| 03/11/03 | feb - late fee | 10.00 | | 1,567.20 |
| 03/11/03 | mar - late fee | 10.00 | | 1,577.20 |
| 03/31/03 | Marcus, Errico, Emmer & Brooks | 310.00 | | 1,887.20 |
| 04/01/03 | Condo Fee | 174.30 | | 2,061.50 |
| 04/11/03 | sept late fee | 10.00 | | 2,071.50 |
| 04/11/03 | oct late fee | 10.00 | | 2,081.50 |
| 04/11/03 | nov late fee | 10.00 | | 2,091.50 |
| 04/11/03 | dec late fee | 10.00 | | 2,101.50 |
| 04/11/03 | jan late fee | 10.00 | | 2,111.50 |
| 04/11/03 | Feb late fee | 10.00 | | 2,121.50 |
| 04/11/03 | mar late fee | 10.00 | | 2,131.50 |
| 04/11/03 | apr late fee | 10.00 | | 2,141.50 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA  01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 2,141.50 |
| | | | 162.00 | 1,979.50 |
| 04/25/03 | chk# 107 parc payment on April condo fee only | | | 2,153.80 |
| 05/01/03 | Condo Fee | 174.30 | | 2,464.80 |
| 05/01/03 | Marcus #43375 | 311.00 | | 2,474.80 |
| 05/11/03 | spet - late fee | 10.00 | | 2,484.80 |
| 05/11/03 | oct - late fee | 10.00 | | 2,494.80 |
| 05/11/03 | nov late fee | 10.00 | | 2,504.80 |
| 05/11/03 | Dec - late fee | 10.00 | | 2,514.80 |
| 05/11/03 | Jan - late fee | 10.00 | | 2,524.80 |
| 05/11/03 | feb - late fee | 10.00 | | 2,534.80 |
| 05/11/03 | mar - late fee | 10.00 | | 2,368.80 |
| | | | 166.00 | 2,543.10 |
| 05/12/03 | chk# 112 parc payment on may | | | 3,481.10 |
| 06/01/03 | Condo Fee | 174.30 | | 3,315.10 |
| 06/01/03 | Marcus #44510 | 938.00 | | 3,325.10 |
| | | | 166.00 | |
| 06/06/03 | chk# 120 payment on past due | | | 3,335.10 |
| 06/11/03 | sept late fee | 10.00 | | 3,345.10 |
| 06/11/03 | oct late fee | 10.00 | | 3,355.10 |
| 06/11/03 | nov late fee | 10.00 | | 3,365.10 |
| 06/11/03 | dec late fee | 10.00 | | 3,375.10 |
| 06/11/03 | jan late fee | 10.00 | | 3,385.10 |
| 06/11/03 | feb late fee | 10.00 | | 3,559.40 |
| 06/11/03 | mar late fee | 10.00 | | 4,000.30 |
| 07/01/03 | Condo Fee | 174.30 | | 4,010.30 |
| 07/01/03 | Marcus #44964 | 440.90 | | 4,020.30 |
| 07/11/03 | sept late fee | 10.00 | | 4,030.30 |
| 07/11/03 | oct late fee | 10.00 | | 4,040.30 |
| 07/11/03 | nov late fee | 10.00 | | 4,050.30 |
| 07/11/03 | dec late fee | 10.00 | | 4,060.30 |
| 07/11/03 | jan late fee | 10.00 | | 4,070.30 |
| 07/11/03 | feb late fee | 10.00 | | 4,080.30 |
| 07/11/03 | march late fee | 10.00 | | 4,254.60 |
| 07/11/03 | july late fee | 10.00 | | 4,410.60 |
| 08/01/03 | Condo Fee | 174.30 | | 4,420.60 |
| 08/01/03 | Marcus #45637 | 156.00 | | 4,430.60 |
| 08/11/03 | sept late fee | 10.00 | | |
| 08/11/03 | oct late fee | 10.00 | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA 01040**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 4,430.60 |
| 08/11/03 | nov late fee | 10.00 | | 4,440.60 |
| 08/11/03 | dec late fee | 10.00 | | 4,450.60 |
| 08/11/03 | jan late fee | 10.00 | | 4,460.60 |
| 08/11/03 | feb late fee | 10.00 | | 4,470.60 |
| 08/11/03 | March late fee | 10.00 | | 4,480.60 |
| 08/11/03 | July late fee | 10.00 | | 4,490.60 |
| 08/11/03 | Aug late fee | 10.00 | | 4,500.60 |
| 09/01/03 | Condo Fee | 174.30 | | 4,674.90 |
| 09/01/03 | Marcus #46842 | 74.00 | | 4,748.90 |
| 09/11/03 | sept late fee | 10.00 | | 4,758.90 |
| 09/11/03 | Oct late fee | 10.00 | | 4,768.90 |
| 09/11/03 | nov late fee | 10.00 | | 4,778.90 |
| 09/11/03 | dec late fee | 10.00 | | 4,788.90 |
| 09/11/03 | Jan late fee | 10.00 | | 4,798.90 |
| 09/11/03 | Feb late fee | 10.00 | | 4,808.90 |
| 09/11/03 | Mar late fee | 10.00 | | 4,818.90 |
| 09/11/03 | July late fee | 10.00 | | 4,828.90 |
| 09/11/03 | Aug late fee | 10.00 | | 4,838.90 |
| 09/11/03 | sept late fee | 10.00 | | 4,848.90 |
| 10/01/03 | Condo Fee | 174.30 | | 5,023.20 |
| 10/11/03 | Oct 02 late fee | 10.00 | | 5,033.20 |
| 10/11/03 | nov 02 Late fee | 10.00 | | 5,043.20 |
| 10/11/03 | Dec 02 Late fee | 10.00 | | 5,053.20 |
| 10/11/03 | Jan late fee | 10.00 | | 5,063.20 |
| 10/11/03 | feb late fee | 10.00 | | 5,073.20 |
| 10/11/03 | mar late fee | 10.00 | | 5,083.20 |
| 10/11/03 | july late fee | 10.00 | | 5,093.20 |
| 10/11/03 | aug late fee | 10.00 | | 5,103.20 |
| 10/11/03 | aug late fee | 10.00 | | 5,113.20 |
| 10/11/03 | oct late fee | 10.00 | | 5,123.20 |
| 11/01/03 | Condo Fee | 174.30 | | 5,297.50 |
| 11/11/03 | oct 02 late fee | 10.00 | | 5,307.50 |
| 11/11/03 | nov 02 late fee | 10.00 | | 5,317.50 |
| 11/11/03 | dec 02 late fee | 10.00 | | 5,327.50 |
| 11/11/03 | jan late fee | 10.00 | | 5,337.50 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA  01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 5,337.50 |
| 11/11/03 | feb late fee | 10.00 | | 5,347.50 |
| 11/11/03 | mar late fee | 10.00 | | 5,357.50 |
| 11/11/03 | july late fee | 10.00 | | 5,367.50 |
| 11/11/03 | aug late fee | 10.00 | | 5,377.50 |
| 11/11/03 | sept late fee | 10.00 | | 5,387.50 |
| 11/11/03 | oct late fee | 10.00 | | 5,397.50 |
| 11/11/03 | nov late fee | 10.00 | | 5,407.50 |
| 12/01/03 | Condo Fee | 174.30 | | 5,581.30 |
| 12/11/03 | oct 02 late fee | 10.00 | | 5,591.30 |
| 12/11/03 | nov 02 late fee | 10.00 | | 5,601.30 |
| 12/11/03 | dec 02 late fee | 10.00 | | 5,611.30 |
| 12/11/03 | jan late fee | 10.00 | | 5,621.30 |
| 12/11/03 | feb late fee | 10.00 | | 5,631.30 |
| 12/11/03 | Mar late fee | 10.00 | | 5,641.30 |
| 12/11/03 | July late fee | 10.00 | | 5,651.30 |
| 12/11/03 | Aug late fee | 10.00 | | 5,661.30 |
| 12/11/03 | sept late fee | 10.00 | | 5,671.30 |
| 12/11/03 | oct late fee | 10.00 | | 5,681.30 |
| 12/11/03 | nov late fee | 10.00 | | 5,691.30 |
| 12/11/03 | dec late fee | 10.00 | | 5,701.30 |
| 01/01/04 | Condo Fee | 184.76 | | 5,886.56 |
| 01/11/04 | Oct 02 late fee | 10.00 | | 5,896.56 |
| 01/11/04 | Nov 02 late fee | 10.00 | | 5,906.56 |
| 01/11/04 | Dec 02 late fee | 10.00 | | 5,916.56 |
| 01/11/04 | jan 03 late fee | 10.00 | | 5,926.56 |
| 01/11/04 | Feb 03 late fee | 10.00 | | 5,936.56 |
| 01/11/04 | Mar 03 late fee | 10.00 | | 5,946.56 |
| 01/11/04 | July03 late fee | 10.00 | | 5,956.56 |
| 01/11/04 | Aug 03 late fee | 10.00 | | 5,966.56 |
| 01/11/04 | Sept 03 late fee | 10.00 | | 5,976.56 |
| 01/11/04 | Oct 03 late fee | 10.00 | | 5,986.56 |
| 01/11/04 | Nov 03 late fee | 10.00 | | 5,996.56 |
| 01/11/04 | Dec 03 late fee | 10.00 | | 6,006.56 |
| 01/11/04 | Jan 04 late fee | 10.00 | | 6,016.56 |
| 02/01/04 | Condo Fee | 184.76 | | 6,201.32 |
| | | | | CONTINUED |

