## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30093-MAP

|  |  |
|---|---|
| *COLLEEN A. CLOUTIER and DONALD L.*<br>*CLOUTIER,*<br>        Plaintiffs<br>v.<br><br>*TRUSTEES OF MILLBANK PLACE*<br>*CONDOMINIUM TRUST, HAMPSHIRE PROPERTY*<br>*MANAGEMENT GROUP, INC. and MARCUS,*<br>*ERRICO, EMMER & BROOKS, P.C.,*<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I, III, IV, V, VI, AND VII OF PLAINTIFFS' COMPLAINT

### Introduction

Now come the Plaintiffs. Colleen A. Cloutier and Donald L. Cloutier (hereinafter referred to as the "Plaintiffs" or "Cloutiers"), and respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss Counts I, III, IV, V, VI, and VII of Plaintiffs' Complaint (hereinafter referred to as "Motion to Dismiss"). The Motion to Dismiss should be denied for the following reasons.

### Statement of facts

The Cloutiers were the owners of Unit #12 of Millbank Condominiums, located at 351 Pleasant Street. Northampton, Massachusetts (hereinafter referred to as "Unit"). Ownership of the Unit is subject to the terms of the Master Deed including membership in the organization of Unit Owners. Pursuant to §6(B) of the Master Deed. the "common elements" include:

1

"All portions of the Building at 351 Pleasant Street not included in any Unit by virtue of Paragraph (5) above, including, without limitation, the following to the extent such may exist from time to time:

      (i)    The foundations, structural members, beams, supports, exterior walls, exterior doors, frames for the exterior windows and doors leading from Units to common areas, roof and entrances and exits of the Building, common walls within the Building, and structural walls or other structural components contained entirely within any Unit;"

A copy of the Master Deed is attached hereto as Exhibit "A." Pursuant to §6(D) of the Master Deed, "the glass in windows of the Unit are not Common Elements." Further, Section 11(A) of the Master Deed states as follows:

    "(A) The organization through which the Unit Owners will manage and regulate the Condominium established hereby is the Condominium Trust. The Condominium Trust establishes an organization of which the Unit Owners shall be members and in which Unit Owners shall have Beneficial Interest in proportion to the percentage of undivided interest in the Common Elements of the Condominium to which they are entitled under this Master Deed."

Section 14 of the Master Deed, states as follows:

    "Each Unit Owner shall have an easement in common with owners of all other Units to use all pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements located in any of the other Units serving his Unit. Each Unit shall be subject to use of the pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements serving such other Units and located in such Unit. The Trustee shall have a right of access to each Unit to inspect the same, to remove violations therefrom, and to maintain, repair, or replace the Common Elements contained therein or elsewhere in the Building."

Exhibit 3 to the Master Deed identifies the boundaries of the units. It defines the boundary of the Units as it pertains to windows as the interior surface of the glass and window frames.

On or about October 18, 2002, the Plaintiff, Colleen Cloutier, notified the Defendant, the Trustees of the Millbank Place Condominium Trust (hereinafter referred to as "Trustees") that the

"window" in the dining room roof area of the Unit leaked, causing water damage to the Cloutiers' personal property and damage to the walls and floors of the Unit. A copy of the letter is attached hereto as Exhibit "B." On or about October 30, 2002, the Defendant, Hampshire Property Management (hereinafter referred to as "Hampshire Property Management") responded to the Plaintiff, Colleen Cloutier's request for repairs, and indicated that the Trustees' responsibility for making said repairs was uncertain. A copy of the letter is attached hereto as Exhibit "C." The Plaintiffs maintained that the "window" was part of the roof as it is a skylight and it was not the Plaintiffs' responsibility to maintain and repair the skylights, but solely the responsibility of the Trustees. Alternatively, the Plaintiffs argued the leak was caused by faulty common elements which was the responsibility of the Trustees. On December 27, 2002, Hampshire Property Management made demand on the Plaintiffs' tenants to make further rent payments to the Trustees. On March 25, 2003, the Trustees, through Marcus, Errico, Emmer & Brooks, P.C. (hereinafter referred to as "Marcus, Errico") made demand on the Plaintiffs' tenants to make further rent payments to the Trustees. The Cloutiers' tenants failed to pay rent from April, 2003 (partial payment of $310.00) to their vacating the Unit in early September, 2003. The rental rate for the Unit was $1,200.00. As a result of the Trustees' failure to make repairs, the Plaintiffs' tenants failed to pay their rent to the Cloutiers. In addition, due to the failure of the Trustees to make repairs to the Unit, which is their responsibility, the Plaintiffs were unable to rent the Unit. Based on the above, the Cloutiers placed the Unit up for sale in November, 2003.

On or about November 17, 2003, the Plaintiffs signed an Agreement to Purchase to sell the Unit with a provision that the Trustees remedy the water leak above the sunroom or have a scheduled plan for such repairs. Subsequently, the prospective purchaser was prepared to close as early as

3

January 28, 2004. However, due to Hampshire Property Management and Marcus, Errico's failure to respond to the Plaintiffs' or the buyer's requests for a schedule of repairs, the closing was continued. From July 25, 2003 to March 9, 2004, the Trustees failed to respond to the Plaintiffs' counsel's requests to repair the water damage, provide an accounting as to the outstanding amount owed, and provide the Cloutiers with an itemized reinstatement amount to cure the obligation allegedly owed by them.

On March 10, 2004, approximately eight (8) months after the first written request, Marcus, Errico finally provided the Cloutiers with a written itemization. This was also the first time that Marcus, Errico confirmed in writing to the Cloutiers' counsel and the Cloutiers that Marcus, Errico or Hampshire Property Management had not collected any rent from the Cloutiers' tenants.

On or about March 10, 2004, the Trustees attempted to make repairs to the skylights at the Unit. Lizotte Glass Inc. indicated that all three glass units of the skylights needed to be repaired as two panes of glass were filled with water and one was fogged. Based on the delay in the Trustees making repairs, the closing on the Unit was rescheduled to take place on April 23, 2004. However, during a "walk through" of the Unit by the buyer on the evening of April 22, 2004, the skylights were leaking water. As such, the prospective buyer would not close due to the water leaks, and the buyer refused to close on the Unit until the skylights were replaced to make certain that there were no more water leaks.

The skylights were finally replaced on or about May 18, 2004, approximately nineteen (19) months after the first request for repairs was made by the Cloutiers. The Trustees made the Cloutiers pay $1,193.00 of the $3,579.00 for the repairs representing one pane of glass. During the time between the Tenants failing to pay rent and the sale of the Unit, the Cloutiers continued to accrue

4

condominium fees to the Trustees, interest to Northampton Cooperative Bank on the note secured by a first mortgage on the Unit, and additional real estate taxes to the City of Northampton. The Unit was finally sold to a third party on May 19, 2004.

In addition, the Trustees on various occasions have asserted that the Declaration of Trust, §2 allegedly states, "common expenses, profit and funds, b. budget states, the Board of Trustees may assess a late charge of ten ($10.00) dollars per month for each late payment or a part thereof if the amount due is not paid by the tenth (10th) day of each month that the amount due remains unpaid. The amounts due hereunder, together with late charges shall constitute a lien on the unit." The Trustees assessed excessive late charges against the Cloutiers by compounding the late charge for each month. A copy of the Cloutiers' ledger provided by the Trustees' agent, Marcus, Errico, is attached hereto as Exhibit "D." During the Spring of 2004, the Cloutiers' counsel obtained payoff figures for the outstanding amount owed on the Unit that were as follows:

| | | |
|---|---|---|
| 1. | March 10, 2004 | $7,047.84; |
| 2. | April 5, 2004 | $7,524.60; |
| 3. | April 30, 2004 | $7,833.60; and |
| 4. | May 13, 2004 | $8,634.36. |

Copies of the payoff figures are attached hereto collectively as Exhibit "E." At the time, the monthly condominium charge on the Unit was $184.76. The additional charges are for either attorney's fees and/or late charges.

### Standard

In appraising the sufficiency of a complaint courts must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984) (dismissal proper only when it is clear that no facts can be proved consistent with the allegations); Roeder v. Alpha Industries, Inc., 814 F.2d 22, 25 (1st Cir. 1987) (complaint must be construed in light most favorable to the plaintiff). A defendant seeking to dismiss plaintiffs claims at the pleading stage must meet a very high standard. See Gomes v. Univ. of Maine Sys., 304 F.Supp.2d 117, 136 (D.Me. 2004).

### Argument

## I.    THERE IS A CONTRACTUAL RELATIONSHIP BETWEEN THE TRUSTEES AND THE CLOUTIERS.

The Defendants' Motion to Dismiss Count I must be denied because caselaw establishes that there is a contractual relationship between the Trustees and the Cloutiers. In Lock v. Spaulding, involving a dispute over parking spaces in a condominium complex, the Appeals Court determined that a master deed is viewed as a contract under seal and has a statute of limitations of twenty (20) years. 24 Mass. App. Ct. 977, 978 (1987). See also Flag Wharf, Inc. v. Hickney, 2004 WL 2341334, *3 (Mass. Super.) (viewing a master deed as a contract and applying contract law when interpreting the document). It is interesting to note that the Defendants do not cite any Massachusetts case in support of their position. In the present case, the Master Deed signed by Michael G. Sissman in 1986, was executed under seal, and therefore, establishes it as a contract between the parties.

**II.    THE CLOUTIERS MAY BRING A CLAIM FOR BREACH OF THE IMPLIED AND
EXPRESS WARRANTY OF HABITABILITY AGAINST THE TRUSTEES, AND
THEREFORE, COUNTS III AND IV SHOULD NOT BE DISMISSED.**

The Cloutiers may bring a claim for breach of the implied and express warranty of

habitability in light of McEncaney v. Chestnut Hill Realty Corp., 38 Mass App. Ct. 573. (1995).  In

McEneaney, an individual condominium unit owner brought claims for, *inter alia*, nuisance and

breach of fiduciary duty against the trustees of the condominium trust.  Id. at 574.  The trial court

dismissed the plaintiffs' claims. but, the Appeals Court reversed the dismissal based upon its analysis

of the relationship between the property interest possessed by the owner in his own unit and his

interest in the common areas.  Id. at 577.  The Appeals Court provided a thorough analysis of this

relationship and its potential problems by stating:

> Ownership of a condominium is a dual form of interest in real estate, entitling the owner both
> to exclusive ownership and possession of his unit and to an undivided interest together with
> other unit owners in the common areas.  Subject to the provisions in the master deed and the
> by-laws of the condominium association, the unit owner has exclusive control over his unit.
> G. L. c. 183A, § 4. The management and control of the common areas, however. is vested
> in the organization of unit owners.  G. L. c. 183A, § 10. Furthermore, where, as here, the
> organization of unit owners is a trust, the trustees are responsible for conducting all litigation
> and are subject to suit as to any cause of action involving the common areas. G. L. c. 183A,
> § 10(b)(4). Because a unit owner's control over the common areas is virtually nonexistent,
> and because the Legislature has provided that suits for any cause of action involving the
> common areas and facilities should be brought against the trustees of the condominium
> association without expressly negating the unit owners' right to do so, we conclude that the
> fact that a unit owner has a property interest both in his unit and in the common areas should
> not preclude the potential liability of the condominium association for nuisance.  To hold
> otherwise would leave a unit owner powerless (except to the extent of his ability to influence
> or persuade the trustees or the condominium membership) to correct a substantial and
> unreasonable interference with the quiet enjoyment of his property which emanated from a
> condition in the common areas but affected only his unit. (Internal citations omitted).

Id. at 577-78.

7

Similar to the Plaintiff in <u>McEneaney</u>, the Plaintiffs in the present case suffered damage to personal property and property within the Unit resulting from the Trustees failure to repair the common areas which resulted in damage to the Plaintiffs' Unit. However, the Plaintiffs have no authority to remedy the situation except to the extent of their ability to influence or persuade the unit owner's association to correct a problem which only affects their unit but originates from a problem in the common areas. Instead of fixing the skylights, for nineteen (19) months the Defendants' only action was to sue the Plaintiffs for common charge assessments, late fees and attorneys' fees which lead to the Plaintiffs being further behind on their obligations to the Defendants. Furthermore, the Defendants' failure to account to the Plaintiffs for any rent collected caused additional financial problems for the Plaintiffs. Therefore, as in <u>McEneaney</u>, the Plaintiffs should be able to proceed with their claims of breach of warranty of habitability and Counts III and IV of the Plaintiffs' Complaint should not be dismissed.

## III.  THE TRUSTEES MAY OWE A FIDUCIARY DUTY THE INDIVIDUAL UNIT OWNERS BASED UPON THE DECLARATION OF TRUST DOCUMENT.

Count V of the Plaintiffs' Complaint should not be dismissed because the Trustees may owe a fiduciary duty to the Plaintiffs' based upon the Declaration of Trust. In <u>McEneaney v. Chestnut Hill Realty Corp.</u>, the Appeals Court reversed the trial court's dismissal of his breach of fiduciary claim against the trustees of the condominium trust because the Appeals Court did not have the benefit of the condominium documents which it stated may have defined the fiduciary duty owed to the plaintiff by the trustees. 38 Mass. App. Ct. 573, 578 (1995)(citing <u>Lilley v. Rich</u>, 27 Mass. App. Ct. 1212 (1989) (providing that the duty owed by condominium trustees to unit owners is measured by duty defined in condominium trust agreement)).

In the present case, the Plaintiffs do not have a copy of the Declaration of Trust document which may very well establish separate and distinct fiduciary duties to unit owners from the general fiduciary duty owed by the trustees to the unit owner's association. Without this vital document to delineate the duties owed to individual unit owners, the Court cannot determine whether there are facts that may exist to establish a claim for breach of fiduciary duty. Furthermore, the Defendants had a fiduciary duty to the Plaintiffs to account for any rent collected as soon as they demanded rent from the Plaintiffs' tenants. The Defendants failed to provide an accounting to the Plaintiffs for at least seven and one-half (7 ½) months from Plaintiffs' counsel's initial demand. Therefore, Count V of the Plaintiffs' Complaint should not be dismissed.