# Tenant Ledger

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA  01040**

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 6,201.32 |
| 02/01/04 | Special Assessment | 369.76 | | 6,571.08 |
| 02/11/04 | Oct 03 late fee | 10.00 | | 6,581.08 |
| 02/11/04 | Nov 02 late fee | 10.00 | | 6,591.08 |
| 02/11/04 | Dec 02 late fee | 10.00 | | 6,601.08 |
| 02/11/04 | Jan 03 late fee | 10.00 | | 6,611.08 |
| 02/11/04 | Feb 03 late fee | 10.00 | | 6,621.08 |
| 02/11/04 | Mar 03 late fee | 10.00 | | 6,631.08 |
| 02/11/04 | July 03 late fee | 10.00 | | 6,641.08 |
| 02/11/04 | August 03 late fee | 10.00 | | 6,651.08 |
| 02/11/04 | September 03 late fee | 10.00 | | 6,661.08 |
| 02/11/04 | October 03 late fee | 10.00 | | 6,671.08 |
| 02/11/04 | November 03 late fee | 10.00 | | 6,681.08 |
| 02/11/04 | December 03 late fee | 10.00 | | 6,691.08 |
| 02/11/04 | Jan 04 late fee | 10.00 | | 6,701.08 |
| 02/11/04 | Feb 04 late fee | 10.00 | | 6,711.08 |
| 03/01/04 | Condo Fee | 184.76 | | 6,895.84 |
| 03/11/04 | Mar '04 Late fee | 10.00 | | 6,905.84 |
| 04/01/04 | Condo Fee | 184.76 | | 7,090.60 |
| 04/11/04 | Apr '04 Late fee | 10.00 | | 7,100.60 |
| 05/01/04 | Condo Fee | 184.76 | | 7,285.36 |
| 05/12/04 | May '04 Late fee | 10.00 | | 7,295.36 |
| 07/19/04 | chk# 8458  balance due | | 7,295.36 | 0.00 |

| Current | 30 Days | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

**MARCUS, ERRICO, EMMER & BROOKS, P.C.**

Attorneys At Law

Suite 107
45 Braintree Hill Office Park
Braintree, Massachusetts 02184
Telephone (781) 848-9846
Facsimile (781) 843-1529
e-mail law@meeb.com
website www.meeb.com

Janet Oulousian Aronson *◊
Richard E. Brooks
William DeBear
Seth Emmer *
V. Douglas Errico †
Stephen M. Marcus
Thomas O. Moriarty *‡
Jeffrey C. Turk

Edmund A. Allcock
Paul J. Barresi
Patrick J. Brady ‡
Laura White Brandow
Alison L. Forbes
Jill Sullivan Joyce
John D. Kalish ‡
Mark A. McCormack
MaryLou Muirhead
Therese Quijano
Joseph D. Saurino
John E. Shaffer, P.E.º
Douglas A. Troyer ◊

º Also admitted in CT
† Also admitted in NY
* Also admitted in NH
‡ Also admitted in FL
Also admitted in RI
◊ Also admitted in ME

March 10, 2004

Joseph J. Lange, Esquire
Lyon & Fitzpatrick, LLP
14 Bobala Road
Holyoke, MA 01040

**RE: Trustees of Millbank Place Condominium Trust
v. Colleen A. Cloutier, et al
C.A. No. 2003 345 CV 000322
Your File No. 10578**

Dear Attorney Lange:

Pursuant to your request enclosed please find a detailed ledger evidencing the amount due from December, 2001 forward. In addition, I have confirmed with my client that the work on the windows is scheduled to be performed on March 10, 2004. Apparently there was some delay due to both the inclement weather of this week, as well as the new owners request to coordinate efforts in replacing a couple of panes of glass, which I understand has now been withdrawn.

As you can see from the attached ledger, a payment has not been received in this matter since June 6, 2003 and I am further confirming that no payment has at any time been received from the Cloutiers' former tenants, although such payments were promised on numerous occasions to this office.

Please advise as to your clients' intentions at your earliest convenience so that we may discuss a final resolution to this matter and avoid an appearance at the Case Management Conference currently scheduled for March 18, 2004.

Should you have any questions or concerns, please do not hesitate to contact this office directly.

Very truly yours,

MARCUS, ERRICO, EMMER & BROOKS, P. C.

Therese Quijano

TQ/nlgm
Enclosure

# Millbank Condominium

c/o HPMG
Box PO 686
Northampton, MA 01060

**Statement**

| | |
|---|---|
| Account: | MILL - 12 - clocol |
| Date: | 03/09/04 |
| Payment: | _____ |

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA  01040**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 6,651.08 |
| 02/11/04 | September 03 late fee | 10.00 | | 6,661.08 |
| 02/11/04 | October 03 late fee | 10.00 | | 6,671.08 |
| 02/11/04 | November 03 late fee | 10.00 | | 6,681.08 |
| 02/11/04 | December 03 late fee | 10.00 | | 6,691.08 |
| 02/11/04 | Jan 04 late fee | 10.00 | | 6,701.08 |
| 02/11/04 | Feb 04 late fee | 10.00 | | 6,711.08 |
| 03/01/04 | Condo Fee | 184.76 | | 6,895.84 |

*3/10/04 — Feb 2004 (Legal) Mar 2004 Legal* — *152.* — *1047.84*

| Current | 30 Days | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|
| 324.76 | 684.52 | 304.76 | 5,581.80 | 6,895.84 |

# Millbank Condominium

c/o HPMG
Box PO 686
Northampton, MA 01060

**Statement**

| | |
|---|---|
| Account: | MILL - 12 - clocol |
| Date: | 03/09/04 |
| Payment: | _____ |

**Donald and Colleen Cloutier**
104 Linden Street
Apt. 3L
Holyoke, MA  01040

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | 5,591.80 |
| 12/11/03 | nov 02 late fee | 10.00 | | 5,601.80 |
| 12/11/03 | dec 02 late fee | 10.00 | | 5,611.80 |
| 12/11/03 | jan late fee | 10.00 | | 5,621.80 |
| 12/11/03 | feb late fee | 10.00 | | 5,631.80 |
| 12/11/03 | Mar late fee | 10.00 | | 5,641.80 |
| 12/11/03 | July late fee | 10.00 | | 5,651.80 |
| 12/11/03 | Aug late fee | 10.00 | | 5,661.80 |
| 12/11/03 | sept late fee | 10.00 | | 5,671.80 |
| 12/11/03 | oct late fee | 10.00 | | 5,681.80 |
| 12/11/03 | nov late fee | 10.00 | | 5,691.80 |
| 12/11/03 | dec late fee | 10.00 | | 5,701.80 |
| 01/01/04 | Condo Fee | 184.76 | | 5,886.56 |
| 01/11/04 | Oct 02 late fee | 10.00 | | 5,896.56 |
| 01/11/04 | Nov 02 late fee | 10.00 | | 5,906.56 |
| 01/11/04 | Dec 02 late fee | 10.00 | | 5,916.56 |
| 01/11/04 | jan 03 late fee | 10.00 | | 5,926.56 |
| 01/11/04 | Feb 03 late fee | 10.00 | | 5,936.56 |
| 01/11/04 | Mar 03 late fee | 10.00 | | 5,946.56 |
| 01/11/04 | July03 late fee | 10.00 | | 5,956.56 |
| 01/11/04 | Aug 03 late fee | 10.00 | | 5,966.56 |
| 01/11/04 | Sept 03 late fee | 10.00 | | 5,976.56 |
| 01/11/04 | Oct 03 late fee | 10.00 | | 5,986.56 |
| 01/11/04 | Nov 03 late fee | 10.00 | | 5,996.56 |
| 01/11/04 | Dec 03 late fee | 10.00 | | 6,006.56 |
| 01/11/04 | Jan 04 late fee | 10.00 | | 6,016.56 |
| 02/01/04 | Condo Fee | 184.76 | | 6,201.32 |
| 02/01/04 | Special Assessment | 369.76 | | 6,571.08 |
| 02/11/04 | Oct 03 late fee | 10.00 | | 6,581.08 |
| 02/11/04 | Nov 02 late fee | 10.00 | | 6,591.08 |
| 02/11/04 | Dec 02 late fee | 10.00 | | 6,601.08 |
| 02/11/04 | Jan 03 late fee | 10.00 | | 6,611.08 |
| 02/11/04 | Feb 03 late fee | 10.00 | | 6,621.08 |
| 02/11/04 | Mar 03 late fee | 10.00 | | 6,631.08 |
| 02/11/04 | July 03 late fee | 10.00 | | 6,641.08 |
| 02/11/04 | August 03 late fee | 10.00 | | 6,651.08 |
| | | | | CONTINUED |