## IV. THE TRUSTEES HAVE VIOLATED THE MASSACHUSETTS USURY STATUTE BECAUSE THE CHARGES ARE UNCONSCIONABLE AND GROSSLY EXCESSIVE.

Paragraph 69 of the Complaint states: "The late charges exacted from the CLOUTIERS by the TRUSTEES are unconscionable, grossly excessive, in violation of the law, and constitute an usurious consideration." At the closing of the Unit, the Defendants obtained from the Cloutiers compounded late charges for each month allegedly due beginning January, 2002, except for March, 2004 where the Defendants charged a single late fee. See copy of Cloutiers' ledger attached hereto as Exhibit "D." For each month that the Plaintiffs failed to pay the monthly condominium charge of $184.76, they were charged a monthly late charge of $10.00. This is an equivalent interest charge of 0.0541242 percent per month or almost 65 percent per year. The Defendants then compounded the charge each month. This is unconscionable especially based on the relationship of the parties. The Defendants cite a Massachusetts Superior Court case, Trustees of the Fieldstone Condominium Trust v. Coffman, 3 Mass.L. Rptr. 697,

9

1995 WL 809892 (Mass. Super. 1995) for the proposition that condominium late fees are not

covered by the usury statute. However, the Fieldstone case can be distinguished from the case at

bar because the condominium trust in that case charged the unit owner one late charge for each

month that he was late. The Superior Court was not confronted by a condominium trust that was

charging compounding late charges. In addition, the undersigned has never heard or seen of any

condominium trust or association assessing late charges in such a way. In Count VI, the

Plaintiffs are seeking to recover any late charges which were compounded. The Plaintiffs are

entitled to recovery of any late charges which were compounded. They are also entitled to any

attorneys' fees and costs incurred in recovering their money. If not, based on the amount in

controversy, anything less would not act as a deterrent for this kind of action.

V.     THE PROVISIONS OF G.L. c. 93A ARE APPLICABLE TO THIS CASE BECAUSE
       HAMPSHIRE PROPERTY MANAGEMENT AND MARCUS, ERRICO WERE
       AGENTS OF THE TRUSTEES, AND THEREFORE, THE TRUSTEES ARE
       VICARIOUSLY LIABLE FOR THEIR ACTIONS.    ALTERNATIVELY,
       HAMPSHIRE PROPERTY MANAGEMENT AND MARCUS, ERRICO VIOLATED
       G.L. c. 93A BY THEIR OWN ACTIONS.

       The Plaintiffs' G.L. c. 93A claim should not be barred because Hampshire Property

Management and Marcus, Errico were agents of the Trustees, and therefore, the Trustees are

vicariously liable for their actions. While disputes between an individual unit owner and a trustee

association are generally private in nature, and therefore barred by G.L. c. 93A for failing to meet

the "trade or commerce" requirement, the Superior Court has allowed a plaintiff to proceed on his

G.L. c. 93A claim where he alleged an agency theory or a vicarious liability theory. Kurker v.

Malloy, 1994 WL 879878 (Mass.Super.).

In <u>Kurker</u>, the plaintiff owned a condominium unit that had unusually loud noises emanating from his ceiling. <u>Id</u>. at *1. The plaintiff reported this problem to an employee of the management company for the condominium trust, who replied that the management company would do everything necessary to get the problem fixed. <u>Id</u>. The trustees and the management company failed to remedy the situation, and therefore, the plaintiff brought suit against them, alleging, *inter alia*, a G.L. c. 93A claim. <u>Id</u>. The Superior Court denied the defendants' motion to dismiss the G.L. c. 93A claim stating, "[w]here, as here, the plaintiff alleges either an agency theory of liability or a vicarious liability theory, his or her chapter 93A claim is not barred. <u>Id</u>. at *2(citing <u>Greenstein v. Flatley</u>, 19 Mass. App. Ct. 351, 358 (1985)).

Just like the plaintiff in <u>Kurker</u>, Plaintiffs in the present case have alleged an agency theory of liability and a vicarious liability theory based upon the actions taken by Hampshire Property Management and Marcus, Errico, which violated the usury laws, the federal fair debt collection practices act, and which had nothing to do with the collection of condominium fees. Based upon the holding in <u>Kurker</u>, the Plaintiffs should be able to proceed on their G.L. c. 93A claim.

In the alternative, the Plaintiffs assert that Hampshire Property Management and Marcus, Errico acted beyond the scope of their duties, as generally set forth in G.L. c. 183A, § 10(c)[1], establishing a commercial relationship with the Plaintiffs by attempting to collect fees that they were not entitled to, thereby violating the fair debt collection laws. See <u>Kelly v. Middlesex Corp.</u>, 35

---

[1] G.L. c. 183A, § 10(c) states in relevant part that "[t]he organization of unit owners may appoint a manager or managing agent or be self-managed by their elected trustees or managing board. The organization of unit owners shall keep a complete copy of the following items, except when the organization shall appoint a manager or managing agent who has responsibility for the collection of assessments, payment of common expenses, or the accounting or custody of common funds, in which case the manager or managing agent shall be responsible, without limitation, . . . ."

Mass. App. Ct. 30. 32 (1993) (commenting that employee ordinarily is acting outside scope of employment if acts are driven by purely personal interests, unconnected in any way with employer's interests). In this case as it relates to the repair of the skylights, attorneys' fees should have been billed to the condominium association and not the Cloutiers. By attempting to collect attorney's fees from the Cloutiers, Hampshire Property Management and Marcus, Errico acted purely for their own benefit and in violation of 940 C.M.R. 7.07. Hampshire Property Management and Marcus, Errico made demands for payment of fees that they were not entitled. Section 7.07 of Chapter 940 of the Code of Massachusetts regulations provides that it shall constitute a deceptive act or practice to engage in "[a]ny representation that an existing obligation of a debtor may be increased by the addition of attorney's fees, investigation fees. service fees, or any other fees or charges, if in fact such fees or charges may not legally be added to the existing obligation." Lastly, even if the various fair debt collection practices do not apply, it is clear that Hampshire Property Management and Marcus. Errico's actions were unfair and deceptive trade practices and constitute "conduct beyond the toleration even of persons inured to the rough and tumble of the world of commerce" under G.L. c. 93A, § 9. Greenstein v. Flatley, 19 Mass. App. Ct. 351, 358 (1985). Therefore, Count VIII of the Plaintiffs' Complaint should not be dismissed.

## Conclusion

The Defendants want this Court to dismiss claims that are based on the following facts:

1. It is acceptable to fail to respond/repair a common element for over nineteen (19) months which is causing damage to the Plaintiffs' Unit and making the Unit uninhabitable;

2. It is acceptable to make demand on the Plaintiffs' tenants for rent and then fail to provide an accounting for over seven and a half (7.5) months after a written demand by Plaintiffs' counsel;

3. At the same time that the Plaintiffs cannot rent the Unit, the Defendants continue to charge condominium fees and late charges. As for the late charges, the Defendants then compound them for each month late;

4. Marcus. Errico as part of the sale of the Unit charge attorney fees which were clearly based on time which was expended in getting the skylights repaired as a charge to the Plaintiffs for collecting the outstanding condominium charges. Condominium charges which were in default based on the Plaintiffs' inability to rent the Unit because the skylights were leaking; and

5. The Defendants then claim that G.L. c. 93A does not apply to them because they are acting in a non-business context. The Defendants state, "As agents. both the Property Manager and the Law Firm merely sent notices of charges due; they did not impose the charges upon which the Cloutiers rely to support their assertion of 93A liability. There can be no liability under 93A against the Property Manager or the Law Firm." (See Page 16 of the Motion to Dismiss). Marcus, Errico wants this Court to believe that the Trustees were responsible in allocating the attorney's fees owed on this Unit. Therefore, Marcus. Errico can charge unit owners any amount of attorney fees without facing any repercussions under G.L. c. 93A. Hampshire Property Management and the Trustees are then isolated from liability because of their status even though Hampshire Property Management signed the 6D certificates. In this case, Hampshire Property signed 6D certificates on April 22. 2004. in the amount of $7,833.60, and on May 13, 2004, in the amount of $8.684.36 when the monthly condominium charges for that month was $184.76 and a late charge of $10.00.

The Defendants are attempting a divide and conquer strategy. They are filing a motion to dismiss all counts except the negligence claim (Count II) and the Federal Fair Debt Collection Practices Act (Count VII). They will then argue that the above facts are irrelevant as to negligence.

13

This Court should not be persuaded by their argument and should look at the total facts of this case. Based upon the foregoing, the Court should deny the Defendants' Motion to Dismiss Counts I, III, IV, V, VI, and VII of Plaintiffs' Complaint.

                                        PLAINTIFFS,
                                        COLLEEN A. CLOUTIER and
                                        DONALD L. CLOUTIER
                                        By Their Attorney


Dated:   May 17, 2005                   /s/ Joseph J. Lange
                                        Joseph J. Lange, Esq., BBO #564577
                                        Christine A. Cahillane, Esq., BBO# 647426
                                        Lyon & Fitzpatrick, LLP
                                        14 Bobala Road, 4th Floor
                                        Holyoke, MA 01040
                                        (413) 536-4000 - Fax (413) 536-3773
                                        E-mail: jlange@lyonfitzpatrick.com
                                        E-mail: ccahillane@lyonfitzpatrick.com


### CERTIFICATE OF SERVICE

I, Joseph J. Lange, Esquire, hereby certify that on May 17, 2005, I served the within PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I, III, IV, V, VI, AND VII OF PLAINTIFFS' COMPLAINT upon counsel of record for the defendants by electronic filing, thereof to:

        Paul J. Barresi, Esq.
        Marcus, Errico, Emmer & Brooks, P.C.
        45 Braintree Hill Office Park #107
        Braintree, MA 02154

                                        /s/ Joseph J. Lange
                                        Joseph J. Lange, Esquire


U:\WP80\C\Cloutier\Cloutier - Opposition to Motion to Dismiss.wpd

**EXHIBIT A**

MASTER DEED

of

MILLBANK PLACE CONDOMINIUM

I, MICHAEL G. SISSMAN, being the sole owner of the land together with the buildings thereon, located at 351 through 369 Pleasant Street, Northampton, Massachusetts, and being more particularly described in Paragraphs (3) and (4) below, do hereby, by duly executing and recording this Master Deed, submit said land, together with the buildings and improvements erected thereon, and all easements, rights and appurtenances belonging thereto to the provisions of Chapter 183A of the General Laws of the Commonwealth of Massachusetts and do hereby state that Grantor proposes to create, and does hereby create, with respect thereto a condominium to be governed by and subject to the provisions of Chapter 183A and to that end, Grantor declares and provides the following:

(1)    Name.  The name of the condominium shall be MILLBANK PLACE CONDOMINIUM.

(2)    Definitions.  As used in this Master Deed, the following terms shall have the following meanings unless the context hereof otherwise requires.

"Buildings" shall have the meaning set forth in Paragraph (4) hereof.

"Chapter 183A" shall refer to Chapter 183A of the General Laws of Massachusetts as from time to time amended.

"Common Elements" shall mean the common areas and facilities of the Condominium as so described and designated in Paragraph (6) hereof.

"Condominium" shall mean the MILLBANK PLACE CONDOMINIUM submitted to the provisions of Chapter 183A by this Master Deed.

"Condominium Trust" shall mean the Declaration of Trust of MILLBANK PLACE CONDOMINIUM TRUST of even date to be recorded with the Registry of Deeds herewith and referred to in Paragraph (11) hereof, the names and addresses of the original and present Trustees of which Trust are as follows:

> Michael G. Sissman, P. O. Box 1096, Northampton, Massachusetts, 01061-1096.

"Grantor" shall mean Michael G. Sissman.

"Improvements" shall mean and include the buildings and other improvements now or hereafter located on the Land.

"Land" shall have the meaning set forth in Paragraph (3) hereof.

"Premises" shall mean the Land and the Improvements.

"Registry of Deeds" shall mean the Hampshire County Registry of Deeds

-1-

"Trustees" shall have the meaning set forth in Paragraph (11) hereof.

"Units" shall mean the commercial and residential dwelling units comprising the condominiums of the Condominium.

"Unit Owner" shall mean the owner or owners of a Unit.

Capitalized terms used herein which are defined in the Condominium Trust and which are not specifically defined herein shall have the meaning given to them in the Condominium Trust.

(3)  Description of Land.  The Land shall include a certain parcel of land located at 351-369 Pleasant Street, Northampton, Massachusetts and being more particularly bounded and described on Exhibit 1 annexed hereto and incorporated herein.

(4)  Description of Buildings.  The buildings on the Land are described on Exhibit 2 annexed hereto and incorporated herein.

(5)  Description of Units.

(A)  The Building contains those Units listed on Exhibit 3 annexed hereto and incorporated herein.

(B)  The designation of each Unit in the Building, a statement of its location, approximate area, number and composition of rooms, immediate Common Elements to which it has access, and its proportionate interest in the Common Elements of the Condominium are set forth in Exhibit 3 annexed hereto and incorporated herein.

The proportionate interest of the respective Units in the Common Elements has been determined on the basis of the approximate relation which the fair value of each Unit on the date of the Master Deed bears to the then aggregate fair value of all the Units.

(C)  Each Unit includes the ownership of all utility lines, heating, plumbing, electrical, and other apparatus and other equipment, which exclusively serve and are located within the individual Unit.

(D)  Each Unit Owner shall have the right, as appurtenant to their Unit, to use, in common with the owners of the other Units served thereby, such entrances to and from the public streets, yards, and walkways, as serve as common access to and from such Units (each of the foregoing comprises a portion of the Common Elements therefor).

(E)  Except as hereinbefore otherwise provided, each Unit Owner shall have the right, as appurtenant to their Unit, to use, in common with the owners of the other Units served thereby, all utility lines and other common facilities located in any of the other Units or in the Common Elements described in Paragraph (6) hereof, and serving that Unit.  Nothing herein shall otherwise be construed to limit the right of any Unit Owner to otherwise use other Common Elements in accordance with the intended purposes thereof.