**Millbank Condominium**
c/o HPMG
Box PO 686
Northampton, MA 01060

Statement

Account:   MILL - 12 - clocol

Date:      03/09/04

Payment:   _____

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA  01040**

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | 4,748.90 |
| 09/11/03 | sept late fee | 10.00 | | 4,758.90 |
| 09/11/03 | Oct late fee | 10.00 | | 4,768.90 |
| 09/11/03 | nov late fee | 10.00 | | 4,778.90 |
| 09/11/03 | dec late fee | 10.00 | | 4,788.90 |
| 09/11/03 | Jan late fee | 10.00 | | 4,798.90 |
| 09/11/03 | Feb late fee | 10.00 | | 4,808.90 |
| 09/11/03 | Mar late fee | 10.00 | | 4,818.90 |
| 09/11/03 | July late fee | 10.00 | | 4,828.90 |
| 09/11/03 | Aug late fee | 10.00 | | 4,838.90 |
| 09/11/03 | sept late fee | 10.00 | | 4,848.90 |
| 10/01/03 | Condo Fee | 174.30 | | 5,023.20 |
| 10/11/03 | Oct 02 late fee | 10.00 | | 5,033.20 |
| 10/11/03 | nov 02 Late fee | 10.00 | | 5,043.20 |
| 10/11/03 | Dec 02 Late fee | 10.00 | | 5,053.20 |
| 10/11/03 | Jan late fee | 10.00 | | 5,063.20 |
| 10/11/03 | feb late fee | 10.00 | | 5,073.20 |
| 10/11/03 | mar late fee | 10.00 | | 5,083.20 |
| 10/11/03 | july late fee | 10.00 | | 5,093.20 |
| 10/11/03 | aug late fee | 10.00 | | 5,103.20 |
| 10/11/03 | aug late fee | 10.00 | | 5,113.20 |
| 10/11/03 | oct late fee | 10.00 | | 5,123.20 |
| 11/01/03 | Condo Fee | 174.30 | | 5,297.50 |
| 11/11/03 | oct 02 late fee | 10.00 | | 5,307.50 |
| 11/11/03 | nov 02 late fee | 10.00 | | 5,317.50 |
| 11/11/03 | dec 02 late fee | 10.00 | | 5,327.50 |
| 11/11/03 | jan late fee | 10.00 | | 5,337.50 |
| 11/11/03 | feb late fee | 10.00 | | 5,347.50 |
| 11/11/03 | mar late fee | 10.00 | | 5,357.50 |
| 11/11/03 | july late fee | 10.00 | | 5,367.50 |
| 11/11/03 | aug late fee | 10.00 | | 5,377.50 |
| 11/11/03 | sept late fee | 10.00 | | 5,387.50 |
| 11/11/03 | oct late fee | 10.00 | | 5,397.50 |
| 11/11/03 | nov late fee | 10.00 | | 5,407.50 |
| 12/01/03 | Condo Fee | 174.30 | | 5,581.80 |
| 12/11/03 | oct 02 late fee | 10.00 | | 5,591.80 |
| | | | | CONTINUED |

**Millbank Condominium**
c/o HPMG
Box PO 686
Northampton, MA 01060

Statement

Account:      MILL - 12 - clocol

Date:         03/09/04

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA  01040**

Payment:      _____

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | 2,524.80 |
| 05/11/03 | mar - late fee | 10.00 | | 2,534.80 |
| 05/12/03 | chk# 112  parc payment on may | | 166.00 | 2,368.80 |
| 06/01/03 | Condo Fee | 174.30 | | 2,543.10 |
| 06/01/03 | Marcus #44510 | 938.00 | | 3,481.10 |
| 06/06/03 | chk# 120  payment on past due | | 166.00 | 3,315.10 |
| 06/11/03 | sept late fee | 10.00 | | 3,325.10 |
| 06/11/03 | oct late fee | 10.00 | | 3,335.10 |
| 06/11/03 | nov late fee | 10.00 | | 3,345.10 |
| 06/11/03 | dec late fee | 10.00 | | 3,355.10 |
| 06/11/03 | jan late fee | 10.00 | | 3,365.10 |
| 06/11/03 | feb late fee | 10.00 | | 3,375.10 |
| 06/11/03 | mar late fee | 10.00 | | 3,385.10 |
| 07/01/03 | Condo Fee | 174.30 | | 3,559.40 |
| 07/01/03 | Marcus #44964 | 440.90 | | 4,000.30 |
| 07/11/03 | sept late fee | 10.00 | | 4,010.30 |
| 07/11/03 | oct late fee | 10.00 | | 4,020.30 |
| 07/11/03 | nov late fee | 10.00 | | 4,030.30 |
| 07/11/03 | dec late fee | 10.00 | | 4,040.30 |
| 07/11/03 | jan late fee | 10.00 | | 4,050.30 |
| 07/11/03 | feb late fee | 10.00 | | 4,060.30 |
| 07/11/03 | march late fee | 10.00 | | 4,070.30 |
| 07/11/03 | july late fee | 10.00 | | 4,080.30 |
| 08/01/03 | Condo Fee | 174.30 | | 4,254.60 |
| 08/01/03 | Marcus #45637 | 156.00 | | 4,410.60 |
| 08/11/03 | sept late fee | 10.00 | | 4,420.60 |
| 08/11/03 | oct late fee | 10.00 | | 4,430.60 |
| 08/11/03 | nov late fee | 10.00 | | 4,440.60 |
| 08/11/03 | dec late fee | 10.00 | | 4,450.60 |
| 08/11/03 | jan late fee | 10.00 | | 4,460.60 |
| 08/11/03 | feb late fee | 10.00 | | 4,470.60 |
| 08/11/03 | March late fee | 10.00 | | 4,480.60 |
| 08/11/03 | July late fee | 10.00 | | 4,490.60 |
| 08/11/03 | Aug late fee | 10.00 | | 4,500.60 |
| 09/01/03 | Condo Fee | 174.30 | | 4,674.90 |
| 09/01/03 | Marcus #46842 | 74.00 | | 4,748.90 |
| | | | | CONTINUED |

**Millbank Condominium**
c/o HPMG
Box PO 686
Northampton, MA 01060

Statement

| Account: | MILL - 12 - clocol |
| Date: | 03/09/04 |

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA   01040**

| Payment: | _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 1,096.90 |
| 01/11/03 | jan - late fee | 10.00 | | 1,106.90 |
| 02/01/03 | Condo Fee | 166.00 | | 1,272.90 |
| 02/10/03 | sept - late fee | 10.00 | | 1,282.90 |
| 02/10/03 | oct - late fee | 10.00 | | 1,292.90 |
| 02/10/03 | nov - late fee | 10.00 | | 1,302.90 |
| 02/10/03 | dec - late fee | 10.00 | | 1,312.90 |
| 02/10/03 | jan - late fee | 10.00 | | 1,322.90 |
| 02/10/03 | feb - late fee | 10.00 | | 1,332.90 |
| 03/01/03 | Condo Fee | 174.30 | | 1,507.20 |
| 03/11/03 | sept - late fee | 10.00 | | 1,517.20 |
| 03/11/03 | oct - late fee | 10.00 | | 1,527.20 |
| 03/11/03 | nov - late fee | 10.00 | | 1,537.20 |
| 03/11/03 | dec - late fee | 10.00 | | 1,547.20 |
| 03/11/03 | jan - late fee | 10.00 | | 1,557.20 |
| 03/11/03 | feb - late fee | 10.00 | | 1,567.20 |
| 03/11/03 | mar - late fee | 10.00 | | 1,577.20 |
| 03/31/03 | Marcus, Errico, Emmer & Brooks | 310.00 | | 1,887.20 |
| 04/01/03 | Condo Fee | 174.30 | | 2,061.50 |
| 04/11/03 | sept late fee | 10.00 | | 2,071.50 |
| 04/11/03 | oct late fee | 10.00 | | 2,081.50 |
| 04/11/03 | nov late fee | 10.00 | | 2,091.50 |
| 04/11/03 | dec late fee | 10.00 | | 2,101.50 |
| 04/11/03 | jan late fee | 10.00 | | 2,111.50 |
| 04/11/03 | Feb late fee | 10.00 | | 2,121.50 |
| 04/11/03 | mar late fee | 10.00 | | 2,131.50 |
| 04/11/03 | apr late fee | 10.00 | | 2,141.50 |
| 04/25/03 | chk# 107  parc payment on April condo fee only | | 162.00 | 1,979.50 |
| 05/01/03 | Condo Fee | 174.30 | | 2,153.80 |
| 05/01/03 | Marcus #43375 | 311.00 | | 2,464.80 |
| 05/11/03 | spet - late fee | 10.00 | | 2,474.80 |
| 05/11/03 | oct - late fee | 10.00 | | 2,484.80 |
| 05/11/03 | nov late fee | 10.00 | | 2,494.80 |
| 05/11/03 | Dec - late fee | 10.00 | | 2,504.80 |
| 05/11/03 | Jan - late fee | 10.00 | | 2,514.80 |
| 05/11/03 | feb - late fee | 10.00 | | 2,524.80 |
| | | | | CONTINUED |