(F)  The Condominium Trust, hereinafter described in Paragraph (11), has a right of entry to each Unit to effect emergency repairs or othe

-2-

necessary repairs which the Unit Owner has failed to perform and for other purposes as set forth in Chapter 183A, Section (4), subsection (2).

(G)   All exclusive easements appurtenant to a Unit, excluding, however, any exclusive easement of use with respect to a storage bin, shall be conveyed only with the Unit to which said easement is appurtenant and shall not be severable from such Unit; provided, however, that notwithstanding the foregoing, a Unit Owner may convey his exclusive easement of use with respect to any parking space to another Unit Owner.

(H)   Each Unit shall be subject to the obligations and conveyed with the rights as set forth in any of the foregoing subsections, if and so far as applicable to that Unit.

(6)   Description of the Common Elements.   The common areas and facilities of the Condominium (hereinbefore and hereinafter called the "Common Elements") consist of:

(A)   The Land together with the benefit of and subject to all rights, easements, restrictions and agreements of record, if any, so far as the same may be in force;

(B)   All portions of the Building at 351 Pleasant Street not included in any Unit by virtue of Paragraph (5) above, including, without limitation, the following to the extent such may exist from time to time:

(i)   The foundations, structural members, beams, supports, exterior walls, exterior doors, frames for the exterior windows and doors leading from Units to common areas, roof and entrances and exits of the Building, common walls within the Building, and structural walls or other structural components contained entirely within any Unit;

(ii)   The main entrances, steps and stairway, the entrance vestibule, hallways serving more than one Unit, the mailboxes, utility areas, and other facilities in such hallways;

(iii)   Installations of services such as heat, telephone, electric power, gas, hot and cold water, excluding all utility lines and equipment contained within and servicing a single Unit;

(iv)   All conduits, chutes, ducts, sewer, drainage, water and other pipes, plumbing, wiring, flues and other facilities for the furnishing of services described above in subparagraph (iii) which are contained in portions of the Building contributing to the structure or support thereof, and all such facilities contained within any Unit which serve parts of the Building other than the Unit within which such facilities are contained, together with an easement of access thereto for maintenance, repair, and replacement, as aforesaid;

(v)   Notwithstanding the above, all elements of 369 Pleasant Street that are within the outer plane of the foundation or the outer plane of the exterior walls, including the whole of the

-3-

roof, are not common elements, but are a part of the 369 Pleasant Street Unit.

(C)  All land areas, and facilities, and other improved or unimproved areas on the Land and not within any Unit, except that certain portions of the Common Elements may be limited or restricted in terms of use by Grantor;

(D)  The glass in windows of the Units are not Common Elements;

(E)  Such additional common areas and facilities as may be defined in Chapter 183A.

Each Unit Owner shall be entitled to an undivided beneficial interest in the Common Elements in the percentages shown on Exibit #3 as overall beneficial interest attached to this Master Deed and incorporated herein by reference (hereinafter "Beneficial Interest").

The Trustees in their sole and absolute discretion, may designate certain portions of the Common Elements for limited or restrictive use, and such designations or restrictions shall be upon such terms and conditions, and with such stipulations and agreements, as the Trustees shall deem advisable, and the purposes of this Paragraph may be carried out by the Rules and Regulations of the Condominium Trust (which are an exhibit to the Condominium Trust).

The use of Common Elements shall be subject to the provisions of (a) this Master Deed, (b) the Condominium Trust, hereinafter referred to in Paragraph (11) hereof and the By-Laws and Rules and Regulations promulgated pursuant thereto, and (c) Chapter 183A as amended.

(7)  Parking Spaces.  Grantor reserves for himself, his successors and assigns the right and power to grant easements to any Unit purchaser at the time of the first Unit Deed for the exclusive use of parking spaces in the Common Elements of the Condominium for any lawful purpose during the existence of the Condominium, but such easement shall end upon the permanent withdrawal of the Premises from condominium status.  The parking spaces are shown on the Site Plan of the Condominium recorded herewith.

(8)  Floor Plans.  The floor plans of the Building and the Units therein, together showing the layout of each of the buildings constituting the Building, setting forth the Units within each of the buildings constituting the Building, and the Building comprising the Condominium, and depicting the Unit numbers, layout, location and dimensions, main entrance and immediate Common Elements to which each Unit has access, all "as built," and bearing the verified statement of a registered architect, certifying that the plans, taken together, fully and accurately depict the layout location, Unit numbers, and dimensions of the Units as built are recorded with and made a part of this Master Deed.

Said plans are listed on a schedule annexed hereto and incorporated herein, which together with copies of said plans are collectively referred to as Exhibit 4.

-4-

(9)  Statement of Purposes.   The Units are intended to be used as follows:

(A)  Units 1 through 12 shall be used for residential purposes.  All such Units may also be secondarily used for any purpose permitted by the applicable zoning ordinance, but subject to the restrictions set forth herein, and in the Condominium Trust, the By-Laws, and Rules and Regulations thereto.  Units A through D shall be used for commercial purposes.  The 369 Pleasant Street unit may be used for either residential or commercial purposes, so long as both such uses are permitted by the Northampton Zoning Ordinance.

B).  The following conditions and restrictions shall apply to the use and occupancy of the parking spaces:

(1)  The parking spaces may be used only for parking of vehicles which fit within the area of a single parking space and which are duly registered with the appropriate Registry of Motor Vehicles. No boats, trailers (whether capable of independent operations of attached to an automobile or other vehicle), and the like may be parked in any parking spaces except with the written consent of the Trustees.  Only one vehicle is allowed in each parking space.

(2)  All vehicles shall be parked within the respective parking spaces designated to said Unit.

(3)  During normal business hours the customers of the commercial units may utilize the parking area for reasonable periods of time, as established and limited by the Board of Trustees.

(4)  A Unit Owner, by written permission, may permit any tenant, guest, servant, licensee, or other party, to use the parking space which said Unit Owner is entitled to use, but all parties using said parking space shall comply with the provisions relating to such use contained in this Master Deed and the Condominium Trust.

(5)  In instances where vehicles using the parking areas and parking spaces do not comply with the foregoing provisions, the Trustees are authorized to allow the towing of the noncomplying vehicles at the expense of the owners of such vehicles.

(C)  The following conditions and restrictions shall apply to the tenanting, renting and/or leasing of Units:

(1)  Each and every lease, license and/or tenancy agreement must be for the entire Unit and must be in writing and be for a term of not less that thirty (30) days.

(2)  No Unit may be tenanted, rented, let, leased, or licensed for transient or hotel purposes;

(3)  Every lease, license or tenancy agreement permitting non-owner occupants use or possession or occupancy of a Unit shall include a provision requiring the non-owner occupant to comply with all terms and conditions of this Master Deed,

specifically including but not limited to this Paragraph (9) and Paragraph (10), the Condominium Trust, and the Rules and Regulations and shall require that the failure of said non-owner occupant to comply with any of the terms of said Master Deed, Condominium Trust, and/or Rules and Regulations shall be a default under said lease, license, or tenancy agreement.  There shall be attached to each such written instrument a copy of the Rules and Regulations and copy of Paragraphs (9) and (10) of the Master Deed;

(4)  The provisions of the within Paragraph (9) (C) (3) shall not apply to any holder of a mortgage who obtains title to or takes possession of a Unit by foreclosure or pursuant to any other remedies provided in the mortgage or by applicable law.

(D)  Notwithstanding the provisions contained in Paragraphs (9) and (10) hereof, the Grantor, or any successor to his interest in the Condominium, including but not limited to mortgagees and assignees but excluding those purchasing individual Units, hereby reserve (s) the right, until all of the Units have been sold by Grantor or such sucessor, to:

(i)  lease any Units owned by the Grantor;

(ii)  use any Units owned by the Grantor as models for display for purposes of selling or leasing of Units or for any other lawful purpose.

(10)  <u>Restrictions on Use</u>.  Unless otherwise permitted in a writing executed by a majority of the Trustees pursuant to the provisions thereof:

(A)  No Unit shall be used for any purpose not specified in Paragraph (9) above;

(B)  The architectural integrity of the Building and the Units shall be preserved without modification, and to that end, no awning, screen, antenna, sign, banner or other device, and no exterior change, addition, structure, projection, decoration or other feature shall be erected or placed upon or attached to the Building, any Unit, or any part thereof, except that the five commercial units may place signs in the designated signage area and on the street sign(s).  This Paragraph (10) shall not restrict the right of Unit Owners to decorate the interiors of their Units as they may desire;

(C)  The owners of any Unit may at any time and fron time to time change the use and designation of any room or space within such Unit, subject to the provisions of Paragraphs (9) and (10) hereof, and may modify, remove and install nonbearing walls lying wholly within such Unit; provided, however, that any and all work with respect to the removal and installation of interior walls or other improvements shall be done expediously in a good and workmanlike manner, pursuant to a building permit duly issued therfor (if required by law) and pursuant to plans and specification which have been submttied to and approved by the Trustees.  In particular, the four commercial Units locatd in the Main building are expected to vary the interior of the Unit

-6-

periodically and are hereby authorized to do so.

(D)  No Unit shall be used or maintained in a manner contrary to or inconsistent with this Master Deed and the Condominium Trust.

(E)  The use of the Common Elements may also be restricted under the provisions of the Condominium Trust.

These restrictions shall be for the benefit of all Unit Owners and shall be administered on behalf of the Unit Owners by the Trustee and shall be enforceable solely by the Trustees, insofar as permitted by law, and insofar as permitted by law shall be perpetual; and to that end may be extended at such time or times and in such manner as permitted or required by law for the continued enforceability thereof.  No Unit Owner shall be liable for any breach of the provisions of this paragraph except such as occur during his or her Unit ownership.

(11)  Management and Regulatory Organization.

(A)  The organization through which the Unit Owners will manage and regulate the Condominium established hereby is the Condominium Trust. The Condominium Trust establishes an organization of which the Unit Owners shall be members and in which Unit Owners shall have Beneficial Interest in proportion to the percentage of undivided interest in the Common Elements of the Condominium to which they are entitled under this Master Deed.

(B)  The Units of the Condominium vary in that one is located in the 369 Pleasant Street structure, which is an old, though rehabilitated building, and the other twelve Units are in the main building, a structure newly built; further twelve of the Units are residential units, and the others are commercial.  Because of these differences, there are some costs and expenses which belong to one group of Units and not to another group.  See the Condominum Trust Article XII, Section 6 for a more detailed description.  The Trustees shall divide the expenses of the Condominium as appropriate to these differences; Exhibit 3 specifies the various interests.

(C)  The Trustee have enacted By-Laws which are set forth in the Condominium Trust, pursuant to and in accordance with provisions of Chapter 183A (the "By-Laws").  The term "Trustees" as hereinafter used shall be deemed to include the successors in trust to the original trustees and to mean the trustees or trustee for the time being under the Condominium Trust.

(12)  Amendments.  This Master Deed may be amended by an instrument in writing (a) signed by one or more Unit Owners entitled to sixty-seven (67%) percent or more of the Beneficial Interest in the Common Elements, and (b) signed and acknowledged by a majority of the Trustees of the Condominium Trust, and (c) duly recorded with the Registry of Deeds; PROVIDED, HOWEVER, that:

(A)  The date on which any instrument of amendment is first signed by a Unit Owner shall be indicated thereon as the date thereof, and no such instrument shall be of any force or effect unless the same has

-7-

been so recorded within six months after such date;

(B)   No instrument of amendment which alters the dimensions of any
Unit shall be of any force or effect unless the same has been signed
by the Owners of the Unit so altered;

(C)   No instrument of amendment which alters the percentage of the
Beneficial Interest to which any Unit is entitled in the Common
Elements shall be of any force or effect unless the same has been
signed be all Unit Owners, and said instrument is recorded as an
Amended Master Deed;

(D)   No instrument of amendment affecting any Unit in any manner which
impairs the security of the holder of a mortgage of record shall be of
any force or effect unless the same has been assented to by the holder
of such mortgage;

(E)   No instrument of amendment which alters this Master Deed in any
manner which would render it contrary to or inconsistent with any
requirements or provisions of Chapter 183A shall be of any force or
effect;

(F)   No instrument of amendment which purports to affect any rights
reserved to or granted to the Grantor shall be of any force or effect
before the Grantor has conveyed title to all Units unless the Grantor
executes the instrument of amendment;

(G)   The Beneficial Interest of each Unit of the Condominium shall be
held and exercised as a Unit and shall not be divided among several
owners of any such Unit.  To that end, whenever any Unit is owned of
record by more than one person, the several owners of such Unit shall:
(a) determine and designate which one of such owners shall be
authorized and entitled to cast votes, execute instruments, and
otherwise exercise the rights appertaining to such Unit hereunder, and
(b) notify the Trustee of such designation by notice in writing signed
by all of the record owners of such Unit.  Any such designation shall
take effect upon receipt by the Trustees and may be changed at any
time and from time to time by notice as aforesaid.  In the absence of
any such notice of designation, the Trustee may designate any one such
owner for such purposes.

(13)   Units Subject to Master Deed, Unit Deed, Condominium Trust, etc.

(A)   All present and future owners, tenants, visitors, servants and
occupants of a Unit shall be subject to, and shall comply with, the
provisions of:   (a) this Master Deed, (b) the Unit Deed conveying such
Unit, (c) the Condominium Trust and By-Laws, (d) the items affecting
the title to and the use of the Land, and (e) Chapter 183A.   The
acceptance of a deed or conveyance or the entering into occupancy of
any Unit shall constitute an agreement that (a) the provisions of (1)
this Master Deed, (2) the Unit Deed, if any, conveying such Unit, (3)
the Condominium Trust and the By-Laws and Rules and Regulatons
promulgated pursuant thereto, as they may be amended from time to
time, and (4) the said items affecting title to an use of the Land ar
accepted and ratified by such owner, tenant, visitor, servant, or

occupant, and all of such provisions shall be deemed and taken to be covenants running with the land, and shall bind any person having at any time any interest or estate in such Unit, as though such provisions were recited and stipulated at length in each and every deed or conveyance or lease thereof, and (b) any violation of the provision of this Master Deed, such Unit Deed, the Condominium Trust and By-Laws or Rules and Regulations promulgated pursuant thereto by any such person shall be deemed a violation of the duties of the Unit Owner.