**Milibank Condominium**
c/o HPMG
Box PO 686
Northampton, MA 01060

Statement

Account:      MILL - 12 - clocol

Date:         03/09/04

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA  01040**

Payment:      _____

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | 722.00 |
| 06/01/02 | Condo Fee | 166.00 | | 888.00 |
| 06/04/02 | chk# 342  bal on 2001 past due and parc payment fo | | 166.00 | 722.00 |
| 06/20/02 | chk# 04400575  bal on feb, mar,april,may and june | | 722.00 | 0.00 |
| 07/01/02 | Condo Fee | 166.00 | | 166.00 |
| 07/11/02 | Late fee-July | 10.00 | | 176.00 |
| 08/01/02 | Condo Fee | 166.00 | | 342.00 |
| 08/11/02 | Late fee-July | 10.00 | | 352.00 |
| 08/11/02 | Late fee-Aug. | 10.00 | | 362.00 |
| 09/01/02 | Condo Fee | 166.00 | | 528.00 |
| 09/10/02 | late fee-July | 10.00 | | 538.00 |
| 09/10/02 | Late fee-Aug | 10.00 | | 548.00 |
| 09/10/02 | Late fee-Sept | 10.00 | | 558.00 |
| 09/16/02 | Notice | 16.00 | | 574.00 |
| 09/16/02 | Notice | 19.70 | | 593.70 |
| 09/17/02 | chk# 417105  july,1 july LF's, Aug, 2  Aug LF's | | 362.00 | 231.70 |
| 10/01/02 | Condo Fee | 166.00 | | 397.70 |
| 10/11/02 | sept late fee | 10.00 | | 407.70 |
| 10/11/02 | oct late fee | 10.00 | | 417.70 |
| 11/01/02 | Condo Fee | 166.00 | | 583.70 |
| 11/11/02 | late fee-sept | 10.00 | | 593.70 |
| 11/11/02 | late fee-oct | 10.00 | | 603.70 |
| 11/11/02 | late fee-nov | 10.00 | | 613.70 |
| 12/01/02 | Condo Fee | 166.00 | | 779.70 |
| 12/11/02 | late fee - sept | 10.00 | | 789.70 |
| 12/11/02 | late-oct | 10.00 | | 799.70 |
| 12/11/02 | late fee - nov | 10.00 | | 809.70 |
| 12/11/02 | late fee - dec | 10.00 | | 819.70 |
| 12/12/02 | legal fee | 25.00 | | 844.70 |
| 12/23/02 | Hampden County Sheriffs | 28.65 | | 873.35 |
| 12/23/02 | Hampden County Sheriffs | 17.55 | | 890.90 |
| 01/01/03 | Condo Fee | 166.00 | | 1,056.90 |
| 01/11/03 | sept late fee | 10.00 | | 1,066.90 |
| 01/11/03 | oct- late fee | 10.00 | | 1,076.90 |
| 01/11/03 | nov - late fee | 10.00 | | 1,086.90 |
| 01/11/03 | dec - late fee | 10.00 | | 1,096.90 |
| | | | | CONTINUED |

**MARCUS, ERRICO, EMMER & BROOKS, P.C.**

Attorneys At Law

Suite 107
45 Braintree Hill Office Park
Braintree, Massachusetts 02184
Telephone (781) 843-5000
Facsimile (781) 843-1529
e-mail law@meeb.com

Janet Oulousian Aronson *◊
Richard E. Brooks
William DeBear
Seth Emmer *
V. Douglas Errico †
Stephen M. Marcus
Thomas O. Moriarty *‡
Jeffrey C. Turk

Edmund A. Allcock
Paul J. Barresi
Patrick J. Brady
Laura White Brandow
Alison L. Forbes
Jill Sullivan Joyce†
John D. Kalish ‡
Mark A. McCormack
MaryLou Muirhead
Therese Quijano
John E. Shaffer, P.E. °
Joseph S. Saurino
Douglas Troyer ◊

° Also admitted in CT
† Also admitted in NY
* Also admitted in NH
‡ Also admitted in FL
◊ Also admitted in RI
◊ Also admitted in ME

Boston - (617) 367-0006
Springfield - (413) 736-7500
Worcester - (508) 791-2120
New Hampshire - (603) 891-2006
Rhode Island – (401) 351-2221

Direct Dial Number
(781) 843-5000 Ext. 109
tquijano@meeb.com

April 5, 2004

Joseph J. Lange, Esquire
Lyon & Fitzpatrick, LLP
14 Bobala Road
Holyoke, MA 01040

RE:    **Millbank Place Condominium Trust
        v. Donald Cloutier, et al
        C.A. No. 2003 345 CV 000322**

Dear Attorney Lange:

I am in receipt of your correspondence dated April 1, 2004. I do apologize for the delay in responding but I had a medical emergency which prevented me from responding last week.

This correspondence shall confirm that the Condominium Association has agreed to pay for the replacement of two panes of glass on the "roof windows" and the third pane shall be the responsibility of the unit owner. We can arrange for such work to be done as soon as we receive confirmation that your client will be paying for the pane for the third window which cost has been quoted as $1,193.34. Upon such written confirmation, we will arrange for this work to be done immediately.

We have further received your request for a 6(d) Certificate indicating the full amount of the outstanding amounts due as your clients have not accepted the Association's offer to settle this matter for a waiver of $1,420.00 in late fees. The full amount due and owing as of this date is $7,524.60. This correspondence shall confirm that such 6(d) Certificate indicating this amount is being drawn up and will be forwarded to your attention.

Should you have any questions or concerns, please do not hesitate to contact this office directly.

Very truly yours,

MARCUS, ERRICO, EMMER & BROOKS, P. C.

Therese Quijano

TQ/nlgm
cc: Millbank Place Condominium Trust

MILLBANK PLACE CONDOMINIUM

CERTIFICATE PURUSANT TO MASSACHUSETTS
GENERAL LAWS CHAPTER 183a, SECTION 6 (D)

Reference is hereby made to that certain Declaration of Trust and By-Laws creating the Millbank Place Condominium Association dated October 24, 1986, recorded with the Hampshire County Registry of Deeds in Book 2833, Page 267, and thereafter amended, which Declaration of Trust established the organization of Unit Owners at Millbank Place Condominium Association pursuant to the provisions of Massachusetts General Laws, Chapter 183A, and the provisions of the Master Deed creating Millbank Place Condominium, dated October 24, 1986, recorded with the Hampshire County Registry of Deeds in Book 2833, Page 241, as may be amended.

The undersigned, being designated as having authority to execute this Certificate, does hereby certify, pursuant to Massachusetts Laws Chapter 183A, Section 6(d), that common expenses or other sums assessed against Donald and Colleen Cloutier, the owners of 351 Pleasant Street # 12 at Millbank Place One Condominium, Northampton, Massachusetts, are owed in the amount of $8,684.36 through May 31, 2004 and the Millbank Place One Condominium Association hereby waives any Right of First Refusal applicable to the subject unit.

Executed as a sealed instrument this 13th day of May 2004.

HAMPSHIRE PROPERTY MANAGEMENT GROUP, INC.
AGENT FOR MILLBANK PLACE ONE CONDOMINIUM
ASSOCIATION

By _____
Patricia Taylor, Senior Property Manager

COMMONWEALTH OF MASSACHUSETTS

On this 13th day of May 2004, before me, the undersigned notary public, personally appeared Patricia Taylor, proved to me through satisfactory evidence of identification, which is personal knowledge, to be the person whose name is signed on the preceding or attached document in my presence.