(B)   The failure of any Unit Owner to comply with any of the provisions of the Master Deed, condominium Trust, the Rules and Regulations adopted pursuant to said Trust, and Chapter 183A shall give rise to a cause of action in the Trustees and any aggrieved Unit Owner, which they may enforce in any manner permitted by law, including without limitation by court action for injunctive relief and/or damages.

(14)   Pipes, Wires, Ducts, Cables, Conduits, Public Utility Lines, and other Common Elements Located Inside of Units.

Each Unit Owner shall have an easement in common with owners of all other Units to use all pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements located in any of the other Units serving his Unit. Each Unit shall be subject to use of the pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements serving such other Units and located in such Unit.  The Trustees shall have a right of access to each Unit to inspect the same, to remove violations therefrom, and to maintain, repair, or replace the Common Elements contained therein or elsewhere in the Building.

(15)   Encroachments.  If any portion of the Common Elements encroaches upon any Unit, or if any Unit now encroaches upon any portion of the Common Elements, or if any such encroachment shall occur hereafter as a result of settling or shifting of the Building or alteration or repairs of the Common Elements made by or with the consent of the Trustees, or as a result of condemnation or eminent domain proceedings, a valid easement shall exist for such encroachment and for the maintenance of the same so long as such Building shall stand.

(16)   Right to Combine Units, Erect Partitions Around Stairways, etc.

(A)   If at any time the title to any Units which are on the same floor as one another and share a common interior wall as a Unit boundary, is held by the same Unit Owner, then the said Unit Owner shall have the right to open a passage in said common wall to connect the Units directly to one another without first having to obtain the consent for the construction necessary to connect the Units from the Trustees of the Condominium Trust; provided, however, that the work of combining the Units would not jeopardize the soundness or safety of the Building, in which event the Unit Owner would be required to obtain the unanimous consent of all Unit Owners of the Building and the mortgagees of record to perform the work after said Unit Owner first

-9-

submits written plans and specifications of the proposed work to the
Trustees.

(B)   If at any time the title to any Units which are located above or
below one another are held by the same Unit Owner, then the said Unit
Owner shall have the right to construct internal stairways connecting
said Units, without having to first obtain the consent for said
construction necessary to connect the Units from the Trustees;
provided, however, that the work of combining the Units would not
jeopardize the soundness or safety of the Building; in which event,
the Unit Owner would be required to obtain the unanimous consent of
all Unit Owners of the Building and the mortgagees of record to
perform the work. The work of constructing said internal stairway
shall include opening an area in the Common Elements located between
the lower Unit and upper Unit opening within the concerned Units, and
such structural modification and changes to said flooring as necessary
for the construction, safety, and serviceability of the stairway.

(C)   Unit Owners performing any construction work under this Paragraph
(16) of the Master Deed shall: (a) secure all appropriate licenses and
permits necessary for such work, in the name of the Trustees, at Unit
Owner's sole cost and expense; (b) provide contractors and
subcontractors insurance, comprehensive public liability insurance,
and other appropriate insurances, insuring the said Unit Owner, the
Trustees, and other occupants, of the Condominium Units and the
Condominium against personal injury and property damage arising out of
said work; (c) perform all construction work in a good and workmanlike
manner, and in compliance with all applicable laws and ordinances,
regulations, and orders of governmental authorities having
jurisdiction thereof and the insurers of the Condominium; (d)
diligently perform all work and perform the work so as to minimize
interferences with the peaceful use and possession of the premises by
the occupants of the Condominium, and promptly discharge any and all
mechanics and materialmen's liens arising from said work.

Any such connecting passageway or stairway structure or stairway
enclosure and appurtenant equipment thereto shall be maintained and
serviced at the expense of the owners of the Units connected by said
passageway or stairway, including without limitation the cost of all
structural maintenance and repair to the Common Element arising from
said passageway or stairway or stairway enclosure.

(17)   Additional Rights for Benefit of Holders of Mortgages.

Grantor and the Unit Owner hereby agree as follows:

(A) That in the event any right of first refusal in case of the sale
of a Unit is adopted by the Unit Owners and incorporated in this
Master Deed or the Condominium Trust, such right of first refusal
shall not impair the rights of a holder of a mortgage to:

(i)   foreclose or take title to a Unit pursuant to the remedies
provided in the mortgage; or

(ii)  accept a deed (or assignment) in lieu of foreclosure in the

-10-

event of default by a mortgagor; or

(iii) sell or lease a Unit acquired by a holder of a mortgage through the procedures set forth in Paragraph (i) and/or (ii) above;

(B)  That any person taking title to a Unit through a foreclosure sale duly conducted by a holder of mortgage shall be exempt from any right of first refusal adopted by the Unit Owners and incorporated in this Master Deed or the Condominium Trust;

(C)  That any mortgagee who obtains title to a Unit by foreclosure or pursuant to any other remedies provided in the mortgage or by law will not be liable for such Unit's unpaid Common Charges, dues or other assessments which accrued prior to the acquisition of title to such Unit by the mortgagee;

(D)  That unless at least sixty seven (67%) percent of holders of first mortgages on the individual Units (based upon one vote for each mortgage owned) of the Condominium have given their prior written approval, neither the Unit Owners nor the Trustees shall be entitled to:

(i)  by act or omission, seek to abandon or terminate the Condominium (except in the event of substantial destruction of the Condominium premises by fire or other casualty or in the case of eminent domain) .

(ii)  change the pro rata interest or obligations of any individual Unit for the purpose of: (a) levying assessments or charges or allocating distributions of hazard insurance proceeds or condemnation awards; or (b) determining the pro rata share of ownership of each Unit in the Common Elements;

(iii)  partition or subdivide any Unit;

(iv)  by act or omission, seek to abandon, partition, subdivide, encumber, sell, or transfer the Common Elements, PROVIDED, HOWEVER, that the granting of easements for public utilities or for other public purposes consistent with the intended use of the Common Elements by the Condominium and the exercise of other actions with respect to granting special rights of use or easements of Common Elements contemplated herein or in the Condominium Trust, including the granting of exclusive rights and easements of use with respect to parking spaces and storage bins, shall not be deemed an action for which any prior approval of a mortgagee shall be required under his subparagraph;

(v)  use hazard insurance proceeds for losses to any property of the Condominium (whether to Units or to Common Elements) for other than the repair, replacement, or reconstruction of such property of the Condominium, except as provided by statute in case of a taking of or substantial loss to the Units and/or Common Elements;

(vi)  take any action or make any decision to terminate professional management and assume self-management of the Condominium.

(vii)  take any action to amend any material provisions of this Master Deed and the Condominium Trust as the term "material" is defined by the Federal National Mortgage Association (FNMA) and Federal Home Loan Mortgage Corporation (FHLMC) guidelines.

(E)  That all taxes, assessments, and charges which may become liens prior to a first mortgage under the laws of the Commonwealth of Massachusetts shall relate only to the individual Units and not to the Condominium as a whole;

(F)  That in no case shall any provision of the Master Deed or the Condominium Trust give a Unit Owner or any other party priority over any rights of a mortgagee of the Unit pursuant to its mortgage in the case of a distribution to such Unit Owner of insurance proceeds or condemnation awards for losses to or a taking of such Unit and/or the Common Elements;

(G)  That any holder, insurer, or guarantor of any first mortgage, upon request to the Trustees, will be entitled to:

(i)  written notification from the Trustees of any default by its borrower who is a Unit Owner with respect to any obligation of such borrower under this Master Deed or the provisions of Condominium Trust which is not cured within sixty (60) days;

(ii)  inspect the books and records of the Condominium Trust during normal business hours;

(iii)  receive an annual financial statement of the Condominium Trust within ninety (90) days following the end of any fiscal year of the Condominium Trust;

(iv)  written notice of all meetings of the Condominium Trust, and be permitted to designate a representative to attend all such meetings; and

(v)  prompt written notification from the Trustees of any damage by fire or other casualty to the Unit upon which the lender holds a mortgage or proposed taking by condemnation or eminent domain of said Unit or the Common Elements.

(vi)  written notice of a lapse, cancellation or material modification of any insurance policy or fidelity bond maintained by the Trustees.

(vii)  receive written notice of any action which requires the consent of a specified percentage of eligible mortgagees.  The provisions of this section may not be amended or rescinded without the written consent of all First Mortgagees, which consent shall appear on the instrument of amendment as such instrument is duly recorded with the Registry of Deeds in accordance with the requirements of this Master Deed.

(H)  That no agreement for professional management of the Condominium or any other contract with Grantor may exceed a term of three (3) years, and that any such agreement shall provide for termination by either party without cause and without payment of a termination fee on ninety (90) days' or less written notice.

(18)  Conflicts.  If any provision of this Master Deed shall be invalid or shall conflict with Chapter 183A, or if any provision of this Master Deed conflicts with any other provision thereof or with any provision of the Condominiun Trust, then the following rules of construction shall be used:

(A)  In the event of a conflict between the Master Deed and Chapter 183A, the provisions of Chapter 183A shall control;

(B)  The invalidity of any provision of the Master Deed shall not impair or affect the validity or enforceability of the other provisions of this Master Deed, and this Master Deed shall continue in full force and effect as if such invalid provision had never been included herein.

(C)  In the event of any conflict between the preceding Paragraph and any other provisions of this Master Deed or the Condominium Trust, the provisions of said preceding Paragraph shall control.

(D)  In the event of any conflict between the Master Deed and the Condominium Trust, the provisions of the Master Deed shall control.

(19)  Waiver.  No provision contained in this Master Deed shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur.

(20)  Captions.  The captions herein are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of this Master Deed nor the intent of any provision hereof.

(21)  Assignment of Rights of Grantor.  Grantor, by deed or by separate assignment, shall be entitled to assign any and all of his rights hereunder and under the Condominium Trust, at any time and from time to time, to any person, trust, entity, or the Condominium Trust as may be determined by Grantor.

(22)  Registering and Recording.  All documents and instruments required to be recorded hereunder shall be so recorded with the Registry of Deeds.


    EXECUTED as a sealed instrument on this      day of                ,
1986.


                                        _____
                                        MICHAEL G. SISSMAN


                        COMMONWEALTH OF MASSACHUSETTS

Hampshire, ss.                                              , 1986

    Then personally appeared the above named MICHAEL G. SISSMAN and

-13-

acknowledged his execution of the foregoing instrument to be his free act and deed, before me,

_____

Notary Public
My commission expires:

# TABLE OF CONTENTS

| SECTION | SUBJECT | PAGE NO. |
|---------|---------|----------|
| (1) | Name | 1 |
| (2) | Definitions | 1 |
| (3) | Description of Land | 2 |
| (4) | Description of Building | 2 |
| (5) | Description of Units | 2 |
| (6) | Description of Common Elements | 3 |
| (7) | Parking Spaces and Garages | 4 |
| (8) | Floor Plans | 4 |
| (9) | Statement of Purposes | 5 |
| (10) | Restrictions on Use | 6 |
| (11) | Management and Regulatory Organization | 7 |
| (12) | Amendments | 7 |
| (13) | Units Subject to Master Deed, Unit Deed Condominium Trust, etc | 8 |
| (14) | Pipes, Wires, Ducts, Cables, Conduits, Public Utility Lines, and other Common Elements Located Inside of Units | 9 |
| (15) | Encroachments | 9 |
| (16) | Right to Combine Units, Erect Partitions Around Stairways, etc. | 9 |
| (17) | Additional Rights for Benefit of Holders of Bona Fide First Mortgages | 10 |
| (18) | Conflicts | 12 |
| (19) | Waiver | 13 |
| (20) | Captions | 13 |
| (21) | Assignment of Rights of Grantor | 13 |
| (22) | Registering and Recording | 13 |

| EXHIBIT | SUBJECT |
|---------|---------|
| Exhibit 1 | Land |
| Exhibit 2 | Building |
| Exhibit 3 | Units |
| Exhibit 4 | Plans |

EXHIBIT 1

A parcel of land located in Northampton, Hampshire County, Massachusetts, bounded and described as follows:

Beginning at an óron pin in the Westerly line of Pleasant Street, thence running S. 16  40' 07" E. along said Pleasant Street, a distance of One Hundred Sixty Eight and Seventy Three Hundredths (168.73) feet to a granite bound, which bound is N. 16  40' 07" W. a distance of Four and No Hundredths (4.00) feet from Northampton Coordinate System point designated N: 11,650.915, E: 31,451.657; thence turning and running S. 33  02' 26" W. a distance of One Hundred Fifty Six and Sixty Four Hundredths (156.64) feet to a point at the land now oroformerly of Stephen P. Cahillane, et als; thence turning and running N. 39  49' 20" W. a distance of Seventy and No Hundredths (70.00) feet to an iron pin; thence continuing N. 28  04' 19" W. a distance of One Hundred Seventy and Forty Hundredths (170.40) feet to an iron pin, the last two courses being along the land now or formerly of said Cahillane, et als; thence turning and running N. 61  15' 55" E. a distance of One Hundred Eighty Four and Seventy Seven Hundredths (184.77) feet, along other land of Michael G. Sissman, sometimes called the "Hugo's Property", to the point of beginning. Containing 33,381 square feet, more or less.

Being the parcel shown on the Record Plan of Millbank Place Condominiums in Northampton, Massachusetts, Prepared for Michael G. Sissman, by Almer Huntley, Jr. & Associates, Inc., dated June 19, 1986, recorded in the Hampshire County Registry of Deeds, Book of Plans 138, Page 100.

And further conveying seven easements in various parcels of real estate, all of which are shown on the above referenced plan, which easements are more particularly described in the deed of Leonard C. Jekanowski recorded in the Hampshire County Registry of Deeds, as Document No.        .