_____
Notary Public                              Russell B. Jopson, Jr.
My Commission expires:            Notary Public
                                              My Commission Expires March 26, 2010

MILLBANK PLACE CONDOMINIUM

CERTIFICATE PURUSANT TO MASSACHUSETTS
GENERAL LAWS CHAPTER 183a, SECTION 6 (D)

Reference is hereby made to that certain Declaration of Trust and By-Laws creating the Millbank
Place Condominium Association dated October 24, 1986, recorded with the Hampshire County
Registry of Deeds in Book 2833, Page 267, and thereafter amended, which Declaration of Trust
established the organization of Unit Owners at Millbank Place Condominium Association
pursuant to the provisions of Massachusetts General Laws, Chapter 183A, and the provisions of
the Master Deed creating Millbank Place Condominium, dated October 24, 1986, recorded with
the Hampshire County Registry of Deeds in Book 2833, Page 241, as may be amended.

The undersigned, being designated as having authority to execute this Certificate, does hereby
certify, pursuant to Massachusetts Laws Chapter 183A, Section 6(d), that common expenses or
other sums assessed against Donald and Colleen Cloutier, the owners of 351 Pleasant Street # 12
at Millbank Place One Condominium, Northampton, Massachusetts, are owed in the amount of
$7,833.60 through April 30, 2004 and the Millbank Place One Condominium Association hereby
waives any Right of First Refusal applicable to the subject unit.

Executed as a sealed instrument this 22nd day of April 2004.

HAMPSHIRE PROPERTY MANAGEMENT GROUP, INC.
AGENT FOR MILLBANK PLACE ONE CONDOMINIUM
ASSOCIATION

By: _____
Patricia Taylor, Senior Property Manager


COMMONWEALTH OF MASSACHUSETTS


On this 22nd day of April 2004, before me, the undersigned notary public, personally appeared
Patricia Taylor, proved to me through satisfactory evidence of identification, which is personal
knowledge, to be the person whose name is signed on the preceding or attached document in my
presence.

_____
Notary Public
My Commission expires:            Russell B. Jopson, Jr.
                                  Notary Public
                                  My Commission Expires March 26, 2010

EXHIBIT "F"

# LYON & FITZPATRICK, LLP
## ATTORNEYS AND COUNSELORS AT LAW

ARCHER B. BATTISTA
JAMES F. DONNELLY
PETER C. CONNOR
PRISCILLA FIFIELD CHESKY
ROBERT C. SACCO
JOSEPH J. LANGE
CHRISTINE A. CAHILLANE

WHITNEY PLACE
14 BOBALA ROAD
HOLYOKE, MASSACHUSETTS 01040

TELEPHONE (413) 536-4000
FACSIMILE (413) 536-3773

www.lyonfitzpatrick.com

OF COUNSEL

WILLIAM D. FITZPATRICK

CLARKE S. LYON
(1920 - 2002)

October 27, 2004

*Via Certified Mail and First Class Mail*

Trustees of Millbank Place Condominium Trust
351 Pleasant Street
Northampton, MA 01060

Hampshire Property Management Group, Inc.
15 Brewster Court
Northampton, MA 01060

Marcus, Errico, Emmer & Brooks, P.C.
45 Braintree Hill Office Park - Suite 107
Braintree, MA 02184

> re:   **Colleen A. Cloutier & Donald L. Cloutier**
> **Millbank Place Condominiums**
> **351 Pleasant Street, Unit No: 12, Northampton, MA  01060 ("Unit")**

Dear Sirs/Madams:

As you know, this office represents Mr. and Mrs. Donald Cloutier. This letter is sent to you pursuant to the provisions of Massachusetts General Laws c. 93A, §9 and any other applicable laws. At this time, I request that you refrain from contacting the Cloutiers regarding this matter and direct all communications/correspondence to the undersigned.

Ms. Cloutier owned the Unit since April 10, 1992 to the transfer to Ms. Kimberly Lange on May 19, 2004. On May 10, 2001, Ms. Cloutier added Mr. Cloutier onto the deed for the Unit. The Unit is subject to the terms of the Master Deed. Pursuant to §6B of the Master Deed recorded at Book 2833, page 241 at the Hampshire County Registry of Deeds on or about October 24, 1986, the "common elements" of the units of Millbank Place Condominium Association (hereinafter, "Association") consist of:

Trustees of Millbank Place Condominium Trust
Hampshire Property Management Group, Inc.
Marcus, Errico, Emmer & Brooks, P.C.
October 27, 2004
Page 2.

"All portions of the Building at 351 Pleasant Street not included in any Unit by Virtue of Paragraph (5) above, including, without limitation, the following to the extent such may exist from time to time:

 (i) The foundations, structural members, beams, supports, exterior walls, exterior doors, frames for the exterior windows and doors leading from Units to common areas, roof and entrances and exits of the Building, common walls within the Building, and structural walls or other structural components contained entirely within any Unit;"

Section 11A of the Master Deed states as follows:

"(A) The organization through which the Unit Owners will manage and regulate the Condominium established hereby is the Condominium Trust. The Condominium Trust establishes an organization of which the Unit Owners shall be members and in which Unit Owners shall have Beneficial Interest in proportion to the percentage of undivided interest in the Common Elements of the Condominium to which they are entitled under this Master Deed."

Section 14 of the Master Deed, states as follows:

"Each Unit Owner shall have an easement in common with owners of all other Units to use all pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements located in any of the other Units serving his Unit. Each Unit shall be subject to use of the pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements serving such other Units and located in such Unit. The Trustee shall have a right of access to each Unit to inspect the same, to remove violations therefrom, and to maintain, repair, or replace the Common Elements contained therein or elsewhere in the Building."

Exhibit 3 to the Master Deed identifies the boundaries of the units. It defines the boundary of the Units as it pertains to windows as the interior surface of the glass and window frames.

The Trustees of Millbank Place Condominium Trust (hereinafter, "Trustees") on various occasions have asserted that the Declaration of Trust, §2 allegedly states "common expenses, profit and funds, b. budget states, 'the Board of Trustees may assess a late charge of ten ($10.00) dollars per month for each late payment or a part thereof if the amount due is not paid by the tenth (10th) day of each month that the amount due remains unpaid. The amounts due hereunder, together with late charges shall constitute a lien on the unit.'"

Trustees of Millbank Place Condominium Trust
Hampshire Property Management Group, Inc.
Marcus, Errico, Emmer & Brooks, P.C.
October 27, 2004
Page 3.

On or about October 18, 2002, Ms. Cloutier notified the Trustees in writing regarding water damage caused to her Unit by the leaking skylight. A copy of the letter is attached hereto as Exhibit "A" and incorporated by reference. The Cloutiers suffered damages to their personal property due to water damage. This includes repair to an antique china cabinet and hope chest in the amount of $350.00. Replacement of the dining room table for $600.00. Tile installation in the amount of $350.00 below the skylights to prevent further water damage to sheetrock due to the Trustees failure to accept liability to repair the skylights and the delay in finally making the repairs.

In addition, due to the constant failure to the Trustees to make the repairs, the Cloutiers spent approximately $2,500.00 repairing and refinishing the wood floors beneath the skylights, repair of the windows below the skylights, repair of the sheetrock, repainting the unit and replacing the window hardware components due to the water damage. These damages total $4,800.00.

On or about October 30, 2002, the Hampshire Property Management Group, Inc. (hereinafter, "Hampshire Property Management") as agent to the Trustees responded to Ms. Cloutier's request for repairs, and indicated that the Trustees' responsibility for making said repairs was uncertain. A copy of the letter is attached hereto as Exhibit "B" and incorporated by reference.

At approximately the same time, on or about October 28, 2002, the Cloutiers rented the Unit to Dawn Faucher and Dena Rideout (hereinafter, "Tenants") at a monthly rate of $1,200.00. On December 27, 2002, Hampshire Property Management made demand on the Cloutiers' Tenants to make further rent payments to the Trustees. Subsequently, on March 25, 2003, the Trustees through counsel made a subsequent demand on the Cloutiers' Tenants to make further rent payments to the Trustees.

Based on the Trustees' failure to make repairs, the Cloutiers' Tenants failed to pay their rent to the Cloutiers from April 2003 (partial payment of $310.00) to their vacating the Unit in late September 2003. As late as July 25, 2003, the Trustees failed to respond to this office's request to repair the water damage and repair the skylights. As the Trustees failed to make the repairs to the skylight, the Cloutiers had no other choice, but to put the Unit out on the market to sell it.