Being all and the same premises conveyed to Michael G. Sissman by deed of Forrest Voges, dated May 30, 1985, recorded in the Hampshire County Registry of Deeds, Book 2570, Page 213; and a portion of the premises conveyed to Michael G. Sissman by deed of John F. Skibiski Realty Partnership, dated July 2, 1984 recorded in the Hampshire County Registry of Deeds, Book 2470, Page 118, which portion is Parcel B of "Plan of Land" dated September 7, 1984, recorded in the Hampshire County Registry of Deeds, Book of Plans 130, Page 17; and being all and the same easements conveyed to Michael G. Sissman by deed of Leonard C. Jekanowski recorded in Hampshire County Registry of Deeds as Document No.        .

EXHIBIT 2

The buildings on the land described in Exhibit 1 are two, they are
described as follows:

(1)   351 Pleasant Street, called the main building, is a three story,
wood-framed building with a full basement.  The foundation is
concrete.  The roof is shingled and pitched.  The ground floor is
designed to contain four commercial Units with plate glass display
windows; two thirds of the basement is part of the commercial Units.
The top two floors contain four residential Units each.  Each of the
Units has separately metered electric and gas service; the 4
commercial Units are served by one water meter; the 12 residential
Units are served by one water meter.

(2)   369 Pleasant Street, is a two-story structure, wood framed, with
a basement, stone foundation and slate roof structure that long
predates the creation of this condominium.  All of its utilities are
separately provided and metered.  It contains one Unit which may be
either commercial or residential, as it is as of the date of this
Master Deed, a prior, non-conforming residential use structure in the
zone.

EXHIBIT 3
TO
MASTER DEED
OF
MILLBANK PLACE CONDOMINIUM
(see Exhibit 3A for Beneficial Interest)

| UNIT NUMBER | FLOOR LEVEL | APPROX. AREA IN SQUARE FEET | NO & COMPOSITION OF ROOMS |
|---|---|---|---|
| 351 Pleasant Street – | | | |
| A | B, 1st southerly end of building | 2,550 on 1st 2,668 on B | 2: com. in 1st, com. in B |
| B | B, 1st south central part of building | 1,230.5 on 1st 1,230.5 on B | same |
| C | B, 1st north central part of building | 1,230.5 on 1st 1,230.5 on B | same |
| D | 1st northerly part of building | 2,497 | 1: com. in 1st |
| 1 | 2nd north, rear | 1.081 | 7: 2BR, K, LR/D, B, sun rm., mech. |
| 2 | 2nd north, front | 1,164 | same |
| 3 | 2nd center, rear | 1,152 | 6: 2BR, K, LR/D, B, mech. |
| 4 | 2nd center, front | 1,152 | same |
| 5 | 2nd south, rear | 1,061 | 7: 2BR, K, LR/D B, mech, sun rm |
| 6 | 2nd south, front | 1,164 | same |
| 7 | 3rd north, rear | 1,061 | same |
| 8 | 3rd north, front | 1,164 | same |
| 9 | 3rd center, rear | 1,152 | 6: 2BR, K, LR/D, B, mech |

-18-

Exhibit 3, Page 2.

| UNIT NUMBER | FLOOR LEVEL | APPROX. AREA IN SQUARE FEET | NO & COMPOSITION OF ROOMS |
|---|---|---|---|
| 10 | 3rd center, front | 1,152 | same |
| 11 | 3rd south, rear | 1,081 | 7: 2BR, K, LR/D, B, mech, sun rm |
| 12 | 3rd south, front | 1,164 | same |
| 369 Pleasant | 1st, 2nd, basement | B: 670.5 1st: 670.5 and porches of 88 and 73; 2nd:  670.5 | 7 rooms,2 porch K, DR, B, LR, 2BR, storage rm, K, DR, B, LR, storage porch, porch. |

    In addition, Units 1-12 will each have an easement over one storage
space for each Unit located in the Basement, northerly part of 351
Pleasant Street.

    LEGEND

    Floor Level:                   Rooms:

    B is Basement              LR/D is Living Room/Dining
                                                           Room
    1st is First Floor         BR is Bedroom
    2nd is Second Floor        K is Kitchen
    3rd is Third Floor         B is Bathroom
                               com is Commercial Space
                               mech. is Utility Room
                               sun rm. is Sun Room

    Units 1 through 6 have an immediate access to an interior hallway on
the second floor, which leads to stairway and building exits at each end
of the building.
    Units 7 through 12 have an immediate access to an interior hallway on
the third floor, which leads to stairway and building exits at each end of
the building.
    Unit A has access to the interior stair at the southerly end of the
building and to the southerly front and rear exits.
    Unit B has access to the southerly front and rear exits.
    Unit C has access to the northerly front and rear exits.
    Unit D has access to the stair at the northerly end of the building
and to the northerly front and rear exits.
    369 Pleasant Street Unit has access from the front door to the front
porch and thence to common area, and from the storage porch to the common
area.
    · All as shown on the floor plans filed herewith and made a part hereof
and listed on Exhibit 4.

Exhibit 3, Page 3.

BOUNDARIES:

The boundaries of the Units 1 through 12 and A through D, with respect to the floors, ceilings and the walls, doors and windows thereof are as follows:

A. Floors:           plane of the upper surface of the concrete slab in the basement level areas and the plane of the upper floor joists in all other floors.

B. Ceilings:         the plane of the lower surface of the ceiling studs.

C. Perimeter Walls:  the plane of the surface facing such unit of the wall studs or the plane of the surface facing such Unit of the masonry where masonry is the finish material.

D. Exterior Building Walls, Doors and Windows:

    (i) walls:    the plane of the surface facing such unit of the wall studs.

    (ii) doors:   the exterior surface of the doors uitilized to provide ingress to an egress from each Unit.

Exhibit 3, Page 3.

    (iii) windows:   the interior surface of the glass and window frames.

The 369 Pleasant Street Unit is bounded by the outer plane of its exterior walls, cellar walls, cellar floor and roof, and includes all porches.

The unit dimensions shown on the Plans extend to the plane of the surface facing such Unit of the interior finish surface of the walls, doors, ceilings or floors, as the case may be, although the boundaries extend as indicted below.

There are seventeen (17) Units in the Condominium.

There are                    Parking Spaces in the Condominium.

EXHIBIT 3A
TO
MASTER DEED
OF
MILLBANK PLACE CONDOMINIUM

| UNIT | OVERALL BENEFICIAL INTEREST | MAIN BUILDING BENEFICIAL INTEREST | 369 PLEASANT BENEFICIAL INTEREST | RESIDENTIAL BENEFICIAL INTEREST | COMMERCIAL BENEFICIAL INTEREST |
|------|------|------|------|------|------|
| A | 12.934 | 13.473 | | | |
| B | 6.219 | 6.478 | 0 | 0 | 31.707 |
| C | 6.219 | 6.478 | 0 | 0 | 15.244 |
| D | 11.442 | 11.917 | 0 | 0 | 15.244 |
| 1 | 4.726 | 4.922 | 0 | 0 | 28.049 |
| 2 | 4.975 | 5.181 | 0 | 7.983 | 0 |
| 3 | 4.478 | 4.663 | 0 | 8.403 | 0 |
| 4 | 4.478 | 4.663 | 0 | 7.563 | 0 |
| 5 | 4.975 | 5.181 | 0 | 7.563 | 0 |
| 6 | 4.726 | 4.922 | 0 | 8.403 | 0 |
| 7 | 5.473 | 5.699 | 0 | 7.983 | 0 |
| 8 | 5.473 | 5.699 | 0 | 9.244 | 0 |
| 9 | 4.478 | 4.663 | 0 | 9.244 | 0 |
| 10 | 4.478 | 4.663 | 0 | 7.563 | 0 |
| 11 | 5.473 | 5.699 | 0 | 7.563 | 0 |
| 12 | 5.473 | 5.699 | 0 | 9.244 | 0 |
| | | | | 9.244 | 0 |
| 369 PLEASANT | 3.980 | 0 | 100.000 | 0 | 9.756 |
| | 100.000 | 100.000 | 100.000 | 100.000 | 100.000 |

**EXHIBIT B**

Colleen Cloutier
351 Pleasant Street #12
Northampton, Massachusetts 01060

October 18, 2002

Hampshire Property Management Group
15 Brewster Court
Northampton, MA 01060

Since as far back as 1993, I have been complaining about my overhead windows leaking into my dining room area. Although we have continually tried to stop the leaks from the inside, the water continues to pour in. My china cabinet, dining room table, hope chest and flooring have been damaged from the water. The window casings and sills below the overheads are saturated with water, as well as the wall to the side of the windows. I had to install ceramic tile on the wall below the windows to cover the water damage. The overhead window casings are pulling away. The cracking sounds that the overheads make is frightening. I fear that the entire area is ready to collapse.

I have been told repeatedly that the leaking is not the responsibility of the condo association, but my insurance covers only from the sheetrock in because that is what I own. At the end of September 2002, I received a call from your company requesting that someone be allowed into my unit on October 1, 2002 at 10:00 am to look at the overhead windows. No one came.

I have been harassed continually ever since North River Management Company was fired and your company took over. Immediately after North River Management was fired, I was informed that I owed approximately $1200 in back condo fees, but was provided with no proof that I owed the money. I have owned my condo for over 10 years and no longer have cancelled checks for that entire period. I paid those fees against my better judgement and despite the fact that North River Management did not keep proper records.

I have never been served any delinquency notice by any sheriff at any time since I have owned the condo, so I dispute that portion of the delinquency notice. I also dispute the late charges and the condo fees because your company has ignored my requests to repair the damage to the overheads. I have contacted my insurance company and they have stated more than once that the damage is the responsibility of the condo association and should be covered under the building's insurance policy, not mine.

I have also been complaining that all the windows in my unit are causing water damage because, when they are even cracked open slightly, rain water pours in causing the wood surrounds and sills to become water logged. This is because there are no eaves to protect the inside of the unit. I backed off on that complaint for years because I was afraid that I would end up paying a special assessment for the repairs and did not believe that I should bear the responsibility.

If these issues cannot be resolved reasonably between us, then I will pursue court action against the condo association and your management company. And I am requesting that you stop harassing me by informing my mortgage company that I am delinquent in paying my condo fees.

I am leasing my condo as of November 1, 2002 and will contact you regarding the new tenants. They will need parking passes and guest parking passes. In the years since I purchased my unit I've seen this building's owner-occupancy rate surge and now, owners are moving out again. My mother pays less money at Fairway Village than I pay and that is ridiculous. There is no landscaping, the hallways and stairwells are never repaired, the unit windows are never washed and legitimate complaints are ignored.

I can be reached at 413-533-1981. I am disputing the validity of the entire debt, and requesting that you provide me with verification of the $1200 debt that I disputed yet paid when your company took over the management of the building from Jekanowski and O'Neil.

Sincerely,


Colleen Cloutier

**EXHIBIT C**

October 30, 2002

Colleen & Donald Cloutier
351 Pleasant Street #12
Northampton, MA 01060



Dear Colleen and Donald

This letter is in response to your letter dated October 18, 2002. I will address the items that you discus by paragraph.

The only complaint I ever received about the overhead windows came from one of your neighbors. When we telephoned you to inspect the windows, we wanted the window company to look at all four of these windows at Millbank Place. Unfortunately, the gentleman from the window company was unable to keep the appointment due to jury duty. When we telephoned you to rearrange the appointment, your phone had been disconnected. These windows are a difficult item to assign responsibility to a unit owner or the condominium association because the Condominium Documents describe part of the window as common area and part of the window as unit owner responsibility. Nonetheless, we have requested R&R Windows to inspect and repair one of the overhead windows at the property to determine the reasons for the windows' failure. Once R&R Window has analyzed and repaired one window, we should be able to determine the cause of the failure and to understand better what is/is not common or unit owner responsibility.

I cannot address the issue in your third paragraph because I was not involved in the property at that time. However, I sent you a letter on April 3, 2002 (enclosed) stating that you owed $390 in past fees from 2001, and $498 for 2002. If you did not have copies of cancelled checks for 2001, you could have called your bank to request copies.

*868*

Massachusetts Law, Chapter 183 states that unit owners, regardless of other issues, including maintenance issues, must pay condominium fees. This is the law. As I mentioned in the letter to you dated August 8, 2002 (copy enclosed) the Condominium Documents of Millbank Place One Condominiums provide instructions for charging late fees to delinquent owners. Hampshire Property Management will continue to charge late fees as necessary. Since the certified letter that I sent you on September 3, 2002 came back to my office unsigned and undelivered, I will continue to serve you notice by sheriff, so that I am certain you receive these notices. Indeed, at some point soon, I may turn the condominium fee collection process over to an attorney. Any legal fees incurred would be your expense.

I have not heard before your letter that you or any other owner at Millbank Place One has problems with leaking windows other than the overhead windows. I am not sure what you mean by there being no eaves; perhaps you mean gutters. Until I look into this further, I would recommend that you keep your windows closed when it rains.

As I mentioned, the Condominium Association is looking into resolving the overhead window problem, however, this does not impact on how I will continue to attempt to collect the condominium fees that you owe, including contacting your mortgage company. You currently owe $417.70, and will owe an additional $166 on November 1.

Please send information on your tenants as soon as possible. As you know, the parking lots are patrolled and you don't want your tenants to be towed because they are not registered.

Fairway Village condominium fees run from $179 to $195 per month. The two properties cannot really be compared because they are so different, but one simple reason for the difference in fees is that Millbank Place One has twelve residential and five commercial units to share all the costs at the property. Fairway Village has ninety-one.

As I mentioned previously, I cannot provide you with any information regarding the $1200, because you did not pay that amount, nor did I request that amount when Hampshire Property Management began managing Millbank Place One Condominiums on January 1, 2002. Again, I suggest that you go to your bank and recreate the history of your payments to the Condominium Association.

Should you have any questions, please call me at 582-9970 extension 100.

Yours truly,

Patricia Taylor
Senior Property Manager

Enc.