Presumably, based on the Cloutiers' complaints, Ms. Patricia Taylor of Hampshire Property Management finally confirmed with the Cloutiers' realtor, Mr. Daniel Schachter on or about November 20, 2003, that the Trustees had an agreement with R & R Window Contractors, Inc. to repair the "roof-window" at the Unit. Ms. Taylor alleged that the timing of the repairs depended entirely on the schedule of R & R Window Contractors and that the Trustees had requested the repair approximately six months before. It is the Cloutier's position that waiting six months to make repairs to the skylights was entirely unacceptable and the Trustees and/or Hampshire Property Management

Trustees of Millbank Place Condominium Trust
Hampshire Property Management Group, Inc.
Marcus, Errico, Emmer & Brooks, P.C.
October 27, 2004
Page 4.

should have obtained an alternative contractor. In fact, the Cloutiers' realtor, Mr. Schachter was able to obtain an estimate from Lizotte Glass Incorporated (hereinafter "Lizotte") relatively quickly, and subsequently, they made the repairs.

On or about January 7, 2004, the Cloutiers signed a Purchase and Sale Agreement to sell the Unit with a provision that the Trustees remedy the water leak above the sunroom or have a scheduled plan for such repairs. Subsequently, the prospective purchaser was prepared to close as early as January 28, 2004. However due to Hampshire Property Management and the Trustee's attorneys, Marcus, Errico, Emmer & Brooks, P.C. (hereinafter, "Law Firm") failure to respond to the Cloutiers or the buyer's requests for a schedule of repairs the closing was continued.

On or about March 10, 2004, the Trustees attempted to make repairs to the skylights at the Unit. Lizotte's indicated that all three glass units of the skylights needed to be repaired as two panes of glass were filled with water and one was fogged. During early April, the Law Firm on behalf of the Association agreed to replace two of the three skylights. The Cloutiers believe that all the repairs to the skylights were the responsibility of the Trustees, and that the Trustees or Hampshire Property Management forced the Cloutier's to pay $1,193.33 to repair one of the glass pane skylights in order to sell the Unit.

Based on the delay in making repairs, the closing was scheduled to take place on April 23rd. However, during a "walk through" of the Unit on the evening of April 22nd, the skylights were leaking. As such, the prospective buyer would not close due to the water leaks and at the same time her interest rate was to expire as of April 23rd. Therefore, it cost the Cloutiers an additional $359.00 to relock the buyer's interest rate as she was holding the Cloutiers responsible. Furthermore, the buyer refused to close until the skylights were replaced to make certain that there were no more leaks. Finally, on May 19, 2004, the Cloutiers were able to sell the Unit.

During the Spring of 2004, the Cloutiers' counsel obtained payoff figures for the outstanding amount owed on the Unit which were as follows:

| 1. | March 10, 2004 | $7,047.84; |
| 2. | April 5, 2004 | $7,524.60; |
| 3. | April 30, 2004 | $7,833.60; and |
| 4. | May 13, 2004 | $8,634.36. |

Copies of the payoff figures are attached hereto collectively as Exhibit "C."

The monthly condominium charge on this Unit was $184.76. Apparently, the additional charges are for either attorney's fees and/or late charges. As for the attorney's fees, any fees incurred by the Trustees was due to their failure to repair the skylights, and the Cloutiers are not responsible

Trustees of Millbank Place Condominium Trust
Hampshire Property Management Group, Inc.
Marcus, Errico, Emmer & Brooks, P.C.
October 27, 2004
Page 5.

for them. As for the late charges, these late charges are excessive because the Trustees compounded the late charge for each month.

The above acts are in violation of Massachusetts General Laws 93A. First, pursuant to the Master Deed, the Trustees have the responsibility of all maintenance, repairs and replacement to the common elements. It is undisputed that the primary reason that the above described sale was canceled was due to the failure of the Trustees to take responsibility for the repair of the skylights and then to repair it timely. The failure of the Trustees and/or its Hampshire Property Management has caused damages to my clients. The failure of the Trustees to maintain, repair and replace the common elements of the Unit for use and occupancy and conveyance is a breach of contract as set forth in the Master Deed. This breach was exasperated by the failure of the Trustees to remedy the problem which they were on notice of on October 18, 2002. In addition, the Trustees' action or inaction are in breach of implied and expressed warranties of the parties.

Furthermore, the Trustees have violated Massachusetts General Laws c. 271 §49 by compounding the late charges each month for each late monthly charge. This is punitive in nature. As the late charges exceed 20% annual interest, it is a usurious interest rate. Furthermore, the late charges exacted from the Cloutiers by the Trustees are unconscionable, grossly excessive and in violation of the law. The Trustee, by violating the usurious laws under M.G.L. c. 271, §49 have also violated M.G.L. c. 93A.

In addition, on numerous occasions, Hampshire Property Management sent numerous communications to the Cloutiers demanding money in violation of the Federal Fair Debt Collection Practice Act (hereinafter, "FFDCPA") and including but not limited to the letters from Hampshire Property Management which are attached hereto collectively as Exhibit "D". As Hampshire Property Management did not follow the FFDCPA, they are also in violation of M.G.L. c. 93A. In addition, Hampshire Property Management violated portions of 940 C.M.R. 7.04 and 7.07 which states:

7.04 "(1) Stating that the creditor will take any action, including legal action, which in fact is not taken or attempted on such debtor's account, unless an additional payment or a new agreement to pay has occurred within the stated time period. For purposes of this division the time period in connection with such statement shall be presumed to expire 14 days from the date the statement is made, unless otherwise indicated by the creditor."

7.07 "It shall constitute a deceptive act or practice to engage in any of the following practices: . . . . (6) Any representation that an existing obligation of a debtor may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, if in fact such fees or charges may not legally be added to the existing obligation."

Trustees of Millbank Place Condominium Trust
Hampshire Property Management Group, Inc.
Marcus, Errico, Emmer & Brooks, P.C.
October 27, 2004
Page 6.

Furthermore, based on the relationship of the parties, the Trustees had a fiduciary duty to the Cloutiers. According to the Master Deed, the Trustees are responsible for maintaining, repairing and replacing the Common Elements of the Condominium. They failed to do that and breached their fiduciary duty with the Cloutiers.

Finally, the Law Firm violated M.G.L. c. 93A, by charging the Cloutiers attorney's fees incurred by the Trustees due to their failure to repair the skylights. This is evidenced by the significant increases in the 6D Certificate amount each time a new 6D Certificate was requested on several occasions in attempting to close this Unit in the Spring of 2004. The Law Firm as experienced counsel under the condominium law statute should have differentiated between the collection of condominium fees and legal advice on managing the units. Further, by adding the legal fees to the 6D Certificate, the Law Firm extorted said money from the Cloutiers. This is in violation of 940 C.M.R. 7.07 (6) as the Cloutiers' were not responsible for the legal fees at it pertained to the repair of the skylights.

The Cloutiers' have the following claims, among others, against the Trustees, Hampshire Property Management and the Law Firm:

1. Breach of Contract;
2. Negligence;
3. Breach of Implied Warranty;
4. Breach of Express Warranty;
5. Breach of Fiduciary Duty;
6. Violation of M.G.L. c. 271 §49; and
7. Violations of M.G.L. c. 93A.

As relief for the following breach is in violation of the applicable statutes, I demand on behalf of the Cloutiers the following damages:

| | | |
|---|---|---|
| 1. | Lost rental income from April 2003 through May 15, 2004 | $14,690.00; |
| 2. | Miscellaneous damages to the Unit and personal property loss | $ 5,993.33 |
| 3. | Lost opportunity/lost profit | $20,000.00 |
| 4. | Emotional distress | $10,000.00 |
| 5. | Reimbursement of Buyers' Rate Lock | $   359.00 |
| 6. | Attorney's fees | $ 8,000.00 |
| 7. | Legal fees paid to Lender - Northampton Cooperative Bank | $   800.00 |
| | TOTAL | $59,842.33 |

Trustees of Millbank Place Condominium Trust
Hampshire Property Management Group, Inc.
Marcus, Errico, Emmer & Brooks, P.C.
October 27, 2004
Page 7

        In addition, I demand a detailed itemization of all charges assessed against the Cloutiers on their 6D Certificate of May 13, 2004. In addition, I demand an itemization of all legal fees and costs charged by the Law Firm which were also assessed on the 6D Certificate of May 13, 2004. Finally, I demand a refund check for any charges which were in violation of the usuary laws and any attorney's fees which were charged to the Cloutiers which had to do with the failure of the Trustees and/or Hampshire Property Management's failure to repair the skylights timely. As for the attorney's fees requested by the Cloutiers above, this time includes all time charged to the Cloutiers by this law firm for the defense of the condominium foreclosure proceeding filed in Northampton District Court, Civil Action Number 03-CV-322, the sale of the Unit and this 93A demand matter.