Cc: Board of Trustees

1 copy first class mail
1 copy certified # 7002 0460 0002 0582 7964

BALANCE        417.70
    NOV        166.00
    DEC        166.00
    JAN        166.00
    FEB        166.00
    MAR        166.00

# EXHIBIT D

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA  01040**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 12/31/01 | Due Y/E 2001 | 390.00 | | 390.00 |
| 01/01/02 | Condo Fee | 130.00 | | 520.00 |
| 01/01/02 | condo fee increase | 36.00 | | 556.00 |
| 02/01/02 | Condo Fee | 166.00 | | 722.00 |
| 03/01/02 | Condo Fee | 166.00 | | 888.00 |
| 04/01/02 | Condo Fee | 166.00 | | 1,054.00 |
| 04/16/02 | chk# 357  jan, jan increase and feb fee | | 332.00 | 722.00 |
| 05/01/02 | Condo Fee | 166.00 | | 888.00 |
| 05/08/02 | chk# 361  payment on past due | | 166.00 | 722.00 |
| 06/01/02 | Condo Fee | 166.00 | | 888.00 |
| 06/04/02 | chk# 342  bal on 2001 past due and parc payment fo | | 166.00 | 722.00 |
| 06/20/02 | chk# 04400575  bal on feb, mar,april,may and june | | 722.00 | 0 00 |
| 07/01/02 | Condo Fee | 166.00 | | 166.00 |
| 07/11/02 | Late fee-July | 10.00 | | 176.00 |
| 08/01/02 | Condo Fee | 166.00 | | 342.00 |
| 08/11/02 | Late fee-July | 10.00 | | 352.00 |
| 08/11/02 | Late fee-Aug. | 10.00 | | 362.00 |
| 09/01/02 | Condo Fee | 166.00 | | 528.00 |
| 09/10/02 | late fee-July | 10.00 | | 538.00 |
| 09/10/02 | Late fee-Aug | 10.00 | | 548.00 |
| 09/10/02 | Late fee-Sept | 10.00 | | 558.00 |
| 09/16/02 | Notice | 16.00 | | 574.00 |
| 09/16/02 | Notice | 19.70 | | 593.70 |
| 09/17/02 | chk# 417105  july,1 july LF's, Aug, 2  Aug LF's | | 362.00 | 231.70 |
| 10/01/02 | Condo Fee | 166.00 | | 397.70 |
| 10/11/02 | sept late fee | 10.00 | | 407.70 |
| 10/11/02 | oct late fee | 10.00 | | 417.70 |
| 11/01/02 | Condo Fee | 166.00 | | 583.70 |
| 11/11/02 | late fee-sept | 10.00 | | 593.70 |
| 11/11/02 | late fee-oct | 10.00 | | 603.70 |
| 11/11/02 | late fee-nov | 10.00 | | 613.70 |
| 12/01/02 | Condo Fee | 166.00 | | 779.70 |
| 12/11/02 | late fee - sept | 10.00 | | 789.70 |
| 12/11/02 | late-oct | 10.00 | | 799.70 |
| 12/11/02 | late fee - nov | 10.00 | | 809.70 |

CONTINUED

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA  01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 809.70 |
| 12/11/02 | late fee - dec | 10.00 | | 819.70 |
| 12/12/02 | legal fee | 25.00 | | 844.70 |
| 12/23/02 | Hampden County Sheriffs | 28.65 | | 873.35 |
| 12/23/02 | Hampden County Sheriffs | 17.55 | | 890.90 |
| 01/01/03 | Condo Fee | 166.00 | | 1,056.90 |
| 01/11/03 | sept late fee | 10.00 | | 1,066.90 |
| 01/11/03 | oct- late fee | 10.00 | | 1,076.90 |
| 01/11/03 | nov - late fee | 10.00 | | 1,086.90 |
| 01/11/03 | dec - late fee | 10.00 | | 1,096.90 |
| 01/11/03 | jan - late fee | 10.00 | | 1,106.90 |
| 02/01/03 | Condo Fee | 166.00 | | 1,272.90 |
| 02/10/03 | sept - late fee | 10.00 | | 1,282.90 |
| 02/10/03 | oct - late fee | 10.00 | | 1,292.90 |
| 02/10/03 | nov - late fee | 10.00 | | 1,302.90 |
| 02/10/03 | dec - late fee | 10.00 | | 1,312.90 |
| 02/10/03 | jan - late fee | 10.00 | | 1,322.90 |
| 02/10/03 | feb - late fee | 10.00 | | 1,332.90 |
| 03/01/03 | Condo Fee | 174.30 | | 1,507.20 |
| 03/11/03 | sept - late fee | 10.00 | | 1,517.20 |
| 03/11/03 | oct - late fee | 10.00 | | 1,527.20 |
| 03/11/03 | nov - late fee | 10.00 | | 1,537.20 |
| 03/11/03 | dec - late fee | 10.00 | | 1,547.20 |
| 03/11/03 | jan - late fee | 10.00 | | 1,557.20 |
| 03/11/03 | feb - late fee | 10.00 | | 1,567.20 |
| 03/11/03 | mar - late fee | 10.00 | | 1,577.20 |
| 03/31/03 | Marcus, Errico, Emmer & Brooks | 310.00 | | 1,887.20 |
| 04/01/03 | Condo Fee | 174.30 | | 2,061.50 |
| 04/11/03 | sept late fee | 10.00 | | 2,071.50 |
| 04/11/03 | oct late fee | 10.00 | | 2,081.50 |
| 04/11/03 | nov late fee | 10.00 | | 2,091.50 |
| 04/11/03 | dec late fee | 10.00 | | 2,101.50 |
| 04/11/03 | jan late fee | 10.00 | | 2,111.50 |
| 04/11/03 | Feb late fee | 10.00 | | 2,121.50 |
| 04/11/03 | mar late fee | 10.00 | | 2,131.50 |
| 04/11/03 | apr late fee | 10.00 | | 2,141.50 |

CONTINUED

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA 01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 2,141.50 |
| 04/25/03 | chk# 107 parc payment on April condo fee only | | 162.00 | 1,979.50 |
| 05/01/03 | Condo Fee | 174.30 | | 2,153.80 |
| 05/01/03 | Marcus #43375 | 311.00 | | 2,464.80 |
| 05/11/03 | spet - late fee | 10.00 | | 2,474.80 |
| 05/11/03 | oct - late fee | 10.00 | | 2,484.80 |
| 05/11/03 | nov late fee | 10.00 | | 2,494.80 |
| 05/11/03 | Dec - late fee | 10.00 | | 2,504.80 |
| 05/11/03 | Jan - late fee | 10.00 | | 2,514.80 |
| 05/11/03 | feb - late fee | 10.00 | | 2,524.80 |
| 05/11/03 | mar - late fee | 10.00 | | 2,534.80 |
| 05/12/03 | chk# 112 parc payment on may | | 166.00 | 2,368.80 |
| 06/01/03 | Condo Fee | 174.30 | | 2,543.10 |
| 06/01/03 | Marcus #44510 | 938.00 | | 3,481.10 |
| 06/06/03 | chk# 120 payment on past due | | 166.00 | 3,315.10 |
| 06/11/03 | sept late fee | 10.00 | | 3,325.10 |
| 06/11/03 | oct late fee | 10.00 | | 3,335.10 |
| 06/11/03 | nov late fee | 10.00 | | 3,345.10 |
| 06/11/03 | dec late fee | 10.00 | | 3,355.10 |
| 06/11/03 | jan late fee | 10.00 | | 3,365.10 |
| 06/11/03 | feb late fee | 10.00 | | 3,375.10 |
| 06/11/03 | mar late fee | 10.00 | | 3,385.10 |
| 07/01/03 | Condo Fee | 174.30 | | 3,559.40 |
| 07/01/03 | Marcus #44964 | 440.90 | | 4,000.30 |
| 07/11/03 | sept late fee | 10.00 | | 4,010.30 |
| 07/11/03 | oct late fee | 10.00 | | 4,020.30 |
| 07/11/03 | nov late fee | 10.00 | | 4,030.30 |
| 07/11/03 | dec late fee | 10 00 | | 4,040.30 |
| 07/11/03 | jan late fee | 10.00 | | 4,050.30 |
| 07/11/03 | feb late fee | 10.00 | | 4,060.30 |
| 07/11/03 | march late fee | 10.00 | | 4,070.30 |
| 07/11/03 | july late fee | 10.00 | | 4,080 30 |
| 08/01/03 | Condo Fee | 174.30 | | 4,254.60 |
| 08/01/03 | Marcus #45637 | 156.00 | | 4,410.60 |
| 08/11/03 | sept late fee | 10.00 | | 4,420.60 |
| 08/11/03 | oct late fee | 10.00 | | 4,430.60 |

CONTINUED

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA 01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 4,430.60 |
| 08/11/03 | nov late fee | 10.00 | | 4,440.60 |
| 08/11/03 | dec late fee | 10.00 | | 4,450.60 |
| 08/11/03 | jan late fee | 10.00 | | 4,460.60 |
| 08/11/03 | feb late fee | 10.00 | | 4,470.60 |
| 08/11/03 | March late fee | 10.00 | | 4,480.60 |
| 08/11/03 | July late fee | 10.00 | | 4,490.60 |
| 08/11/03 | Aug late fee | 10.00 | | 4,500.60 |
| 09/01/03 | Condo Fee | 174.30 | | 4,674.90 |
| 09/01/03 | Marcus #46842 | 74.00 | | 4,748.90 |
| 09/11/03 | sept late fee | 10.00 | | 4,758.90 |
| 09/11/03 | Oct late fee | 10.00 | | 4,768.90 |
| 09/11/03 | nov late fee | 10.00 | | 4,778.90 |
| 09/11/03 | dec late fee | 10.00 | | 4,788.90 |
| 09/11/03 | Jan late fee | 10.00 | | 4,798.90 |
| 09/11/03 | Feb late fee | 10.00 | | 4,808.90 |
| 09/11/03 | Mar late fee | 10.00 | | 4,818.90 |
| 09/11/03 | July late fee | 10.00 | | 4,828.90 |
| 09/11/03 | Aug late fee | 10.00 | | 4,838.90 |
| 09/11/03 | sept late fee | 10.00 | | 4,848.90 |
| 10/01/03 | Condo Fee | 174.30 | | 5,023.20 |
| 10/11/03 | Oct 02 late fee | 10.00 | | 5,033.20 |
| 10/11/03 | nov 02 Late fee | 10.00 | | 5,043.20 |
| 10/11/03 | Dec 02 Late fee | 10.00 | | 5,053.20 |
| 10/11/03 | Jan late fee | 10.00 | | 5,063.20 |
| 10/11/03 | feb late fee | 10.00 | | 5,073.20 |
| 10/11/03 | mar late fee | 10.00 | | 5,083.20 |
| 10/11/03 | july late fee | 10.00 | | 5,093.20 |
| 10/11/03 | aug late fee | 10.00 | | 5,103.20 |
| 10/11/03 | aug late fee | 10.00 | | 5,113.20 |
| 10/11/03 | oct late fee | 10.00 | | 5,123.20 |
| 11/01/03 | Condo Fee | 174.30 | | 5,297.50 |
| 11/11/03 | oct 02 late fee | 10.00 | | 5,307.50 |
| 11/11/03 | nov 02 late fee | 10.00 | | 5,317.50 |
| 11/11/03 | dec 02 late fee | 10.00 | | 5,327.50 |
| 11/11/03 | jan late fee | 10.00 | | 5,337.50 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA 01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 5,337.50 |
| 11/11/03 | feb late fee | 10.00 | | 5,347.50 |
| 11/11/03 | mar late fee | 10.00 | | 5,357.50 |
| 11/11/03 | july late fee | 10.00 | | 5,367.50 |
| 11/11/03 | aug late fee | 10.00 | | 5,377.50 |
| 11/11/03 | sept late fee | 10.00 | | 5,387.50 |
| 11/11/03 | oct late fee | 10.00 | | 5,397.50 |
| 11/11/03 | nov late fee | 10.00 | | 5,407.50 |
| 12/01/03 | Condo Fee | 174.30 | | 5,581.80 |
| 12/11/03 | oct 02 late fee | 10.00 | | 5,591.80 |
| 12/11/03 | nov 02 late fee | 10.00 | | 5,601.80 |
| 12/11/03 | dec 02 late fee | 10.00 | | 5,611.80 |
| 12/11/03 | jan late fee | 10.00 | | 5,621.80 |
| 12/11/03 | feb late fee | 10.00 . | | 5,631.80 |
| 12/11/03 | Mar late fee | 10.00 | | 5,641.80 |
| 12/11/03 | July late fee | 10.00 | | 5,651.80 |
| 12/11/03 | Aug late fee | 10.00 | | 5,661.80 |
| 12/11/03 | sept late fee | 10.00 | | 5,671.80 |
| 12/11/03 | oct late fee | 10.00 | | 5,681.80 |
| 12/11/03 | nov late fee | 10.00 | | 5,691.80 |
| 12/11/03 | dec late fee | 10.00 | | 5,701.80 |
| 01/01/04 | Condo Fee | 184.76 | | 5,886.56 |
| 01/11/04 | Oct 02 late fee | 10.00 | | 5,896.56 |
| 01/11/04 | Nov 02 late fee | 10.00 | | 5,906.56 |
| 01/11/04 | Dec 02 late fee | 10.00 | | 5,916.56 |
| 01/11/04 | jan 03 late fee | 10.00 | | 5,926.56 |
| 01/11/04 | Feb 03 late fee | 10.00 | | 5,936.56 |
| 01/11/04 | Mar 03 late fee | 10.00 | | 5,946.56 |
| 01/11/04 | July03 late fee | 10.00 | | 5,956.56 |
| 01/11/04 | Aug 03 late fee | 10.00 | | 5,966.56 |
| 01/11/04 | Sept 03 late fee | 10.00 | | 5,976.56 |
| 01/11/04 | Oct 03 late fee | 10.00 | | 5,986.56 |
| 01/11/04 | Nov 03 late fee | 10.00 | | 5,996.56 |
| 01/11/04 | Dec 03 late fee | 10.00 | | 6,006.56 |
| 01/11/04 | Jan 04 late fee | 10.00 | | 6,016.56 |
| 02/01/04 | Condo Fee | 184.76 | | 6,201.32 |