        You are advised that this letter is being sent to you pursuant to Massachusetts General Law Chapter 93A, Section 9. You have thirty (30) days to respond to this demand letter. You should further be advised that Ch. 93A of Massachusetts General Laws also provides for the award of not only compensatory damages, but also for costs and attorney's fees. In addition, if your violations of the statute are found to be willful or knowing violations, or if you refuse in bad faith to grant relief based upon this demand letter, then the Court may award punitive damages of two or three times the compensatory damages.

        If you wish to discuss this matter further, please contact me. I look forward to receiving your response.

                                            Very truly yours,

                                            JJ Lange

                                            Joseph J. Lange

JJL/kal
Enclosure

cc:    Mr. and Mrs. Donald Cloutier (w/o enclosures)

U:\WP80\C\Cloutier\93A Ltr.wpd

# MARCUS, ERRICO, EMMER & BROOKS, P.C.

Attorneys At Law

Suite 107
45 Braintree Hill Office Park
Braintree, Massachusetts 02184
Telephone (781) 843-5000
Facsimile (781) 843-1529
website  www.meeb.com

Janet Oulousian Aronson *◊
Richard E. Brooks
William DeBear
Seth Emmer *
V. Douglas Errico †
Stephen M. Marcus
Thomas O. Moriarty *‡
Jeffrey C. Turk *

Edmund A. Allcock *
Paul R. Bagley ◊
Paul J. Barresi
Patrick J. Brady ‡
Laura White Brandow *
Mark S. Einhorn °
Alison L. Forbes
Jill Sullivan Joyce †
John D. Kalish ‡
Kathryn E. Loebs
MaryLou Muirhead
Therese Quijano
Joseph D. Saurino
John E. Shaffer, P.E.°
Douglas A. Troyer ◊

° Also admitted in CT
† Also admitted in NY
* Also admitted in NH
‡ Also admitted in FL
◊ Also admitted in RI
�◊ Also admitted in ME

Boston – (617) 367-0006
Springfield – (413) 736-7500
Worcester – (508) 791-2120
New Hampshire – (603) 891-2006
Rhode Island – (401) 351-2221

Direct Dial Number
(781) 843-5000 x 110
pbarresi@meeb.com

November 24, 2004

**CERTIFIED MAIL #7003 3110 0001 6204 4662**
**RETURN RECEIPT REQUESTED**
**FIRST CLASS MAIL**

Joseph J. Lange, Esq.
Lyon & Fitzpatrick, LLP
14 Bobala Road
Holyoke, MA 01040

Re:    **Colleen A. Cloutier and Donald L. Cloutier**
       **Millbank Place Condominium**
       **351 Pleasant Street, Unit #12, Northampton, MA 01060**
       **Response Pursuant to M.G.L. c. 93A**

Dear Mr. Lange:

Please be advised that this firm represents the Millbank Place Condominium Trust ("the Association"), Hampshire Property Management Group, Inc. ("Hampshire") and Marcus, Errico, Emmer & Brooks, P.C. ("MEEB") in connection with the above listed matter. This correspondence is sent in response to the formal demand for relief by Colleen A. Cloutier and Donald A. Cloutier pursuant to Massachusetts General Laws Chapter 93A.

Your allegation that the Association has some liability to the Cloutiers under the Consumer Protection Statute is incorrect. The Trustees are the duly elected officers of the organization of unit owners at the Millbank Place Condominium, an entity in which your clients were owners and members. Case law has unquestionably established that the provisions of Chapter 93A, and the regulations of the Attorney General promulgated pursuant thereto, are inapplicable to a condominium unit owner organization.

The Consumer Protection Act applies only to entities engaged in trade or commerce. *M.G.L. c. 93A §2*. The statute does not apply to transactions that are strictly private in nature and do not occur in a business context. *Latner v. Carson,* 378 Mass. 606, 608 (1978); *Begelfer v. Najarian,* 381 Mass. 177, 190-191 (1980). The term "persons engaged in . . . trade or commerce" was intended to refer specifically to individuals acting in a business context. *Lynn v. Nashawaty,* 12 Mass.App.Ct. 310 (1981). The organization of unit owners of a condominium, is not engaged in trade or commerce. Rather it is a creature of statute, existing to operate the condominium for the benefit of its members. There is no mercantile component to the organization's

Joseph J. Lange, Esq.
November 24, 2004
Page 3

Turning to the facts, your demand letter completely omits the Cloutiers' outstanding balance and failure to pay common area charges to the Association. As you know, the Cloutiers paid nothing to the Association for nearly one year, from June 11, 2003 to June 2, 2004. The Cloutiers owed a debt to the Association from July 1, 2002 until their payoff from sale proceeds twenty-three months later. All actions taken by the Association, Hampshire and MEEB were designed to compel payment of a validly due balance from the Cloutiers.

The following three provisions of the Millbank Place Condominium constituent documents bear upon responsibility for the water leak affecting the Cloutiers' unit. Based upon these provisions, it is clear that unit owners at Millbank Place have a degree of responsibility for the maintenance and repair of roof windows.

1.    Section 6(D) of the Master Deed of the Millbank Place Condominium clearly states that, "The glass in windows of the Units are not Common Elements."

2.    Exhibit 3 to the Master Deed of the Millbank Place Condominium defines the boundaries of units, in relevant part, as follows:

    D.    Exterior Building Walls, Doors and Windows

    (iii)    windows: the interior surface of the glass and window frames.

3.    Section 12 of Article V of the Declaration of Trust of the Millbank Place Condominium states, in relevant part, that, "The Unit Owners shall be responsible for the proper maintenance and repair of the interior of their respective Units."

When Hampshire first received written notice from your clients about leaks from the overhead windows, it responded within two weeks. Although responsibility for the leaks was uncertain, the Association agreed that R&R Windows would repair one overhead window at the property to determine why the overhead window had failed. After that repair, the Association would able to determine whether the Unit Owner or the Association was responsible for overhead window repairs. In fact, R&R did successfully repair the exterior caulking and flashing for one overhead window in May 2003.

Subsequent to that repair, the Association determined that it would pay for repairs to the exterior caulking and flashing around the Cloutiers' overhead windows. In June 2003, Patricia Taylor, as property manager for the Association, requested that R&R repair the exterior caulking and flashing around the Cloutiers' overhead windows. This was a complex type of window repair, and R&R was one of few companies willing to undertake the work. R&R indicated that it could do the work within several weeks. Ms. Taylor called R&R at least once a month from June 2003 through November 2003, inquiring when the work would be started. Each time R&R told her that they would be ready to start within several weeks. The Association and Hampshire were actively attempting to get R&R to do the promised work, and did nothing to obstruct or delay the work. During the period from November 2002 to November 2003, communication from the Cloutiers or their representatives about the overhead windows was very limited.

Joseph J. Lange, Esq.
November 24, 2004
Page 4

Due to R&R's many unfulfilled promises, the parties eventually approached Lizotte Glass, Inc. in December 2003 to perform repairs to the overhead windows. While Lizotte provided an estimate on or about January 2004, it did not commence work until March 10, 2004. My clients did nothing to cause this delay, and were ready and eager at all times for Lizotte to do the work. Contrary to your assertions, my clients did not fail to respond to the Cloutiers' or the buyer's request for a schedule of repairs. Any delay was caused by inclement weather, by Lizotte's busy schedule and by the unit buyer's attempt to coordinate additional glass replacement with Lizotte.

Lizotte made repairs to the exterior caulking and flashing on or about March 10, 2004. After receiving a report from Lizotte, the Association decided to replace two panes of glass in the roof window which were filled with water. It was not until mid-April that the Cloutiers confirmed in writing that they would pay for the third glass pane. The Association promptly ordered the glass from Lizotte. The closing was scheduled for April 23, 2004. All parties understood that the glass panes would be replaced after April 23. The buyer apparently refused to close on April 23 after discovering leaking water during an April 22 walk through. The fact that the windows continued to leak after Lizotte's first repair supports the Association's desire to have R&R do the work.

The buyer's refusal to close on April 23 was not proximately caused by my clients' actions. It was understood that all repairs were not complete by April 23. The replacement of glass panes was intended to, and in fact did, take place after April 23. My clients are not responsible for the buyers' additional rate lock fee of $359.00, or any other alleged damages arising after April 23, 2004. The Cloutiers and the buyers had the option of holding the closing after all repairs were done, but chose not to do so. You also omit the salient fact that the Association paid to repair the wall, sill, trim and floor beneath the roof window in May 2004.