CONTINUED

# Tenant Ledger

| | |
|---|---|
| Date: | 11/12/04 |
| Tenant Code: | Xclocol |
| Property: | MILL |
| Unit: | 12 |
| Status: | Past |
| Condo Fee: | 184.76 |
| Deposit: | 0.00 |
| Move In Date: | |
| Move Out Date: | 05/28/04 |
| Due Day: | 1 |
| Tel# (O): | |
| Tel# (H): | (413) 533-1981 |

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA  01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 6,201.32 |
| 02/01/04 | Special Assessment | 369.76 | | 6,571.08 |
| 02/11/04 | Oct 03 late fee | 10.00 | | 6,581.08 |
| 02/11/04 | Nov 02 late fee | 10.00 | | 6,591.08 |
| 02/11/04 | Dec 02 late fee | 10.00 | | 6,601.08 |
| 02/11/04 | Jan 03 late fee | 10.00 | | 6,611.08 |
| 02/11/04 | Feb 03 late fee | 10.00 | | 6,621.08 |
| 02/11/04 | Mar 03 late fee | 10.00 | | 6,631.08 |
| 02/11/04 | July 03 late fee | 10.00 | | 6,641.08 |
| 02/11/04 | August 03 late fee | 10.00 | | 6,651.08 |
| 02/11/04 | September 03 late fee | 10.00 | | 6,661.08 |
| 02/11/04 | October 03 late fee | 10.00 | | 6,671.08 |
| 02/11/04 | November 03 late fee | 10.00 | | 6,681.08 |
| 02/11/04 | December 03 late fee | 10.00 | | 6,691.08 |
| 02/11/04 | Jan 04 late fee | 10.00 | | 6,701.08 |
| 02/11/04 | Feb 04 late fee | 10.00 | | 6,711.08 |
| 03/01/04 | Condo Fee | 184.76 | | 6,895.84 |
| 03/11/04 | Mar '04 Late fee | 10.00 | | 6,905.84 |
| 04/01/04 | Condo Fee | 184.76 | | 7,090.60 |
| 04/11/04 | Apr '04 Late fee | 10.00 | | 7,100.60 |
| 05/01/04 | Condo Fee | 184.76 | | 7,285.36 |
| 05/12/04 | May '04 Late fee | 10.00 | | 7,295.36 |
| 07/19/04 | chk# 8458  balance due | | 7,295.36 | 0.00 |

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |

**EXHIBIT E**

# MARCUS, ERRICO, EMMER & BROOKS, P.C.

Attorneys At Law

Suite 107
45 Braintree Hill Office Park
Braintree, Massachusetts 02184
Telephone (781) 843-5000
Facsimile (781) 843-1529
e-mail law@meeb.com

Janet Oulousian Aronson *◊
Richard E. Brooks
William DeBear
Seth Emmer *
V. Douglas Errico †
Stephen M. Marcus
Thomas O. Moriarty *‡
Jeffrey C. Turk

Edmund A. Allcock
Paul J. Barresi
Patrick J. Brady
Laura White Brandow
Alison L. Forbes
Jill Sullivan Joyce†
John D. Kalish ‡
Mark A. McCormack
MaryLou Muirhead
Therese Quijano
John E. Shaffer, P.E. ◦
Joseph S. Saurino
Douglas Troyer ♦

◦ Also admitted in CT
† Also admitted in NY
* Also admitted in NH
‡ Also admitted in FL
◊ Also admitted in RI
♦ Also admitted in ME

Boston – (617) 367-0006
Springfield – (413) 736-7500
Worcester - (508) 791-2120
New Hampshire - (603) 891-2006
Rhode Island – (401) 351-2221

Direct Dial Number
(781) 843-5000 Ext. 109
tquijano@meeb.com

April 5, 2004

Joseph J. Lange, Esquire
Lyon & Fitzpatrick, LLP
14 Bobala Road
Holyoke, MA 01040

RE:    **Millbank Place Condominium Trust**
         **v. Donald Cloutier, et al**
         **C.A. No. 2003 345 CV 000322**

Dear Attorney Lange:

I am in receipt of your correspondence dated April 1, 2004. I do apologize for the delay in responding but I had a medical emergency which prevented me from responding last week.

This correspondence shall confirm that the Condominium Association has agreed to pay for the replacement of two panes of glass on the "roof windows" and the third pane shall be the responsibility of the unit owner. We can arrange for such work to be done as soon as we receive confirmation that your client will be paying for the pane for the third window which cost has been quoted as $1,193.34. Upon such written confirmation, we will arrange for this work to be done immediately.

We have further received your request for a 6(d) Certificate indicating the full amount of the outstanding amounts due as your clients have not accepted the Association's offer to settle this matter for a waiver of $1,420.00 in late fees. The full amount due and owing as of this date is $7,524.60. This correspondence shall confirm that such 6(d) Certificate indicating this amount is being drawn up and will be forwarded to your attention.

Should you have any questions or concerns, please do not hesitate to contact this office directly.

Very truly yours,

MARCUS, ERRICO, EMMER & BROOKS, P. C.

Therese Quijano

TQ/nlgm
cc: Millbank Place Condominium Trust

**MARCUS,
ERRICO,
EMMER &
BROOKS,
P.C.**

Attorneys At Law

Suite 107
45 Braintree Hill Office Park
Braintree, Massachusetts 02184
Telephone (781) 848-9846
Facsimile (781) 843-1529
e-mail law@meeb.com
website www.meeb.com

Janet Oulousian Aronson *◊
Richard E. Brooks
William DeBear
Seth Emmer *
V. Douglas Errico †
Stephen M. Marcus
Thomas O. Moriarty *‡
Jeffrey C. Turk

Edmund A. Allcock
Paul J. Barresi
Patrick J. Brady ‡
Laura White Brandow
Alison L. Forbes
Jill Sullivan Joyce
John D. Kalish ‡
Mark A. McCormack
MaryLou Muirhead
Therese Quijano
Joseph D. Saurino
John E. Shaffer, P.E.°
Douglas A. Troyer ◊

° Also admitted in CT
† Also admitted in NY
* Also admitted in NH
‡ Also admitted in FL
: Also admitted in RI
◊ Also admitted in ME

March 10, 2004

Joseph J. Lange, Esquire
Lyon & Fitzpatrick, LLP
14 Bobala Road
Holyoke, MA 01040

RE:  Trustees of Millbank Place Condominium Trust
     v. Colleen A. Cloutier, et al
     C.A. No. 2003 345 CV 000322
     Your File No. 10578

Dear Attorney Lange:

Pursuant to your request enclosed please find a detailed ledger evidencing the amount due from December, 2001 forward. In addition, I have confirmed with my client that the work on the windows is scheduled to be performed on March 10, 2004. Apparently there was some delay due to both the inclement weather of this week, as well as the new owners request to coordinate efforts in replacing a couple of panes of glass, which I understand has now been withdrawn.

As you can see from the attached ledger, a payment has not been received in this matter since June 6, 2003 and I am further confirming that no payment has at any time been received from the Cloutiers' former tenants, although such payments were promised on numerous occasions to this office.

Please advise as to your clients' intentions at your earliest convenience so that we may discuss a final resolution to this matter and avoid an appearance at the Case Management Conference currently scheduled for March 18, 2004.

Should you have any questions or concerns, please do not hesitate to contact this office directly.

Very truly yours,

MARCUS, ERRICO, EMMER
& BROOKS, P. C.

Therese Quijano

TQ/nlgm
Enclosure

# Millbank Condominium
c/o HPMG
Box PO 686
Northampton, MA 01060

Statement

| | |
|---|---|
| Account: | MILL - 12 - clocol |
| Date: | 03/09/04 |
| Payment: | |

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA   01040**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 6,651.08 |
| 02/11/04 | September 03 late fee | 10.00 | | 6,661.08 |
| 02/11/04 | October 03 late fee | 10.00 | | 6,671.08 |
| 02/11/04 | November 03 late fee | 10.00 | | 6,681.08 |
| 02/11/04 | December 03 late fee | 10.00 | | 6,691.08 |
| 02/11/04 | Jan 04 late fee | 10.00 | | 6,701.08 |
| 02/11/04 | Feb 04 late fee | 10.00 | | 6,711.08 |
| 03/01/04 | Condo Fee | 184.76 | | 6,895.84 |

*3/10/04   Feb 2004 (Legal)   152*
*Mar 2004 Legal)   7047.84*

| Current | 30 Days | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|
| 324.76 | 684.52 | 304.76 | 5,581.80 | 6,895.84 |

## Millbank Condominium
c/o HPMG
Box PO 686
Northampton, MA 01060

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA   01040

Statement

| | |
|---|---|
| Account: | MILL - 12 - clocol |
| Date: | 03/09/04 |
| Payment: | _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 5,591.80 |
| 12/11/03 | nov 02 late fee | 10.00 | | 5,601.80 |
| 12/11/03 | dec 02 late fee | 10.00 | | 5,611.80 |
| 12/11/03 | jan late fee | 10.00 | | 5,621.80 |
| 12/11/03 | feb late fee | 10.00 | | 5,631.80 |
| 12/11/03 | Mar late fee | 10.00 | | 5,641.80 |
| 12/11/03 | July late fee | 10.00 | | 5,651.80 |
| 12/11/03 | Aug late fee | 10.00 | | 5,661.80 |
| 12/11/03 | sept late fee | 10.00 | | 5,671.80 |
| 12/11/03 | oct late fee | 10.00 | | 5,681.80 |
| 12/11/03 | nov late fee | 10.00 | | 5,691.80 |
| 12/11/03 | dec late fee | 10.00 | | 5,701.80 |
| 01/01/04 | Condo Fee | 184.76 | | 5,886.56 |
| 01/11/04 | Oct 02 late fee | 10.00 | | 5,896.56 |
| 01/11/04 | Nov 02 late fee | 10.00 | | 5,906.56 |
| 01/11/04 | Dec 02 late fee | 10.00 | | 5,916.56 |
| 01/11/04 | jan 03 late fee | 10.00 | | 5,926.56 |
| 01/11/04 | Feb 03 late fee | 10.00 | | 5,936.56 |
| 01/11/04 | Mar 03 late fee | 10.00 | | 5,946.56 |
| 01/11/04 | July03 late fee | 10.00 | | 5,956.56 |
| 01/11/04 | Aug 03 late fee | 10.00 | | 5,966.56 |
| 01/11/04 | Sept 03 late fee | 10.00 | | 5,976.56 |
| 01/11/04 | Oct 03 late fee | 10.00 | | 5,986.56 |
| 01/11/04 | Nov 03 late fee | 10.00 | | 5,996.56 |
| 01/11/04 | Dec 03 late fee | 10.00 | | 6,006.56 |
| 01/11/04 | Jan 04 late fee | 10.00 | | 6,016.56 |
| 02/01/04 | Condo Fee | 134.76 | | 6,201.32 |
| 02/01/04 | Special Assessment | 369.76 | | 6,571.08 |
| 02/11/04 | Oct 03 late fee | 10.00 | | 6,581.08 |
| 02/11/04 | Nov 02 late fee | 10.00 | | 6,591.08 |
| 02/11/04 | Dec 02 late fee | 10.00 | | 6,601.08 |
| 02/11/04 | Jan 03 late fee | 10.00 | | 6,611.08 |
| 02/11/04 | Feb 03 late fee | 10.00 | | 6,621.08 |
| 02/11/04 | Mar 03 late fee | 10.00 | | 6,631.08 |
| 02/11/04 | July 03 late fee | 10.00 | | 6,641.08 |
| 02/11/04 | August 03 late fee | 10.00 | | 6,651.08 |
| | | | | CONTINUED |

# Millbank Condominium
c/o HPMG
Box PO 686
Northampton, MA 01060

| | |
|---|---|
| Account: | MILL - 12 - clocol |
| Date: | 03/09/04 |
| Payment: | ———— |

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA  01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 4,748.90 |
| 09/11/03 | sept late fee | 10.00 | | 4,758.90 |
| 09/11/03 | Oct late fee | 10.00 | | 4,768.90 |
| 09/11/03 | nov late fee | 10.00 | | 4,778.90 |
| 09/11/03 | dec late fee | 10.00 | | 4,788.90 |
| 09/11/03 | Jan late fee | 10.00 | | 4,798.90 |
| 09/11/03 | Feb late fee | 10.00 | | 4,808.90 |
| 09/11/03 | Mar late fee | 10.00 | | 4,818.90 |
| 09/11/03 | July late fee | 10.00 | | 4,828.90 |
| 09/11/03 | Aug late fee | 10.00 | | 4,838.90 |
| 09/11/03 | sept late fee | 10.00 | | 4,848.90 |
| 10/01/03 | Condo Fee | 174.30 | | 5,023.20 |
| 10/11/03 | Oct 02 late fee | 10.00 | | 5,033.20 |
| 10/11/03 | nov 02 late fee | 10.00 | | 5,043.20 |
| 10/11/03 | Dec 02 Late fee | 10.00 | | 5,053.20 |
| 10/11/03 | Jan late fee | 10.00 | | 5,063.20 |
| 10/11/03 | feb late fee | 10.00 | | 5,073.20 |
| 10/11/03 | mar late fee | 10.00 | | 5,083.20 |
| 10/11/03 | july late fee | 10.00 | | 5,093.20 |
| 10/11/03 | aug late fee | 10.00 | | 5,103.20 |
| 10/11/03 | aug late fee | 10.00 | | 5,113.20 |
| 10/11/03 | oct late fee | 10.00 | | 5,123.20 |
| 11/01/03 | Condo Fee | 174.30 | | 5,297.50 |
| 11/11/03 | oct 02 late fee | 10.00 | | 5,307.50 |
| 11/11/03 | nov 02 late fee | 10.00 | | 5,317.50 |
| 11/11/03 | dec 02 late fee | 10.00 | | 5,327.50 |
| 11/11/03 | jan late fee | 10.00 | | 5,337.50 |
| 11/11/03 | feb late fee | 10.00 | | 5,347.50 |
| 11/11/03 | mar late fee | 10.00 | | 5,357.50 |
| 11/11/03 | july late fee | 10.00 | | 5,367.50 |
| 11/11/03 | aug late fee | 10.00 | | 5,377.50 |
| 11/11/03 | sept late fee | 10.00 | | 5,387.50 |
| 11/11/03 | oct late fee | 10.00 | | 5,397.50 |
| 11/11/03 | nov late fee | 10.00 | | 5,407.50 |
| 12/01/03 | Condo Fee | 174.30 | | 5,581.80 |
| 12/11/03 | oct 02 late fee | 10.00 | | 5,591.80 |
| | | | | CONTINUED |