Your demand letter also contains other legal theories which are not supported by the facts. You claim that the Association violated G.L. c. 271, sec. 49 by charging usurious interest rates. This statute applies only to interest charged in exchange for "either a loan of money or other property." There has been no loan between the Association and the Cloutiers. Furthermore, the Association never charged the Cloutiers interest on their unpaid balance, only late fees for payments which were not made. Finally, Article V, Section 2 of the Declaration of Trust of the Millbank Place Condominium expressly authorizes late charges of $10.00 for each month that a duly assessed common area charge remains unpaid after the tenth day of the month. When there has been no loan and no interest charged, there can be no usury claim.

Your demand letter baldly asserts that the Trustees have breached "implied and express warranties of the parties." No further information is provided to support this allegation. I am unaware of any warranties, implied or express, which run from the trustees of a condominium to a unit owner. If you are somehow attempting to claim that there has been a breach of warranty relating to the construction or installation of the windows, such a claim would properly be directed against a developer, builder or installer. Neither the Association, Hampshire or MEEB could have any liability to the Cloutiers for breach of warranty.

Your claim for lost rent in the amount of $14,690.00 has no basis in law or in fact. The Cloutiers' tenants apparently paid no rent between April and September 2003. The tenants certainly never paid rent to the Association at any time. The Cloutiers failed in their duty as landlords to confirm

Joseph J. Lange, Esq.
November 24, 2004
Page 5

that rent was being paid, or to take action to evict their non-paying tenants. I understand that the Cloutiers had separated during this time, and each apparently thought the other was receiving the rent. Furthermore, the Cloutiers had a duty to mitigate their supposed damages by attempting to re-let the unit. Your have made a tremendous leap of logic by concluding that the alleged failure to repair the skylights caused fourteen (14) months of lost rent. The failure of the Cloutiers to collect rent cannot be attributed to the Association or Hampshire.

Your claims about violations of the debt collection statutes are similarly misplaced. You assert that Hampshire violated the Fair Debt Collection Practices Act, but do not describe the violations. You have attached two incomplete letters from Hampshire as Exhibit D to your demand. Each of these letters lacks their second page which contained the FDCPA Miranda notice. To the extent that the alleged FDCPA violation consists of failure to include the Miranda notice, you are incorrect.

You have not sufficiently described the alleged violations of the Massachusetts Attorney General's regulations, 940 CMR 7.04 and 940 CMR 7.07. Hampshire has not engaged in any deceptive acts while attempting to collect a valid debt from the Cloutiers. As you know, G.L. c. 183A, sec. 6(b) makes a unit owner personally liable for attorneys' fees incurred in the collection of unpaid common expenses. Furthermore, the statute requires the Association to wait at least thirty (30) after sending a notice of delinquency to the unit owner before contacting the first mortgagee. The letters you have attached as Exhibit D do not constitute deceptive debt collection practices.

I now turn to your itemized damage claims. As noted above, the lost rent claim cannot be attributed to my clients. The Cloutiers failed to collect rent from their tenants, failed to evict them, and failed to show that they tried to re-let the unit. Your $5,993.33 claim for miscellaneous damages is not itemized. To the extent that the miscellaneous damages include the Cloutiers' personal property, such as a china cabinet or hope chest, these claims should be made to the Cloutiers' homeowners insurance carrier. The Association's insurance does not cover personal property within a unit; it is the owner's responsibility to purchase that insurance. As for damages to the walls and floor of the unit, the Association carried out those repairs in May 2004.

Your $20,000.00 claim for lost opportunity/lost profit contains absolutely no details. A demand under c. 93A must specifically identify the nature of the injury suffered and how the damages were established. As your demand is defective in this regard, my clients must reject lost opportunity/lost profits claim. For the same reasons, my clients must reject the $10,000.00 emotional distress claim.

As explained above, my clients did not proximately cause and therefore have no responsibility for the $359.00 rate lock fee.

My clients are not liable for any of the Cloutiers' attorneys' fees. As noted above, no liability under 93A will lie against any of my clients, and therefore no attorneys' fees could be assessed. In addition, the Cloutiers have absolutely no basis for recovering their attorneys' fees for your representation of them in the foreclosure action or for the sale of their unit. The Cloutiers must accept responsibility for their own actions and bear their own expenses.

Joseph J. Lange, Esq.
November 24, 2004
Page 6

Your final damage claim - $800.00 to Northampton Cooperative Bank – again fails to meet the necessary level of description for a 93A demand letter. As such, my clients cannot evaluate its reasonableness, and must reject the claim.

In reviewing the legal bills in this matter, we have determined that certain attorneys' fees related to the window repairs should not have been billed to the Cloutiers. Many discussions between the Association's counsel and the Cloutiers' counsel covered several topics, including the collection litigation, the 6(d) certificate, the closing date and the window repairs. It is difficult to determine precisely which legal billing related only to the window repairs. Notwithstanding the difficulty, my clients are willing to make an offer of settlement which includes a refund of improperly billed attorneys' fees.

I will be sending you under separate cover copies of legal bills, a client ledger and an itemization of charges assessed against the Cloutiers on their 6(d) certificate of May 13, 2004.

In accordance with Chapter 93A, without admitting any liability, my clients offer $2,500.00 to the Cloutiers in full settlement of their claims in this matter.

Very truly yours,

MARCUS, ERRICO, EMMER
& BROOKS, P.C.

Paul J. Barresi

Enclosures

cc:    Millbank Place Condominium Trust
       Hampshire Property Management Group, Inc.

THE HAMPSHIRE PROPERTY MANAGEMENT GROUP, INC.

VIA CERTIFIED MAIL AND FIRST CLASS MAIL

Date:  August 8, 2002

Donald and Colleen Cloutier
351 Millbank Place # 12
Northampton, MA  01060



RE:    Notice of Delinquency to Unit Owners

Dear Donald and Colleen:

On behalf of Millbank Place One Condominium Association and in accordance with the provisions of Section 6(c) of the Massachusetts Condominium Act (M.G.L.A. c. 183A), notice is hereby given that you are delinquent in the payment of common expenses assessed to your Unit.

| | |
|---|---|
| July 2002 | $ 166.00 |
| August 2002 | $ 166.00 |
| Late fee - $10 | $  10.00 |
| Total: | $ 342.00 |

July payment will be 60-days delinquent on September 1, 2002. If payment is not made by that date, Millbank Place One Condominium Association will proceed with a 60-day Notice of Delinquency. Your mortgage company will be notified of your delinquency. You will be assessed any and all legal fees associated with this action or any subsequent action to collect this debt, and we reserve the right to invoke any provisions regarding late charges, interest, demand fees, and the like.

Also, you will be charged a late fee of $10.00 if your August condominium fee is not paid by August 10, 2002, and an additional late fee of $10.00 for July if that fee is not paid by August 10, 2002. According to the Declaration of Trust, Article V, By-Laws, Section 2: Common Expenses, Profit and Funds. "The Board of Trustees may assess a late charge of Ten ($10.00) Dollars per month for each late payment or part there of if the amount due is not paid by the tenth (10th) day of each month that the amount due remains unpaid."

Sincerely,

Patricia Taylor
Senior Property Manager

CC:    Board of Trustees

CERTIFIED MAIL #   7002 0460 0002 05?? ?22?

15 BREWSTER COURT • POST OFFICE BOX 686 • NORTHAMPTON, MASSACHUSETTS 01061
TELEPHONE 413-582-9970 • FACSIMILE 413-582-9953 • EMAIL INFO@HPMGNORTHAMPTON.COM

VIA CERTIFIED MAIL AND FIRST CLASS MAIL

Date: October 11, 2002

Donald and Colleen Cloutier
351 Pleasant Street # 12
Northampton, MA  01060



RE:   Notice of Delinquency to Unit Owners

Dear Donald and Colleen:

On behalf of Millbank Place One Condominium Association and in accordance with the provisions of Section 6(c) of the Massachusetts Condominium Act (M.G.L.A. c. 183A), notice is hereby given that you are delinquent in the payment of common expenses assessed to your Unit.

| | |
|---|---|
| September 2002 | $ 166.00 |
| October 2002 | $ 166.00 |
| Late fees | $  50.00 |
| Delinquency Notice delivered by sheriff | $  16.00 |
| Delinquency Notice delivered by sheriff | $  19.70 |

Total:                                                   $ 417.70

September payment will be 60-days delinquent on November 1, 2002.  If payment is not made by that date, Millbank Place One Condominium Association will proceed with a 60-day Notice of Delinquency.  Your mortgage company will be notified of your delinquency.  You will be assessed any and all legal fees associated with this action or any subsequent action to collect this debt, and we reserve the right to invoke any provisions regarding late charges, interest, demand fees, and the like.

You will continue to be charged late fees, sheriff's fees and legal fees as incurred by the Condominium Association.

Sincerely,

Patricia Taylor
Senior Property Manager

Cc:   Board of Trustees

CERTIFIED MAIL # 7002 0460 0002 0582 7940