**Millbank Condominium**
c/o HPMG
Box PO 686
Northampton, MA 01060

Statement

| | |
|---|---|
| Account: | MILL - 12 - clocol |
| Date: | 03/09/04 |
| Payment: | _____ |

Donald and Colleen Cloutler
104 Linden Street
Apt. 3L
Holyoke, MA  01040

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 2,524.80 |
| 05/11/03 | mar - late fee | 10.00 | | 2,534.80 |
| 05/12/03 | chk# 112  parc payment on may | | 166.00 | 2,368.80 |
| 06/01/03 | Condo Fee | 174.30 | | 2,543.10 |
| 06/01/03 | Marcus #44510 | 938.00 | | 3,481.10 |
| 06/06/03 | chk# 120  payment on past due | | 166.00 | 3,315.10 |
| 06/11/03 | sept late fee | 10.00 | | 3,325.10 |
| 06/11/03 | oct late fee | 10.00 | | 3,335.10 |
| 06/11/03 | nov late fee | 10.00 | | 3,345.10 |
| 06/11/03 | dec late fee | 10.00 | | 3,355.10 |
| 06/11/03 | jan late fee | 10.00 | | 3,365.10 |
| 06/11/03 | feb late fee | 10.00 | | 3,375.10 |
| 06/11/03 | mar late fee | 10.00 | | 3,385.10 |
| 07/01/03 | Condo Fee | 174.30 | | 3,559.40 |
| 07/01/03 | Marcus #44964 | 440.90 | | 4,000.30 |
| 07/11/03 | sept late fee | 10.00 | | 4,010.30 |
| 07/11/03 | oct late fee | 10.00 | | 4,020.30 |
| 07/11/03 | nov late fee | 10.00 | | 4,030.30 |
| 07/11/03 | dec late fee | 10.00 | | 4,040.30 |
| 07/11/03 | jan late fee | 10.00 | | 4,050.30 |
| 07/11/03 | feb late fee | 10.00 | | 4,060.30 |
| 07/11/03 | march late fee | 10.00 | | 4,070.30 |
| 07/11/03 | july late fee | 10.00 | | 4,080.30 |
| 08/01/03 | Condo Fee | 174.30 | | 4,254.60 |
| 08/01/03 | Marcus #45637 | 156.00 | | 4,410.60 |
| 08/11/03 | sept late fee | 10.00 | | 4,420.60 |
| 08/11/03 | oct late fee | 10.00 | | 4,430.60 |
| 08/11/03 | nov late fee | 10.00 | | 4,440.60 |
| 08/11/03 | dec late fee | 10.00 | | 4,450.60 |
| 08/11/03 | jan late fee | 10.00 | | 4,460.60 |
| 08/11/03 | feb late fee | 10.00 | | 4,470.60 |
| 08/11/03 | March late fee | 10.00 | | 4,480.60 |
| 08/11/03 | July late fee | 10.00 | | 4,490.60 |
| 08/11/03 | Aug late fee | 10.00 | | 4,500.60 |
| 09/01/03 | Condo Fee | 174.30 | | 4,674.90 |
| 09/01/03 | Marcus #46842 | 74.00 | | 4,748.90 |
| | | | | CONTINUED |

# Millbank Condominium

Statement

c/o HPMG
Box PO 686
Northampton, MA 01060

Account:    MILL - 12 - clocol

Date:    03/09/04

Donald and Colleen Cloutier
104 Linden Street
Apt. 3L
Holyoke, MA  01040

Payment:    _____

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | 1,096.90 |
| 01/11/03 | jan - late fee | 10.00 | | 1,106.90 |
| 02/01/03 | Condo Fee | 166.00 | | 1,272.90 |
| 02/10/03 | sept - late fee | 10.00 | | 1,282.90 |
| 02/10/03 | oct - late fee | 10.00 | | 1,292.90 |
| 02/10/03 | nov - late fee | 10.00 | | 1,302.90 |
| 02/10/03 | dec - late fee | 10.00 | | 1,312.90 |
| 02/10/03 | jan - late fee | 10.00 | | 1,322.90 |
| 02/10/03 | feb - late fee | 10.00 | | 1,332.90 |
| 03/01/03 | Condo Fee | 174.30 | | 1,507.20 |
| 03/11/03 | sept - late fee | 10.00 | | 1,517.20 |
| 03/11/03 | oct - late fee | 10.00 | | 1,527.20 |
| 03/11/03 | nov - late fee | 10.00 | | 1,537.20 |
| 03/11/03 | dec - late fee | 10.00 | | 1,547.20 |
| 03/11/03 | jan - late fee | 10.00 | | 1,557.20 |
| 03/11/03 | feb - late fee | 10.00 | | 1,567.20 |
| 03/11/03 | mar - late fee | 10.00 | | 1,577.20 |
| 03/31/03 | Marcus, Errico, Emmer & Brooks | 310.00 | | 1,887.20 |
| 04/01/03 | Condo Fee | 174.30 | | 2,061.50 |
| 04/11/03 | sept late fee | 10.00 | | 2,071.50 |
| 04/11/03 | oct late fee | 10.00 | | 2,081.50 |
| 04/11/03 | nov late fee | 10.00 | | 2,091.50 |
| 04/11/03 | dec late fee | 10.00 | | 2,101.50 |
| 04/11/03 | jan late fee | 10.00 | | 2,111.50 |
| 04/11/03 | Feb late fee | 10.00 | | 2,121.50 |
| 04/11/03 | mar late fee | 10.00 | | 2,131.50 |
| 04/11/03 | apr late fee | 10.00 | | 2,141.50 |
| 04/25/03 | chk# 107  parc payment on April condo fee only | | 162.00 | 1,979.50 |
| 05/01/03 | Condo Fee | 174.30 | | 2,153.80 |
| 05/01/03 | Marcus #43375 | 311.00 | | 2,464.80 |
| 05/11/03 | spet - late fee | 10.00 | | 2,474.80 |
| 05/11/03 | oct - late fee | 10.00 | | 2,484.80 |
| 05/11/03 | nov late fee | 10.00 | | 2,494.80 |
| 05/11/03 | Dec - late fee | 10.00 | | 2,504.80 |
| 05/11/03 | Jan - late fee | 10.00 | | 2,514.80 |
| 05/11/03 | feb - late fee | 10.00 | | 2,524.80 |
| | | | | CONTINUED |

# Millbank Condominium

**Statement**

c/o HPMG
Box PO 686
Northampton, MA 01060

Account:    MILL - 12 - clocol

Date:       03/09/04

**Donald and Colleen Cloutier**
**104 Linden Street**
**Apt. 3L**
**Holyoke, MA  01040**

Payment:    _____

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | 722.00 |
| 06/01/02 | Condo Fee | 166.00 | | 888.00 |
| 06/04/02 | chk# 342  bal on 2001 past due and parc payment fo | | 166.00 | 722.00 |
| 06/20/02 | chk# 04400575  bal on feb, mar,april,may and june | | 722.00 | 0.00 |
| 07/01/02 | Condo Fee | 166.00 | | 166.00 |
| 07/11/02 | Late fee–July | 10.00 | | 176.00 |
| 08/01/02 | Condo Fee | 166.00 | | 342.00 |
| 08/11/02 | Late fee–July | 10.00 | | 352.00 |
| 08/11/02 | Late fee–Aug. | 10.00 | | 362.00 |
| 09/01/02 | Condo Fee | 166.00 | | 528.00 |
| 09/10/02 | late fee–July | 10.00 | | 538.00 |
| 09/10/02 | Late fee–Aug | 10.00 | | 548.00 |
| 09/10/02 | Late fee–Sept | 10.00 | | 558.00 |
| 09/16/02 | Notice | 16.00 | | 574.00 |
| 09/16/02 | Notice | 19.70 | | 593.70 |
| 09/17/02 | chk# 417105  july,1 july LF's, Aug, 2  Aug LF's | | 362.00 | 231.70 |
| 10/01/02 | Condo Fee | 166.00 | | 397.70 |
| 10/11/02 | sept late fee | 10.00 | | 407.70 |
| 10/11/02 | oct late fee | 10.00 | | 417.70 |
| 11/01/02 | Condo Fee | 166.00 | | 583.70 |
| 11/11/02 | late fee-sept | 10.00 | | 593.70 |
| 11/11/02 | late fee-oct | 10.00 | | 603.70 |
| 11/11/02 | late fee-nov | 10.00 | | 613.70 |
| 12/01/02 | Condo Fee | 166.00 | | 779.70 |
| 12/11/02 | late fee - sept | 10.00 | | 789.70 |
| 12/11/02 | late-oct | 10.00 | | 799.70 |
| 12/11/02 | late fee - nov | 10.00 | | 809.70 |
| 12/11/02 | late fee - dec | 10.00 | | 819.70 |
| 12/12/02 | legal fee | 25.00 | | 844.70 |
| 12/23/02 | Hampden County Sheriffs | 28.65 | | 873.35 |
| 12/23/02 | Hampden County Sheriffs | 17.55 | | 890.90 |
| 01/01/03 | Condo Fee | 165.00 | | 1,056.90 |
| 01/11/03 | sept late fee | 10.00 | | 1,066.90 |
| 01/11/03 | oct- late fee | 10.00 | | 1,076.90 |
| 01/11/03 | nov - late fee | 10.00 | | 1,086.90 |
| 01/11/03 | dec - late fee | 10.00 | | 1,096.90 |
| | | | | CONTINUED |

MILLBANK PLACE CONDOMINIUM

CERTIFICATE PURUSANT TO MASSACHUSETTS
GENERAL LAWS CHAPTER 183a, SECTION 6 (D)

Reference is hereby made to that certain Declaration of Trust and By-Laws creating the Millbank
Place Condominium Association dated October 24, 1986, recorded with the Hampshire County
Registry of Deeds in Book 2833, Page 267, and thereafter amended, which Declaration of Trust
established the organization of Unit Owners at Millbank Place Condominium Association
pursuant to the provisions of Massachusetts General Laws, Chapter 183A, and the provisions of
the Master Deed creating Millbank Place Condominium, dated October 24, 1986, recorded with
the Hampshire County Registry of Deeds in Book 2833, Page 241, as may be amended.

The undersigned, being designated as having authority to execute this Certificate, does hereby
certify, pursuant to Massachusetts Laws Chapter 183A, Section 6(d), that common expenses or
other sums assessed against Donald and Colleen Cloutier, the owners of 351 Pleasant Street # 12
at Millbank Place One Condominium, Northampton, Massachusetts, are owed in the amount of
$7,833.60 through April 30, 2004 and the Millbank Place One Condominium Association hereby
waives any Right of First Refusal applicable to the subject unit.

Executed as a sealed instrument this 22nd day of April 2004.

> HAMPSHIRE PROPERTY MANAGEMENT GROUP, INC.
> AGENT FOR MILLBANK PLACE ONE CONDOMINIUM
> ASSOCIATION
>
> By: _Patricia Taylor_
> Patricia Taylor, Senior Property Manager


COMMONWEALTH OF MASSACHUSETTS


On this 22nd day of April 2004, before me, the undersigned notary public, personally appeared
Patricia Taylor, proved to me through satisfactory evidence of identification, which is personal
knowledge, to be the person whose name is signed on the preceding or attached document in my
presence.

Notary Public
My Commission expires:

Russell B. Jobson, Jr.
Notary Public
My Commission Expires March 26, 2010

MILLBANK PLACE CONDOMINIUM

CERTIFICATE PURUSANT TO MASSACHUSETTS
GENERAL LAWS CHAPTER 183a, SECTION 6 (D)

Reference is hereby made to that certain Declaration of Trust and By-Laws creating the Millbank
Place Condominium Association dated October 24, 1986, recorded with the Hampshire County
Registry of Deeds in Book 2833, Page 267, and thereafter amended, which Declaration of Trust
established the organization of Unit Owners at Millbank Place Condominium Association
pursuant to the provisions of Massachusetts General Laws, Chapter 183A, and the provisions of
the Master Deed creating Millbank Place Condominium, dated October 24, 1986, recorded with
the Hampshire County Registry of Deeds in Book 2833, Page 241, as may be amended.

The undersigned, being designated as having authority to execute this Certificate, does hereby
certify, pursuant to Massachusetts Laws Chapter 183A, Section 6(d), that common expenses or
other sums assessed against Donald and Colleen Cloutier, the owners of 351 Pleasant Street # 12
at Millbank Place One Condominium, Northampton, Massachusetts, are owed in the amount of
$8,684.36 through May 31, 2004 and the Millbank Place One Condominium Association hereby
waives any Right of First Refusal applicable to the subject unit.

Executed as a sealed instrument this 13th day of May 2004.

HAMPSHIRE PROPERTY MANAGEMENT GROUP, INC.
AGENT FOR MILLBANK PLACE ONE CONDOMINIUM
ASSOCIATION

By _____
Patricia Taylor, Senior Property Manager


COMMONWEALTH OF MASSACHUSETTS


On this 13th day of May 2004, before me, the undersigned notary public, personally appeared
Patricia Taylor, proved to me through satisfactory evidence of identification, which is personal
knowledge, to be the person whose name is signed on the preceding or attached document in my
presence.

_____
Notary Public                          Russell B. Jopson, Jr.
My Commission expires:                 Notary Public
                                       My Commission Expires March 26, 2010