UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30093-MAP

|  |  |
|---|---|
| *COLLEEN A. CLOUTIER and DONALD L.* *CLOUTIER,* Plaintiffs v. *TRUSTEES OF MILLBANK PLACE* *CONDOMINIUM TRUST, HAMPSHIRE PROPERTY* *MANAGEMENT GROUP, INC. and MARCUS,* *ERRICO, EMMER & BROOKS, P.C.,* Defendants | ) ) ) ) ) ) ) ) ) ) ) |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I, III, IV, V, VI, AND VII OF PLAINTIFFS' COMPLAINT

Now come the Plaintiffs, Colleen A. Cloutier and Donald L. Cloutier (hereinafter referred to as the "Plaintiffs" or "Cloutiers"), and respectfully submit this Supplemental Memorandum in Opposition to the Defendants' Motion to Dismiss in accordance with this Court's Order of July 15, 2005.

In support of this Supplemental Memorandum, the Plaintiffs attach the Declaration of Trust as Exhibit "A". In further support, the Plaintiffs bring to the Court's attention the following relevant paragraphs regarding Count V of the Plaintiffs' Complaint, which alleges that the Defendants breached their fiduciary duties to the Plaintiffs:

1.    Article I., Section 2., page 2, which provides:

It is hereby expressly declared that a trust and not a partnership has been created and that the Unit Owners are beneficiaries and not partners or associates or any other relation whatever among themselves with respect to the trust property, and

hold no relation to the Trustees other than as beneficiaries, with only such rights as are conferred upon them as such beneficiaries hereunder and under and pursuant to the provisions of said Chapter 183A; and

2.    Article V., Section 1., pages 9-10:

The Board of Trustees shall have the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except as by law or by the Master Deed or by this Trust may not be delegated to the Board of Trustees by the Unit Owners. Such powers and duties of the Board of Trustees shall include, but shall not be limited to. the following:

      (a)    Operation. care upkeep and maintenance of the Common Elements. . .

      (j)    Making of repairs, additions, improvements to, or alterations of, the Condominium. and repairs to and restoration of the Condominium in accordance with the other provisions of this Trust.

Based upon the foregoing. the Defendants' Motion to Dismiss should be denied.

          PLAINTIFFS,
          COLLEEN A. CLOUTIER and
          DONALD L. CLOUTIER
          By Their Attorney.

Dated:    August 4. 2005        /s/ Joseph J. Lange
          Joseph J. Lange, Esq., BBO #564577
          Christine A. Cahillane, Esq.. BBO# 647426
          Lyon & Fitzpatrick, LLP
          14 Bobala Road, 4th Floor
          Holyoke. MA  01040
          (413) 536-4000 - Fax (413) 536-3773
          E-mail:  jlange@lyonfitzpatrick.com
          E-mail:  ccahillane@lyonfitzpatrick.com

## *CERTIFICATE OF SERVICE*

I, Joseph J. Lange, Esquire, hereby certify that on August 5, 2005, I served the within PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I, III, IV, V, VI, AND VII OF PLAINTIFFS' COMPLAINT upon counsel of record for the defendants by electronic filing, thereof to:

    Paul J. Barresi, Esq.
    Marcus, Errico, Emmer & Brooks, P.C.
    45 Braintree Hill Office Park #107
    Braintree, MA 02154

                              /s/ Joseph J. Lange
                              Joseph J. Lange, Esquire


U:\WP80\C\Cloutier\Cloutier - Supplemental Opposition to Motion to Dismiss.wpd

SEE
BOOK 2917
PAGE 349

SEE
BOOK 4957
PAGE 1

025778

BOOK 2833 PAGE 0267

102286

## DECLARATION OF TRUST

THIS DECLARATION OF TRUST made as of the 24 day of October 1986,
by Michael G. Sissman, of Northampton, Massachusetts, (hereinafter called
the "Trustees", which term and any pronoun referring thereto shall be
deemed to include his successors in trust hereunder and to mean the
Trustee or Trustees for the time being hereunder, wherever the context so
permits). See Schedule C for Index.

### W I T N E S S E T H :

#### ARTICLE I.

#### Name of Trust

The Trust hereby created shall be known as "Millbank Place
Condominium Trust" and under that name, so far as legal, convenient and
practicable, shall all business carried on by the Trustees be conducted
and shall all instruments in writing by the Trustees be executed.

#### ARTICLE II.

#### The Trust and Its Purpose

Section 1. All of the rights and powers in and with respect to the
common areas and facilities (hereinafter called the "Common Elements") of
the Millbank Place Condominium (hereinafter called the "Condominium"),
established by a Master Deed (the "Master Deed") of even date and recorded
herewith, which are by virtue of the provisions of Chapter 183A of the
Massachusetts General Laws conferred upon or exercisable by the
organization of unit owners of the Condominium, and all property, real and
personal, tangible and intangible, conveyed to the Trustees hereunder
shall vest in the Trustees as joint tenants, with right of survivorship,
as Trustees of this Trust, IN TRUST to exercise, manage, administer and

-1-

BOOK 2833 PG 0268

dispose of the same and to receive the income thereof for the benefit of the owners of record from time to time of units of the Condominium (hereinafter called the "Unit Owners"), according to the schedule of beneficial interest set forth in the Master Deed, as provided in Article IV, Section 1, hereof, and in accordance with the provisions of said Chapter 183A, this Trust being the organization of the Unit Owners established pursuant to the provisions of said Chapter 183A for the purposes therein set forth.

Section 2.  It is hereby expressly declared that a trust and not a partnership has been created and that the Unit Owners are beneficiaries and not partners or associates or any other relation whatever among themselves with respect to the trust property, and hold no relation to the Trustees other than as beneficiaries, with only such rights as are conferred upon them as such beneficiaries hereunder and under and pursuant to the provisions of said Chapter 183A.

ARTICLE III.

The Trustees

Section 1.  There shall be a Board of Trustees hereunder consisting initially of Michael G. Sissman, to serve for a term which shall expire at the annual meeting of Unit Owners in 1987 unless such term shall expire earlier, as hereinafter provided.

At the annual meeting of the Unit Owners in 1987 or 120 days after 75% of the beneficial interest of the Condominium have been conveyed to Unit Owners, whichever is earlier, the term of said Trustee then serving shall expire, and five (5) Trustees shall be elected as follows:  Two (2) shall be elected by the majority in beneficial interest of the commercial area

-2-

BOOK 2833 PAGE 0269

(the ground floor and basement and the 369 Pleasant Street building), one
for a term of one (1) year and one for a term of two (2) years; two (2)
shall be elected by the majority in beneficial interest of the residential
area (the second and third floors), one for a term of one (1) year and one
for a term of two (2) years; and one shall be elected by a majority in
beneficial interest of the whole condominium for a two (2) year term.

At all meetings of Unit Owners, the Seller shall be entitled to the
same voting rights as any other Unit Owners, as to Units owned by the
Seller.

Each vacancy in the office of a Trustee shall be filled at the next
annual meeting if such be held within thirty (30) days, or by an
instrument in writing setting forth: (a) the appointment of a natural
person to act as such Trustee, signed: (i) by Unit Owners entitled to more
than fifty percent (50%) of the beneficial interest of the appropriate
category, i.e., commercial or residential, or (ii) if Unit Owners entitled
to such percentage have not within thirty (30) days after the occurance of
such vacancy made such appointment, by a majority of the then remaining
Trustees, or by the sole remaining Trustee if there be only one; and (b)
the acceptance of such appointment, signed and acknowledged by the person
so appointed. Such appointment shall become effective upon the recording
with Hampshire County Registry of Deeds of a certificate of such
appointment, signed and accepted as aforesaid, and such person shall then
be and become such Trustee and shall be vested with the title to the trust
property, jointly with the remaining or surviving Trustees or Trustee,
without the necessity of any act of transfer or conveyance. If for any
reason any vacancy in the office of Trustee shall continue for more than
sixty (60) days and shall at the end of that time remain unfilled, a

-3-


BOOK 2833 PAGE 0270

Trustee or Trustees to fill such vacancy or vacancies, may be appointed by any court of competent jurisdiction upon the application of any Unit Owner and notice to all Unit Owners and Trustees and to such other parties in interest, if any, to whom the court may direct that notice be given.

The foregoing provisions of this Section to the contrary notwithstanding, despite any vacancy in the office of Trustee, however caused and for whatever duration, the remaining or surviving Trustees subject to the provisions of the immediately following Section, shall continue to exercise and discharge all of the powers, discretions and duties hereby conferred or imposed upon the Trustees.

Section 2. In any matters relating to the administration of the Trust hereunder and the exercise of the powers hereby conferred, the Trustees may act by a majority vote at any duly called meeting at which a quorum is present as provided in Paragraph A of Section 6 of Article V. The Trustees may also act without a meeting by an instrument signed by a sufficient number of Trustees to constitute a quorum as provided in Paragraph A of Section 6, Article V.

Section 3. Any Trustee may resign at any time by instrument in writing, signed and acknowledged in the manner required in Massachusetts for the acknowledgement of deeds, and such resignation shall take effect upon the recording of such instrument with said Registry of Deeds. After reasonable notice and opportunity to be heard before the Board of Trustees, a Trustee may be removed from office, with or without cause, by an instrument in writing signed by Unit Owners entitled to more than fifty percent (50%) of the beneficial interest that was eligible to vote for the election of such Trustee, such instrument to take effect upon the recording thereof with said Registry of Deeds.

-4-

BOOK 2833 PAGE 0271

Section 4.  If the Trustees at a meeting or the Unit Owners at an
annual meeting so vote, the association of owners shall have fidelity
coverage against dishonest acts on the part of directors, managers, (and
officers, employees and agents of a manager) trustees, employees or
volunteers responsible for handling funds belonging to or administered by
the condominium trust.  If obtained, the fidelity bond or insurance shall
name the condominium trust as the named insured and shall be written in an
amount not less than the estimated maximum of funds including reserve
funds in the custody of the Trustees or manager, as the case may be, at
any given time during the term of each bond, and sufficient to provide
protection which is in no event less than the greater of three months
aggregate assessments on all units or one and one-half times the insured's
estimated annual operating expenses, and also all reserves.

In connection with such coverage, an appropriate endorsement to the
policy to cover any persons who serve without compensation shall be added
if the policy would not otherwise cover volunteers.

Fidelity bonds required herein must meet the following requirements:

(1)  Fidelity bonds shall name the Trust as an obligee;

(2)  The bonds shall contain waivers by the issuers of the
     bonds of all defenses based upon the exclusion of persons
     serving without compensation from the definition of
     "employees", or similar terms or expressions;

(3)  The premiums on all bonds required herein for the Trust (except
     for premiums on fidelity bonds maintained by a management agent
     for its officers, employees and agents) shall be paid by the
     Trust as a common expense;

(4)  The bonds shall provide that they may not be cancelled or

-5-

BOOK 2833 PG 0272

substantially modified (including cancellation for non-payment of
a premium) without at least ten (10) days prior written notice to
the Trust and to the Trustees as Insurance Trustees and each
mortgagee.  If neither the Trustees nor the Unit Owners vote to
obtain such fidelity bonds, then each Trustee, upon accepting
that position will sign a notarized personal bond in
substantially the following language:

> "I acknowledge that I am accepting a position of
> responsibility with the Millbank Place Condominium Trust and
> I hereby bind myself, my heirs and Executors to repay to the
> Millbank Place Condominium Trust and/or the Unit Owners for
> any loss caused to them or any of them as a result of my
> dishonesty."

**Section 5.**  No Trustee hereinbefore named or appointed as hereinbefore
provided shall under any circumstances or in any event be held liable or
accountable out of his personal assets or be deprived of compensation by
reason of any action taken, suffered or omitted in good faith or be so
liable or accountable for more money or other property than he actually
receives, or for allowing one or more of the other Trustees to have
possession of the Trust books or property, or be so liable, accountable or
deprived by reason of honest errors of judgement or mistakes of fact or
law or by reason of the existance of any personal interest or gain or by
reason of anything except his own personal and willful malfeasance and
default.

**SECTION 6.**  No Trustee shall be disqualified by his office from
contracting or dealing with the Trustees or with one or more Unit Owners
(whether directly or indirectly because of his interest individually or

-6-

BOOK 2833 PAGE 0273

the Trustee's interest or any Unit Owner's interest in any corporation, firm, trust or other organization connected with such contracting or dealing or because of any other reason), as vendor, purchaser or otherwise, nor shall any such dealing, contract or arrangement entered into in respect of this Trust in which any Trustee so dealing or contracting or being so interested be liable to account for any profit realized by any such dealing, contract or arrangement by reason of such Trustee's holding office or of the fiduciary relationship hereby established, provided the Trustee shall disclose to the other Trustees the nature of his interest before the dealing, contract, or arrangement is entered into.

Section 7. The Trustees and each of them shall be entitled to indemnify both out of the trust property and by the Unit Owners against any liability incurred by them, or any of them in the execution hereof, including, without limitation, liabilities in contract and in tort and liabilities for damages, penalties and fines. Each Unit Owner shall be personally liable for all sums lawfully assessed for his share of the common expenses of the Condominium and for his proportionate share of any claims involving the trust property in excess thereof.

Section 8. The Trustee shall elect from their number, at the annual meeting of the Trustees, a Chairman, Treasurer, and Secretary, who shall have such duties as are determined by the Trustees.

Section 9. The compensation of the Trustee shall be determined at each annual meeting of Unit Owners, except for the original Trustee, who agrees to serve without compensation until the annual meeting in 1987.

### ARTICLE IV

### Beneficiaries and the Beneficial Interest in Trust

-7-

BOOK 2833 ◼ 0274

Section 1.  The beneficiaries shall be the Unit Owners of the
Condominium, for the time being.  The beneficial interest of the
Trust hereunder shall be divided among the Unit Owners in the
percentage of undivided beneficial interest appertaining to the
Units of the Condominium, all as set forth in Schedule A of the
Master Deed, incorporated herein by reference with the same force
and effect as though fully set forth in the body of this
instrument.  The beneficiaries or Unit Owners shall collectively be
known sometimes as the Association or the Owners Association.

Section 2.  The beneficial interest of each Unit of the
Condominium shall be held and exercised as a unit and shall not be
divided among several owners of any such Unit.  To that end,
whenever any of said Units is owned of record by more than one
person, the several owners of such Unit shall:  (a) determine and
designate which one of such owners shall be authorized and entitled
to cast votes, execute instruments, and otherwise exercise the
rights appertaining to such Unit hereunder; and (b) notify the
Trustees of such designation by a notice in writing signed by all
of the record owners of such Unit.  Any such designation shall take
effect upon receipt by the Trustees of such notice, and may be
changed at any time and from time to time by notice as aforesaid.
In the absence of any such notice of designation, the Board of
Trustees may, by majority vote, designate any one of such owners
for such purposes.

Section 3.  A Unit Owner may vote in person or by a written
proxy dated no earlier than six (6) month prior to the date of the
meeting at which such vote is taken.  A proxy purporting to be

-8-

BOOK 2833 PAGE 0275

executed by or on behalf of a Unit Owner shall be deemed valid unless challenged at or prior to its exercise. A proxy with respect to a Unit held in the name of two or more persons shall be valid if executed by one of them, unless at or prior to the exercise of the proxy, the Trustees receive specific notice to the contrary from any one of said persons

<div align="center">

ARTICLE V.

By-Laws.

</div>

The provisions of this Article V shall constitute the By-Laws of this Trust and the organization of Unit Owners established hereby, to wit:

### Section 1: Powers and Duties of Trustees.

The Board of Trustees shall have the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except as by law or by the Master Deed or by this Trust may not be delegated to the Board of Trustees by the Unit Owners. Such powers and duties of the Board of Trustees shall include, but shall not be limited to, the following:

(a) Operation, care, upkeep and maintenance of the Common Elements.

(b) Determination of the common expenses required for the affairs of the Condominium, including, without limitation, the operation and maintenance of the Condominium.

(c) Collection of the common charges from the Unit Owners.

(d) Employment and dismissal of the personnel necessary or

<div align="center">-9-</div>

BOOK 2833 PAGE 0276

advisable for the maintenance and operation of the Common Elements.

(e)  Adoption and amendment of rules and regulations covering the details of the operation and use of the Condominium.

(f)  Opening of bank accounts on behalf of the Condominium and designating the signatories required therefor.

(g)  Leasing, managing and otherwise dealing with such community facilities as may be provided for in the Master Deed as being common areas and facilities ("Common Elements").

(h)  Owning, conveying, encumbering, leasing and otherwise dealing with Units conveyed to it or purchased by it as the result of enforcement of the lien for common expenses, or otherwise.

(i)  Obtaining of insurance for the condominium, including the Units, pursuant to the provisions hereof.

(j)  Making of repairs, additions and improvements to, or alterations of, the Condominium, and repairs to and restoration of the Condominium in accordance with the other provisions of this Trust.

(k)  The Board of Trustees shall have the power to enforce obligations of Unit Owners; to enforce the rules and regulations of the Condominium; to allocate income and expenses; and to do anything and everything else necessary and proper for the sound management of the Condominium.  In case of persistant violation of the rules and regulations by a Unit Owner, the Board of

-19-

BOOK 2833 0277

Trustees shall have the power to require such Unit
Owner to post a bond to secure adherence to the rules
and regulations.

(l)  Purchase or lease a Unit for use by a resident manager.

(m)  Grant or relocate permits, easements and licenses on,
over and under the Common Elements.

(n)  Enter into management contracts for the management of the
Common Elements.

(o)  To sue in the name of the Trust, to compromise, and
to release any claims of the Trust.

Section 2:  Common Expenses, Profit and Funds.

A.  Commencing with the date of recording of his Unit Deed,
each Unit Owner shall be liable for common expenses and shall be
entitled to common profits of the Condominium according to his
respective percentage of undivided interest in the Common Elements
as set forth in Schedule 3A of the Master Deed which is
incorporated herein by reference with the same force and effect as
though fully set forth in the body of this instrument.  The
Trustees may at any time or times distribute common profits among
the Unit Owners in such proportions.  The Trustees shall set aside
common funds of the Condominium as reserve or contingent funds
maintained out of regular assessments for common expenses, and may
use the funds so set aside for reduction of indebtness or other
lawful capital purpose, or, subject to the provisions of the
following Section 3, for periodic maintenance, repair, replacement,
rebuilding or restoration of the Common Elements, or for
improvements thereto, and the funds so set aside shall not be

-11-

BOOK 2833 PS 0278

deemed to be common profits available for
distribution.  Condominium dues or charges shall include an
adequate reserve fund for maintenance, repair and replacement of
those Common Elements that must be replaced on a periodic basis and
shall be payable in regular installments rather than by special
assessments.

Additionally, a working capital fund must be established for
the initial months of the project operation equal to at least two
months' estimated common areas charge for each Unit.  Each Unit's
share of the working capital fund must be collected and transferred
to the Trustees as agents for the Association at the time of
closing of the sale of each unit and maintained in a a segregated
account for the use and benefit of the Association.  The
contribution to the working capital fund for each unsold unit shall
be paid to the Association within 60 days after the date of the
conveyance of the first Unit in the phase of which the Unit is a
part.  The residential units and commercial units shall be
considered separate phases.  The purpose of the fund is to insure
that the Trustee will have cash available to meet unforeseen
expenditures, or to acquire additional equipment or services deemed
necessary or desirable by the Trustees.  Amounts paid into the fund
are not to be considered as advance payment of regular assessments.

B.  1.  Budget.  At least thirty (30) days prior to the
commencement of each fiscal year of this Trust, the Board of
Trustees shall estimate the common expenses expected to be incurred
during such fiscal year, together with a reasonable provision for
contingencies and reserves, and after taking into account any

-12-

BOOK 2833 PAGE 0279

undistributed common

profits from prior years, shall determine the assessment to be made
for such fiscal year. The Trustees shall promptly render
statements to the Unit Owners for their respective shares of such
assessment, and each Unit Owner thereafter shall pay one-twelfth
(1/12) of his share of the estimated common expenses monthly in
advance on the first day of each month. In the event that the
Board of Trustees shall determine during any fiscal year that the
assessment so made is less than the common expenses actually
incurred, or in the reasonable opinion of the Trustees likely to be
incurred, the Board of Trustees shall make a supplemental
assessment or assessments and render statements therefor in the
manner aforesaid, and such statements shall be payable and take
effect as aforesaid. The Board of Trustees may in its discretion
provide for payments of statements in monthly or other
installments. In order to create a reserve fund for future
contingencies, the Board of Trustees shall assess from time to
time, in addition to the foregoing assessments, each Unit Owner for
a sum or sums sufficient to provide the Condominium Trust with
sufficient capital to meet emergencies and other contingencies.
The Board of Trustees may assess a late charge of Ten ($10.00)
Dollars per month for each late payment or part thereof if the
amount due is not paid by the tenth (10th) day of each month for
each month that the amount due remains unpaid. The amounts due
hereunder, together with the late charges shall constitue a lien on
the Unit of the Unit Owner assessed, pursuant to the provisions of
Section 6 of said Chapter 183A.

-13-

BOOK 2833 PG 0260

2. In preparing the budget the Trustees will separately calculate the items relevant to each beneficial interest (as described in Article XII, Section 6) and present to each Unit its composit assessment.

C. The Board of Trustees shall expend common funds only for common expenses and lawful purposes permitted hereby and by the provisions of said Chapter 183A.

D. In the event of default by any Unit Owner in paying to the Condominium Trust the common charges as determined by the Board of Trustees, such Unit Owner shall be obligated to pay the above-described late charges, together with all expenses, including attorney's fees, incurred by the Board of Trustees in any proceeding brought to collect such unpaid common charges. All such unpaid common charges shall constitute a lien to the extent provided by law. The Board of Trustees shall have the right and duty to attempt to recover such common charges, together with late charges, and the expenses of the proceedings, including attorneys' fees, in an action to recover the same brought against such Unit Owner, or by the foreclosure of the lien on such Unit as provided by law.

Section 3: Insurance.

The Trustees shall review insurance coverage at least annually in order to ascertain the adequacy of such coverage.

The Trustees shall determine the size of any deductible and shall determine the responsibility for funding the deductible in a fair and equitable manner as to each loss.

The Trustee shall obtain and maintain to the extent obtainable

-14-

BOOK 2833 0281

and permitted by applicable law, a multi-peril all-risk type policy, including fire and extended coverage in the kinds and amounts commonly required by private institutional mortgage investors for projects similar in construction, location and use, insuring the Condominium, including without limitation, common areas and facilities, all of the units with all fixtures, additions, alterations and improvements thereof, but not including any business fixtures, equipment, stock, inventory, furniture, furnishings, household and personal property belonging to and owned by individual Unit Owners or their tenants, in an amount not less than one hundred (100%) percent of the insurable value thereof (based upon replacement cost) as determined by the Trustees at least annually, such insurance to name the Trustees as Insurance Trustees for use and benefit of all Unit Owners, with loss payable to and adjusted by the Trustees as Insurance Trustees in accordance with the provisions of these By-Laws.

Such policy shall contain the standard mortgagee clause commonly accepted by private institutional mortgage investors in the area in which the Condominium is located, which shall be endorsed to provide that any proceeds shall be paid to the Trustees for the use and benefit of mortgagees as their interests may appear.

Agreed amount, inflation guard and construction code endorsements are required, if available.

Policies for such casualty insurance shall provide: (i) that the insurer waives any right or subrogation against the Trust, the Trustees, their agents and employees, Unit Owners, their respective

-15-

BOOK 2833 PG 0282

employees, agents, tenants and guests; (ii) that the insurance
shall not be prejudiced by any act or neglect of any Unit Owners or
occupants or any other person or firm (including employees and
agents of Trustees of the Trust) when such act or neglect is not
within the control of the Trustees and the Trust (or Unit Owners
collectively) or by failure of the Trustees and the Trust (or the
Unit Owners collectively) to comply with any warranty or conditions
with regard to any portion of the premises over which the Trustees
and the Trust (or the Unit Owners collectively) have no control;
(iii) that such policies may not be cancelled or reduced without a
least thirty (30) days prior written notice to the Insurance
Trustees, all Unit Owners, and the first mortgagees of the Units;
(iv) that the insurer will not be entitled to contribution as
against any insurance obtained by individual Unit Owners covering
their own Units; (v) if available, that the insurer shall waive any
right it may have under the policy to repair or restore damage
should the Unit Owners elect to terminate the Condominium because
of such damage; (vi) that, notwithstanding any provisions hereof
which give the insurer the right to elect to restore damage in lieu
of making a cash settlement, such election may not be exercisable
if in conflict with the terms of said Chapter 183A, the Trust, or
these By-Laws; and (vii) for waivers of any defense based upon the
conduct of any insured and (viii) fair recognition of any Insurance
Trust Agreement.

Certificates of insurance, with proper mortgagee endorsements,
when requested, shall be issued to the Owners of each Unit.

Each Unit Owner shall have the duty to promptly report the

-16-

BOOK 2833 PG 0283

Trustees any improvements made by the Unit Owner to his Unit so
that the Trustees any obtain necessary additional insurance
coverage as required by the By-Laws, and the Unit Owner shall pay
the cost of additional insurance, if any, resulting from said
improvements.  If in the event of a casualty loss, the cost of
repair and restoration of the Condominium exceeds the available
insurance proceeds and such excess is the result of a lack of
insurance coverage caused by the failure of a Unit Owners to notify
the Trustees of improvements made by him to his Unit, as provided
in the preceding sentence, the excess cost resulting from such
failure shall be borne solely by the Unit Owner for failing to
report the same.  The extent to which the cost in excess of
insurance proceeds is attributable to a Unit Owner failing to
report improvements as aforesaid shall be determined by the
Trustees.

The Trustee or Trustees hereunder designated as Insurance
Trustee or Trustees as aforesaid shall collect and receive all
casualty loss insurance proceeds and shall hold, use, apply, and
disburse the same in accordance with applicable provisions of this
Article.

With respect to losses which affect portions or elements
covered by such insurance of a Unit, or of more than one Unit to
substantially the same or to different extents, the proceeds
relating thereto shall be used, applied and disbursed by the
Trustees in a fair and equitable manner.

The Trustees shall obtain and maintain, to the extent
obtainable and permitted by applicable law, a comprehensive policy

-17-

BOOK 2833 0284

of public liability insurance in such limits as the Trustees may, from time to time determine, but at least in the amount of $1,000,000.00 per occurance for personal injury and/or property damage covering the Trust, each Trustee, the managing agent, the manager and each Unit Owner with respect to liability arising out of ownership, maintenance or repair of those portions of the Condominium not reserved for exclusive use by the Owner or Owners of a single Unit, such insurance policy shall contain a "severability of interest" endorsement which shall preclude the insurer from denying the claim of a Unit Owner because of negligent acts of the Trustees or other Unit Owners. Coverage shall include, without limitation, legal liability of the insureds for property damage, bodily injuries and deaths of persons in connection with the operation, maintenance or use of the Common Elements and legal liability arising out of law suits related to employment contracts of the Association.

The scope of coverage shall include all other coverage in the kinds and amounts required by private institutional mortgage investors for projects similar in construction, location and use. Such policies must provide that they may not be substantially modified or cancelled by any party without at least thirty (30) days prior written notice to the Association and each first mortgagee listed as such in the insurance policy.

The Trustees shall also obtain and maintain, to the extent obtainable and permitted by applicable law, workman's compensation and employees' liability with respect to any manager, agent, or employee of the Trust, but excluding any independent agent or

-18-

BOOK 2833 0285

manager, and such other risks as the Trustees in their discretion deem appropriate, and shall insofar as practicable, contain provisions as above set forth with respect to noncancellation, waiver of subrogation, waiver or defense based on conduct of any insured, and non-contribution.

The cost of all insurance obtained and maintained by the Trustees pursuant to provisions of this Section shall be a common expense.

Section 4: Rebuilding and Restoration; Improvements; Condemnation.

A. Subject to the provisions of Article XII-3 hereof, in the event of any casualty loss to the trust property, the Trustees shall determine in their reasonable discretion whether or not such loss exceeds twenty-five percent (25%) of the value of the Condominium immediately prior to the casualty, and shall notify all Unit Owners of such determination. If such loss as so determined does not exceed twenty-five percent (25%) of such value, the Trustees shall proceed, without notice to the Unit Owners, with the necessary repairs, rebuilding, or restoration. If said casualty loss exceeds twenty-five percent (25%) of the value of the Condominium prior to casualty, notice to that effect shall be given to all unit owners, and;

(a) If sixty-seven percent (67%) in interest of the Unit Owners give notice of objection to within one hundred twenty (120) days after the date of the casualty, or sixty (60) days after notice, whichever first occurs, to proceeding with repair or restoration, the Condominium, including all units, shall be subject

-19-

BOOK 2833 PAGE 0286

to partition at the suit of any Unit Owner.  Such suit shall be
subject to dismissal at any time prior to entry of an order to sell
if an appropriate agreement to rebuild is filed.  The net proceeds
of a partition sale, together with any common funds including the
proceeds of any insurance, shall be divided in proportion to the
Units Owner's respective undivided ownership in the Common
Elements.  Upon such sale, the Condominium shall be deemed removed
from the provisions of Chapter 183A of the Massachusetts General
Laws.

(b)  If sixty-seven percent (67%) in interest of the Unit
Owners do not object to proceeding with the necessary repair or
restoration, the cost of rebuilding the Condominium, in excess of
any available common funds including the proceeds of any insurance,
shall be a common expense, provided, however that if such excess
cost exceeds twenty-five percent (25%) of the value of the
Condominium prior to the casualty, any Unit Owner who did so object
may apply to the Superior Court of the County in which the
Condominium is located on such notice to the Trust as the Court
shall direct, for an order directing the purchase of his Unit by
the Trust at the fair market value thereof as approved by the
Court.  The cost of any such purchase shall be a common expense.

B.  If fifty percent (50%) or more, but less than sixty-seven
percent (67%) in interest of the Unit Owners agree to make an
improvement to the Common Elements, the cost of such improvement
shall be borne solely by the Unit Owners so agreeing.  Sixty-seven
percent (67%) or more in interest of the Unit Owners may agree to
make an improvement to the Common Elements, and assess the cost

-28-

BOOK 283.? 0287

thereof to all Unit Owners as a common expense; but if such
improvements shall cost in excess of twenty-five percent (25%) of
the then value of the Condominium, any Unit Owner not so agreeing
may apply to the Superior Court of the county in which the
Condominium is located on such notice to the Trust as the Court
shall direct, for an order directing the purchase of his Unit by
the Trust at fair market value thereof as approved by the Court.
The cost of any such purchase shall be a common expense.

C.  The Trustees as agents for the Association shall represent
the Unit Owners in any condemnation proceedings or in negotiations,
settlements and agreements with the condemning authority for
acquisition of the Common Elements, or part thereof. Each Unit
Owner appoints the Trustee as attorney-in-fact for such purposes.

D.  In the event of a taking or acquisition of part or all of
the Common Elements by a condemning authority, the award of
proceeds of settlement shall be payable to the Trustees for the use
and benefit of the Unit Owners and their mortgagees as their
interest may appear.

Section 5:  Restrictions on Use of the Building and Units:
Rules and Regulations.

The Board of Trustees has adopted the Rules and Regulations set
forth in Schedule A annexed hereto and made a part of this Trust,
governing the details of the operation and use of the Common
Elements, and containing such restrictions on and requirements
respecting the use and maintenance of the Common Elements as are
consistent with the provisions of the Master Deed, and designated
to prevent unreasonable interference with the use by the Unit

-21-

BOOK 2833 0288

Owners of their Units and of the Common Elements. By vote of a majority in number of the Board of Trustees, the Board of Trustees may at any time and from time to time amend, modify and rescind the Rules and Regulations.

The Units and Common Elements shall be subject to the restrictions shown on Schedule B attached hereto, made a part hereof and incorporated by reference as if fully set forth herein, unless otherwise permitted by an instrument duly executed by the Trustees pursuant to the provisions of the Trust.

By vote of a majority in number of the Board of Trustees, the Board of Trustees may at any time and from time to time amend, modify and rescind the Rules and Regulations, provided, however, that no rule which impacts chiefly upon the commercial units shall be adopted or changed without the concurrence of both Trustees elected by the Commercial Units and provided that no rule which impacts chiefly upon the Residential Units shall be adopted or changed without the concurrence of both Trustees elected by the Residential Units.

Section 6: Meetings.

A. The Board of Trustees shall meet annually on the date of (and immediately following) the annual meeting of the Unit Owners, and at such meeting shall elect the Chairman, Treasurer and Secretary hereinbefore provided for. Other meetings may be called by the Chairman and in such other manner as the Trustees may establish, provided, however, that written notice of each meeting, stating the place, day and hour thereof, shall be given at least four (4) days before such meeting to each member of the Board of Trustees. One-half (1/2) of the number of Trustees shall constitute a quorum at all meetings, and such meetings shall be conducted

-22-

BOOK 2833 PA 0269

in accordance with such rules as the Board of Trustees may adopt.

B. Commencing with the calendar year 1987, there shall be an annual meeting of the Unit Owners on the second Thursday of May in each year, at 7:30 p.m., at the Condominium premises or at such other reasonable place and time as may be designated by the Board of Trustees by written notice given to the Unit Owners at least fourteen (14) days prior to the date so designated. Special meetings of the Unit Owners may be called by the Board of Trustees or by the Unit Owners upon written request of Unit Owners of more than thirty-three percent (33%) of the beneficial interest hereunder. Written notice of any such meeting designating the place, day and hour thereof shall be given by the Board of Trustees to the Unit Owners at least fourteen (14) days prior to the date so designated. At the annual meeting of the Unit Owners, the Board of Trustees shall submit reports of the management and finances of the Condominium. Whenever at any meeting the Board of Trustees proposes to submit to the Unit Owners any matter with respect to which approval of or action by the Unit Owners is necessary or appropriate, the notice of such meeting shall so state and reasonably specify such matter. A quorum of Unit Owners shall consist of the holders of at least fifty percent (50%) of the beneficial interest hereunder.

Section 7: Notices to Unit Owners.

Every notice to any Unit Owner required under the provisions hereof, or which may be deemed by the Trustees necessary or desirable in connection with the execution of the trust created hereby or which may be ordered in any judicial proceeding, shall be deemed sufficient and binding if a written or printed copy of such notice shall be given by one or more of the Trustees to such Unit Owner by leaving such notice with him at his

-23-

BOOK 2833 PAGE 0290

Unit in the Condominium or by mailing it, postage prepaid, addressed to
such Unit Owner at his address as it appears upon the records of the
Trustees, at least five (5) days prior to the date fixed for the happening
of the matter, thing or event of which such notice is given, or such
longer period of time as may be required by the specific terms of this
instrument.  Unit Owners may waive notice by duly executing an appropriate
waiver of notice.

Section 8:  Inspection of Books; Reports to Unit Owners.

Current copies of this Trust, by-laws, and rules and regulations for
the Condominium shall be made available and all books, accounts, records
and financial statements of the Trustees shall be open to inspection by
any one or more of the Trustees and the Unit Owners, lenders and holders,
insurers or guarantors of any first mortgage at all reasonable times
during normal business hours or under other reasonable circumstances.  The
Trustees shall, as soon as reasonably possible after the close of each
fiscal year, or more often if convenient to them, submit to the Unit
Owners a report of the operations of the Trustees for such year, which
shall include financial statements in summary form and only in such detail
as the Trustees shall deem proper.  Any person who has been furnished with
such report and shall have failed to object thereto by notice in writing
to the Trustees, given by registered or certified mail, within a period of
one (1) month of the date of receipt by him, shall be deemed to have
assented thereto.  Any holder, insurer or guarantor of a first mortgage
shall be entitled, free of charge, upon written request, to a financial
statement for the immediately preceding fiscal year furnished within a
reasonable time following such request.

Section 9:  Checks, Notes, Drafts, and Other Instruments.

-24-

BOOK 2833 0291

Checks, notes, drafts and other instruments for the payment of money drawn or endorsed in the names of the Trustees or of the Trust may be signed by any two (2) Trustees, or by any person or persons (who may be one of the Trustees) to whom such power may at any time, or from time to time, be designated by not less than a majority of the Trustees.

Section 18: Seal.

The seal of the Trustees shall be circular in form, bearing the inscription "Millbank Place Condominium Trust", but such seal may be altered by the Trustees, and the Trustees may, at any time or from time to time, at their option, adopt a common or wafer seal which shall be valid for all purposes.

Section 11: Fiscal Year.

The fiscal year of the Trust shall be the calendar year.

Section 12: Maintenance of Units.

The Unit Owners shall be responsible for the proper maintenance and repair of the interior of their respective Units. If a majority of the Trustees shall at any time in their reasonable judgment determine that the interior of a Unit is in such need of maintenance, painting or repair that the market value of an adjacent Unit or Units is being adversely affected, or that the condition of a Unit or any fixture, furnishing, facility or equipment thereof is hazardous to any Unit or the occupants thereof, the Trustees shall in writing request the Unit Owner to perform the needed maintenance, painting or repair, or otherwise to correct the hazardous condition, and in case such work shall not have been commenced within fifteen (15) days (or such reasonably shorter period in case of emergency, as the Trustees shall determine) of such request and brought to diligent completion, the Trustees shall be entitled to have access to the Unit and

-25-

BOOK 2833 0292

to have the work performed for the account of such Unit Owner whose Unit is in need of work, and the cost thereof shall constitute a lien upon such Unit, and such Unit Owner shall be personally liable therefore, provided that the lien thus created shall be subordinate to first mortgages of record, to the extent required by law.

## ARTICLE VI.

### Rights and Obligations of Third Parties Dealing With the Trustees; the Trustees; Limitation of Liability

Section 1.  No purchaser, mortgagee, lender or other person dealing with the Trustees as they then appear of record in said Registry of Deeds shall be bound to ascertain or inquire further as to the persons who are then Trustees hereunder or be affected with any notice, implied or actual, otherwise than by a certificate thereof, and such record or certificate shall be conclusive evidence of the personnel of said Trustees and of any changes therein.  The receipts of the Trustees, or any one or more of them, shall be effectual discharges therefrom to the persons paying or delivering the same, and no person from whom the Trustees, or any one or more of them, shall receive any money, property or other credit, shall be required to see to the application thereof.  No purchaser, mortgagee, lender or other person dealing with the Trustees or with any real or personal property which then is or formerly was the trust property shall be bound to ascertain or inquire as to the existence or occurrence of any event or purpose in or for which a sale, mortgage, pledge, or charge is herein authorized or directed, or otherwise as to the purpose or regularity of any of the acts of the Trustees or any one or more of them purporting to be done in pursuance of any of the provisions of powers herein contained, or as to the regularity of the resignation or

-26-

BOOK 2833 PAGE 0293

appointment of any Trustee, and any instrument of appointment of a new Trustee or discharge of a Trustee purporting to be executed by the Trustees, Unit Owners or other persons herein required to execute the same, shall be conclusive evidence in favor of any such purchaser or other person dealing with the Trustees of the matters therein recited relating to such resignation or appointment or the occasion thereof.

Section 2.  No recourse shall at any time be had under or upon any note, bond, contract, order, instrument, certificate, undertaking, obligation, covenant, or agreement, whether oral or written, made, issued or executed by the Trustees or by any agent or employee of the Trustees, or by reason of anything done or omitted to be done by or on behalf of them or any of them, against the Trustees individually, or against any such agent or employee, or against any beneficiary, either directly or indirectly, by legal or equitable proceedings, or by virtue of any suit or otherwise, and all persons extending credit to, contracting with, or having any claim against the Trustees shall look only to the trust property for payment under such contract or claim, or for the payment of any debt, damage, judgment or decree, or of any money that may otherwise become due or payable to them from the Trustees, so that neither the Trustees nor the beneficiaries, present or future, shall be personally liable therefor; provided, however, that nothing herein contained shall be deemed to limit or impair the liability of the Unit Owners under the provisions of Section 7 of Article III hereof or under the provisions of said Chapter 183A.

Section 3.  Every note, bond, contract, order, instrument, certificate, undertaking, obligation, covenant or agreement, whether oral or written, made issued or executed by the Trustees, or by any agent or

-27-

BOOK 2833 PG 0294

employee of the Trustees, shall be deemed to have been entered into subject to the terms, conditions, provisions and restrictions hereof, whether or not express reference shall have been made to this instrument.

Section 4.  This Declaration of Trust and any amendments thereto and any certificate herein required to be recorded, and any other certificate or paper signed by said Trustees or any of them which it may be deemed desirable to record,shall be recorded with said Registry of Deeds and such record shall be deemed conclusive evidence of the contents and effectiveness thereof according to the tenor thereof; and all persons dealing in any manner whatsoever with the Trustees, the trust property, or any beneficiary hereunder, shall be held to have notice of any alteration or amendment of this Declaration of Trust, or change of Trustee or Trustees, when the same shall be recorded with said Registry of Deeds. Any certificate signed by the Trustees in office at the time, setting forth as facts any matters affecting the Trust, including statements as to who are the beneficiaries, and as to matters determining the authority of the Trustees to do any act, when duly acknowledged the recorded with the said Registry of Deeds, shall be conclusive evidence as to the existence of such alleged facts in favor of all third persons, including the Trustees, acting in reliance thereon.  Any certificate executed by any Trustee hereunder, or by majority of the Trustees hereunder, setting forth the existence of any facts, the existence of which is necessary to authorize the execution of any instrument or the taking of any action by such Trustee or majority, as the case may be, shall, as to all persons acting in good faith in reliance thereon, be conclusive evidence of the trust of the statements made in such certificate and of the existence of the facts therein set forth.

-28-

BOOK 2833 PG 0295

## ARTICLE VII.

### Amendments and Termination

Section 1.  The Trustees, with the consent in writing of Unit Owners entitled to more than fifty per cent (50%) of the beneficial interest hereunder which shall include more than half of the Commercial Unit interest and more than half of the Residentail Unit interest, may at any time and from time to time amend, alter, add to, or change this Declaration of Trust in any manner or to any extent, the Trustees first, however, being duly indemnified to their reasonable satisfaction against outstanding obligations and liabilities; provided always, however, that no such amendment, alteration, addition or change shall be valid or effective:  (a) which is made without the consent of the Seller prior to the date on which the Seller ceases to be entitled to twenty percent (20%) of the overall beneficial interest hereunder; (b) according to the purport of which the percentage of the beneficial interest hereunder of any Unit Owner would be altered, other than by consent of all the Unit Owners, or in any manner or to any extent whatsoever modified or affected so as to be different than the percentage of the individual interest of such Unit Owner in the Common Elements as set forth in the Master Deed; or (c) which would render this Trust contrary or inconsistent with any requirements or provisions of any requirements of said Chapter 183A.  Any amendment, alteration, addition or change pursuant to the foregoing provisions of this Section shall become effective upon the recording with said Registry of Deeds of an instrument of amendment, alteration, addition or change, as the case may be, signed, sealed and acknowledged in the manner required in Massachusetts for the acknowledgement of deeds, by the Trustees, setting forth in full the amendment, alteration, addition, or change, and reciting

-29-

BOOK 2833 ▪ 0296

the consent of the Unit Owners herein required to consent thereto.

Such instrument, so executed and recorded, shall be conclusive evidence of the existence of all facts and of compliance with all prerequisites of the validity of such amendment, alteration, addition, or change, whether stated in such instrument or not, upon all questions as to title or affecting the rights of third persons, and for all other purposes.  In acting under this Section, the Trustees shall be bound by action taken at a meeting or written instrument complying with the requirements of Section 2 of Article III hereof.

Notwithstanding anything to the contrary in this Trust, the consent of the Owners of Units to which at least 67% of the beneficial interest is allocated and the approval of eligible holders holding mortgages on Units which have at least 51 per cent of the beneficial interest of Units subject to eligible holder mortgages, shall be required to add or amend any material provisions of the documents of the Condominium which establish, provide for, govern or regulate any of the following:

a.  Voting;

b.  Assessments, assessment liens or subordination of such liens;

c.  Reserves for maintenance, repair and replacement of the common areas;

d.  Insurance or fidelity bonds;

e.  Rights to use of the Common Elements;

f.  Responsibility for maintenance and repair of the several portions of the Condominium;

g.  Expansion or contraction of the Condominium or the addition, annexation or withdrawal of property to or from the Condominium;

h.  Boundaries of any Unit;

-30-

BOOK 2833 PG 0297

i.   The interests in the general or limited Common Elements;

j.   Convertibility of units into common areas or of common areas in units:

k.   Leasing of Units;

l.   Imposition of any right of first refusal or similar restriction on the right of a Unit Owner to sell, transfer, or otherwise convey his or her Unit;

m.   Any provisions which are for the express benefit of mortgage holders, eligible mortgage holders or eligible insurers or guarantors of first mortgages on Units.

The provisions of subparagraphs a through m do not apply to amendments or termination of the Condominium as a result of destruction, damage, or condemnation.

Section 2.  The Trust hereby created shall terminate only upon the removal of the Condominium from the provisions of Chapter 183A in accordance with the procedure therefor set forth in Section 19 of said Chapter.

Section 3.  Upon the termination of this Trust, the Trustees may, subject to and in accordance with the provisions of said Chapter 183A, sell and convert into money the whole of the trust property, or any part or parts thereof, and, after paying or retiring all known liabilities and obligations of the Trustees and providing for indemnity against any other outstanding liabilities and obligations, shall divide the proceeds thereof among, and distribute in kind, at valuations made by them which shall be conclusive, all other property then held by them in trust hereunder to the Unit Owners according to their respective percentages of beneficial interest, as shown in the Master Deed.  In making any sale under the

-31-

BOOK 2833 PAGE 0208

provisions of this Section 3, the Trustees shall have the power to sell or
vary any contract of sale and to resell without being answerable for loss,
and, for said purposes, to do all things, including the execution and
delivery of instruments, as may by their performance thereof be shown to
be in their judgment necessary or desirable in connection therewith.  The
powers of sale and all other powers herein given to the Trustees shall
continue as to all property at any time remaining in their hands or
ownership, even though all times herein fixed for distribution of trust
property may have passed.

ARTICLE VIII.

Sale of Units

Section 1.  No Severance of Ownership.  No Unit Owner shall execute
any deed, mortgage, or other instrument conveying or mortgaging title to
his Unit without including therein the Appurtenant Interests (as
hereinafter defined); it being the intention hereof to prevent any
severance of such combined ownership.  Any such deed, mortgage, or other
instrument purporting to affect one or more of such interest, without
including all such interests, shall be deemed and taken to include the
interest or interests so omitted, even though the latter shall not be
expressly mentioned or described therein.  No part of the Appurtenant
Interests of any Unit may be sold, transferred, or otherwise disposed of,
except as part of a sale, transfer, or other disposition of the Unit to
which such interests are appurtenant, or as part of a sale, transfer, or
other disposition of such part of the Appurtenant Interests of all Units.

"Appurtenant Interests", as used herein, shall include:  (i) the
undivided interest of Unit Owner in the Common Elements; (ii) the interest
of such Unit Owner in the Common Elements; (ii) the interest of such Unit

-32-

BOOK 2833 ▩ 0299

Owner in any Units theretofore acquired by the Trustees, or their designees, on behalf of all Unit Owners, or the proceeds of the sale or lease thereof, if any; (iii) the interest of such Unit Owner in any other assets of the Trust and (iv) exclusive rights of Unit Owners as provided in the Master Deed, if any.  Areas as to which Unit Owners have exclusive rights are sometimes referred to herein as Limited Common Elements.

Section 2:  Financing of Purchase of Units by Trustees.  With the prior approval of a majority in interest of the Unit Owners, the Trustees, by unanimous vote, may acquire Units of the Condominium.  Acquisition of Units by the Trustees may be made from any funds in the hands of the Trustees; or if such funds are insufficient, the Trustees may levy an assessment against each Unit Owner in proportion to his beneficial interest, as a common charge; or the Trustees, in their discretion, may borrow money to finance the acquisition of such Units, provided, however, that no financing may be secured by an encumbrance or hypothecation of any property other than the Units with Appurtenant Interests so to be acquired by the Trustees.

Section 3.  Waiver of Right of Partition.  In the event that a Unit shall be acquired by the Trustees, all Unit Owners shall be deemed to have waived all rights of partition with respect to such Unit or Units as are acquired by the Trustees.

Section 4.  Payments of Assessments.  No Unit Owner shall convey, mortgage, pledge, hypothecate, sell or lease his Unit unless and until he shall have paid in full to the Trustees all unpaid common charges theretofore assessed by the Trustees against his Unit and until he shall have satisfied all unpaid liens against such Unit.

ARTICLE IX

-33-

BOOK 2833 PG 0500

### Disputes

**Section 1.  Informal Resolution:**  Any Unit Owner aggrieved by any
decision or action of the Trust in the administration of the condominium
may, within thirty (30) days of the decision or action of the Trust, by
written notice, take either or both of the following steps:

A.  Request the acting body (Trustees or Unit Owner meeting) to
reconsider.  It is entirely within the discretion of the acting body
to reconsider or not, or if it does reconsider, whether to affirm or
charge its original decision or action;

B.  Request the acting body (Trustees or Unit Owners meeting) to enter
into a mediated discussion, with the mediator compensated by the
requesting party.  It is entirely within the discretion of the acting
body to accept mediation, or if it does accept, whether to affirm or
change its original decision or action.

In the event either request is not acted upon within 30 days of
being made, it shall be deemed denied.

**Section 2.  Formal Resolution:**  Any Unit Owner aggrieved by any
decision or action of the Trust in the administration of the Condominium
may, within thirty (30) days of the decision or action of the Trust, or of
the refusal to accept Informal Resolution, or of the result of Informal
Resolution, appoint an arbitrator who shall be a member of the American
Arbitration Association with not less than three (3) years' experience as
an arbitrator.  Within ten (10) days after notice of such appointment, the
Trust shall appoint another such arbitrator, and the two so chosen shall
within ten (10) days thereafter choose a third such arbitrator.  A
majority of such arbitrators shall be entitled to decide any such matter,
and their decision shall be rendered within thirty (30) days of the

-34-

BOOK 2833 PAGE 0301

appointment of the third arbitrator.  Such decision, subject to Chapter
251 of the General Laws of Massachusetts, as from time to time amended,
shall be final and conclusive on all persons.

## ARTICLE X

### Construction and Interpretation

In the construction hereof, whether or not so expressed, words used in
the singular or in the plural, respectively, include the plural singular;
words denoting males include females; and words denoting persons include
individuals, firms, associates, companies (joint, stock or otherwise),
trusts and corporations; unless a contrary intention is to be inferred
from or required by the subject matter or context.  The captions of
Articles and Sections are inserted only for convenience of reference and
are not to be taken to be any part hereof or to control or affect the
meaning, construction, interpretation, or effect hereof.

All of the trusts, powers, and provisions herein contained shall take
effect and be construed according to the laws of the Commonwealth of
Massachusetts.

## ARTICLE XI.

### Tenants

Any Unit Owner may lease, or rent, his Unit, subject however, to the
following conditions:

A.  Any lease, or occupancy agreement shall be in writing and shall
(i) be for a term of not less than thirty (30) days; and (ii) expressly
provide that the lease or occupancy agreement shall be subject in every
respect to the Master Deed of the Condominium, the By-Laws of the
Condominium Association, and the Rules and Regulations thereof, as the
same have been amended most recently prior to the execution of the lease,

-35-

BOOK 2833 0302

or occupancy agreement; and (iii) for Residential Units contain the
following notice, in capital letters, double spaced;

IMPORTANT CLAUSE

"THE BUILDING IN WHICH THE APARTMENT UNIT BEING LEASED (RENTED) UNDER
THIS LEASE (OCCUPANCY AGREEMENT) IS LOCATED IN A CONDOMINIUM BUILDING, NOT
A RENTAL APARTMENT HOUSE OR COMMERCIAL BLOCK.

IN A CONDOMINIUM BUILDING, NOT A RENTAL APARTMENT HOUSE, EACH
APARTMENT IS OWNED BY INDIVIDUAL OWNERS. THE TENANT UNDERSTANDS THAT HIS
OR HER NEIGHBORS IN THE BUILDING ARE TENANTS OF DIFFERENT OWNERS OR THOSE
OWNERS THEMSELVES. THE TENANT, BY SIGNING THIS LEASE (OCCUPANCY
AGREEMENT) ACKNOWLEDGES THAT HE OR SHE HAS BEEN FURNISHED WITH A COPY OF
THE MASTER DEED OF THE CONDOMINIUM, THE BY-LAWS OF THE CONDOMINIUM
ASSOCIATION AND THE RULES AND REGULATIONS THERETO, AND THAT HE OR SHE HAS
READ AND UNDERSTANDS THE SAME, AND THAT HE OR SHE WILL BE EXPECTED TO
COMPLY IN ALL RESPECTS WITH THE SAME, AND THAT IN THE EVENT OF ANY
NON-COMPLIANCE, THE TENANT MAY BE EVICTED BY THE TRUSTEES OF THE
CONDOMINIUM ASSOCIATION (WHO ARE ELECTED BY THE UNIT OWNERS) AND IN
ADDITION, THE TENANT MAY HAVE TO PAY FINES, PENALTIES AND OTHER CHARGES,
AND THAT THE PROVISIONS OF THIS CLAUSE TAKE PRECEDENCE OVER ANY OTHER
PROVISION OF THIS LEASE:" and (v) contain a true, accurate and complete
copy of this Article. XI, in addition to the foregoing notice; and (vi) be
expressly subject to all of the provisions of this Article.

B. Any failure by the tenant to comply in all respects with the
provision of the Master Deed of the Condominium, the By-Laws of the
Condominium Association and the Rules and Regulations thereto, shall
constitute a material default in the lease, or occupancy agreement, and in
the event of such default, the Trustees of the Condominium shall have the

-36-

BOOK 2833 ﬁﬂ 0303

following rights and remedies against both the Unit Owner and the tenant, in addition to all other rights and remedies which the Trustees and the Unit Owners (other than the Owner of the affected Unit) have or may in the future have, against both the Owner of the affected Unit and the tenant, all rights and remedies of the Trustees and the Unit Owners (other than the Owner of the affected Unit) being deemed at all times to be cumulative and not exclusive:

a) The Trustees shall have the right to give written notice of the default to both the tenant and the Unit Owner.  Said notice shall be deemed properly given if left in any part of the Unit addressed to the tenant, and mailed, postage prepaid, registered or certified mail, return receipt requested, addressed to the owner of the Unit as such address then appears on the records of the Trustees, or by delivering said notice in hand, or by delivering said notice in any other manner permitted by law.

b) If the default continues for five (5) days after the giving of said notice, then the Managing Board shall have the right to:  levy fines against the owner of the affected Unit in accordance with the provisions of Article V of these By-Laws, and terminate the tenancy by giving notice in writing to quit to the tenant in any manner permitted by law, in the name of the landlord (Unit Owner) or in the name of the Trustees, or both.  The time of such notice shall be sufficient if it is equal to one rent period or thirty (30) days, whichever is longer.  A copy of such notice to quit shall be delivered or mailed to the Landlord (Unit Owner) in the manner set forth hereinabove.  Thereafter, the Trustees may initiate and prosecute a Summary Process Action against the tenant under the provisions of General Laws, Chapter 239, in the name of the landlord, or in the name of the Trustees, or both

-37-

BOOK 2833 0304

c) The Trustees shall be entitled to levy a fine, or fines, or give a notice, or notices to quit followed by a Summary Process Action or Actions, and the Trustees' election to pursue any of the foregoing remedies shall in no way prohibit them from pursuing all of the foregoing remedies, either at the same time, or in the event of any further default.

d) All of the expenses of the Trustees in giving notices, and notices to quit, and maintaining and pursuing Summary Process Actions and any appeals therefrom, shall be entirely at the expense of the Owner of the affected Unit, and such costs and expenses may be enforced and collected against the Unit Owner and Unit as if the same were common charges owed by the Unit or the Unit Owner.

e) The Unit Owner shall make reasonable efforts, as his expense and upon his initiative to inform rental agents of the provisions of this Article XI, and shall, at his own expense, and upon his own initiative, furnish copies of the condominium documents to the tenant, and cause the lease or occupancy agreement to be prepared in conformity with the provisions of this Article.

f) A true, accurate and complete copy of the lease or occupancy agreement shall be delivered to the Trustees forthwith upon its execution.

g) The provision of this Article XI shall take precedence over any other section in the lease or occupancy agreement, (whether or not the provisions of this subsection are set forth in the lease or occupancy agreement).

h) Notwithstanding anything to the contrary herein, and notwithstanding any custom, law, or usage to the contrary, it is expressly understood and agreed that neither the Trustees, nor the Unit Owners (other than the owner of the affected Unit), shall ever bear any personal

-38-

BOOK 2833 ▮ 0305

or individual responsibility with respect to said lease or occupancy agreement.

i) All of the provisions of this Article XI shall be deemed to be automatically incorporated in every lease and occupancy agreement.

j) Notwithstanding anything to the contrary in this Article, it is expressly understood and agreed that the provision of this Article shall not apply to any first mortgagee in possession of a Unit following default by the Unit Owner in his mortgage, or holding title to a Unit by virtue of a mortgage foreclosure proceeding, or deed or other agreement in lieu of foreclosure.

### ARTICLE XII.

#### Miscellaneous

Section 1. <u>Notices to Mortgagees</u>. The Trustees will, upon written request of a mortgagee of any Unit, notify in writing said mortgagee of any default in the performance by the Unit Owner of any obligations under the Condominium documents which is not within sixty (60) days.

Upon written request to the Trustees as agents of the Trust, identifying the name and address of the holder, insurer or guarantor and the Unit number or address, any such eligible mortgage holder or eligible insurer or guarantor will be entitled to timely written notice of:

a) Any condemnation loss or any casualty loss which affects a material portion of the Condominium or any unit on which there is a first mortgage held, insured or guaranteed by such eligible mortgage holder or eligible insurer or guarantor, as applicable.

b) Any delinquency in the payment of assessments or charges owed by an owner of a Unit subject to a first mortgage held, insured or guaranteed by such eligible insurer or guarantor, which remains uncured

-39-

BOOK 2833 ▓ 0306

for a period of sixty (60) days.

c) Any lapse, cancellation or material modification of any insurance policy or fidelity bond maintained by the Association.

d) Any proposed action which would require the consent of a specified percentage of eligible mortgage holders as provided in this Trust.

Section 2. Professional Management. There shall be professional management of the Condominium beginning no later than June, 1987 unless there is an agreement to the contrary as hereinafter provided.

When professional management has been previously required by any eligible mortgage holder or eligible insurer or guarantor, whether such entity became an eligible mortgage holder or eligible insurer or guarantor at that time or later, any decision to establish self management by the Trust shall require the prior consent of owners of Units to which at least sixty-seven (67%) of the beneficial interest are allocated and the approval of eligible holders holding mortgages on Units which have at least fifty-one (51%) per cent of the beneficial interest in Units subject to the eligible holder mortgages.

Any agreement for professional management of the Condominium by anyone or any lease which binds the Association may not exceed three (3) years, and must provide for termination by either party without cause and without payment of a termination fee on ninety (90) days or less written notice.

Section 3. Votes of Mortgagees. Any restoration or repair of the Condominium after a partial condemnation or damage due to an insurable hazard, shall be performed substantially in accordance with the Master Deed and the original plans and specifications, unless other action is approved by eligible holders holding mortgages on Units which have at

-46-

BOOK 2833 0307

least sixty-seven (67%) per cent of the votes of Units subject to eligible holder mortgages.

Any election to terminate the legal status of the Condominium after substantial destruction or a substantial taking in condemnation of the Condominium must require the approval of eligible holders holding mortgages on unit estates which have at least sixty-seven (67%) per cent of the votes of Units subject to eligible holder mortgages.

No reallocation of interests in the common areas resulting from a partial condemnation or partial destruction of the Condominium may be effected without the prior approval of eligible holders holding mortgages on all remaining Units whether existing in whole or in part, and which have at least fifty-one (51%) per cent of the votes of such remaining Units subject to eligible holder mortgages.

Unless at least sixty-seven (67%) per cent of the first mortgagees (based upon one vote for each first mortgage owned), and at least sixty-seven (67%) per cent of the owners of the individual Condominium Units have given their prior written approval, the Trust shall not be entitled to:

a) By act or omission, seek to abandon or terminate the Condominium;

b) Change the pro rate interest or obligations of any individual Condominium Unit for the purpose of (i) levying assessments or charges or allocating distributions of hazard insurance proceeds or condemnation award; or (ii) determining the pro rate share of ownership of each Condominium Unit in the Common Elements;

c) Partition or subdivide any Condominium Unit;

d) By act or omission, seek to abandon, partition, subdivide,

-41-

BOOK 2833 PG 0308

encumber, sell or transfer the Common Elements. (The granting of easements for public utilities or for other public purposes consistent with the intended use of the Common Elements by the Condominium shall not be deemed a transfer within the meaning of this clause).

    e) Use hazard insurance proceeds for losses to any Condominium property (whether to units or to Common Elements) for other than repair, replacement or reconstruction of such Condominium property, except as provided by statute in case of substantial loss to the units and/or Common Elements of the Condominium.

    A mortgagee who receives a written request to approve additions or amendments who does not deliver or post to the requesting party a negative response within thirty (30) days shall be deemed to have approved such request.

    Section 4.  Priority of Liens.  All taxes, assessments, and charges which may become liens prior to a first mortgage on any Unit under local law shall relate only to the individual Condominium Units and not to the assessments or other charges, fees, fines or interest, which shall be subordinate to the lien of a first mortgagee of any Unit.

    No provision of this Declaration of Trust, Master Deed or Unit Deed or amendment thereto shall give a Unit Owner, or any other party, priority over any rights of the first mortgagee of the Condominium Unit, pursuant to its mortgage in the case of a distribution to such Unit Owner of insurance proceeds or condemnation awards for losses to or a taking of Condominium Units and/or Common Elements.

    Section 5.  Severability.  The invalidity of any provision of this Declaration of Trust (the "Trust") shall not be deemed to impair or affect the validity of the remainder of the Trust and in such event, all of the

-42-

BOOK 2833 PG 0309

other provisions of the Trust shall continue in full force and effect as
if such invalid provisions had never been included herein.

Section 6.  Explanation of Beneficial Interest.

A.  In this Condominium there are inter-related beneficial interests,
all specifically proportioned in the Master Deed:

1.  The over-all beneficial interest involves those matters
common to all seventeen Units, such as the real estate,
maintenance of the parking lot, signs on the street, etc.

2.  The main building beneficial interest involves those twelve
units in the main building and concerns itself with the costs of
operating, insuring and maintaining that building.

3.  The 369 Pleasant Street building interest involves only the
single unit located in that building and all of the costs of
operating, maintaining and insuring that building are borne by
that Unit alone.

4.  The residential beneficial interest which involves the eight
Units located on the upper two floors of the main building and
concerns any matter of interest only to or used only by the
residential Units.

5.  The commercial beneficial interest which involves the four
units located on the ground floor and basement of the main
building and the 369 Pleasant Street building, and concerns any
matter of interest only to or used by those Units.  The
commercial beneficial interest may, by majority vote of that
interest, form a Commercial Association for pursuit of common
commercial interests.

6.  If the Trust seeks to evict a tenant, the cost is an over-all

-43-

BOOK 2833 PG 0310

beneficial interest cost.

B. As used in this Trust document the beneficial interest referred to will be the over-all beneficial interest, unless the contrary clearly appears.

IN WITNESS WHEREOF, the said Trustee have hereunto set their hands and seals as of the day and year first above written.

. MICHAEL G. SISSMAN

Commonwealth of Massachusetts

Hampshire, ss.                                    10-24-86

Then personally appeared the above-named Michael G. Sissman and acknowledged the foregoing instrument to be his free act and deed, before me.

Joseph A. Wilhelm II

Notary Public

My commission expires: 3/31/89

-44-

BOOK 2833 PAGE 0311

SCHEDULE A
CONDOMINIUM TRUST
RULES AND REGULATIONS:
COMMON ELEMENTS

1.  No use shall be made of the Common Elements except as permitted by the Board of Trustees.

2.  There shall be no obstruction of the Common Elements nor shall anything be stored in the Common Elements without the prior consent of the Board of Trustees.

3.  Nothing shall be done or kept in the Common Elements which will increase the rate of insurance of the Condominium, or contents thereof, applicable for residential and commercial use, without the prior written consent of the Board of Trustees.  No Unit Owner shall permit anything to be done, or kept in the Common Elements which will result in the cancellation of insurance on the Condominium, or contents thereof, or which would be in violation of any law.  No waste shall be committed in the Common Elements.

4.  Unit Owners shall not cause or permit anything to be placed on the outside walls or doors of the Condominium, and no sign, awning, canopy, shutter, or radio or television antenna shall be affixed to or placed upon the exterior walls or doors, roofs, or any part thereof, or exposed on or at any window, except in the places provided for and as a direct adjunct to the commercial use of a unit, without the prior consent of the Board of Trustees.

5.  Residential Unit Owners will not be allowed to put their names on any Building or Common Element except in the proper places in or near the mailboxes provided for the use of the Unit occupied by the Unit Owners respectively.

6.  No offensive activity shall be carried on in the Common Elements, nor shall anything be done therein, either willfully or negligently, which may be or become an annoyance or nuisance to the other Unit Owners or occupants.  A number of Units are Commercial Units; the carrying on of a normal commercial activity will not constitute an offensive activity.

7.  No clothes, clotheslines, sheets, blankets, laundry, or any kind of other articles shall be hung out of a Unit or exposed on any part of the Common Elements.  The Common Elements shall be kept free and clear of all rubbish, debris, and other unsightly materials.

8.  Except in areas designated by the Board of Trustees, there shall be no parking of motor vehicles, playing, lounging, or parking of baby carriages or playpens, bicycles, wagons, toys, benches or chairs, on any part of the Common Elements, except that roads, parking areas and driveways may be used for their normal and intended purposes.

9.  "For Sale", "For Rent", "For Lease" signs or other window displays or advertising shall not be maintained or permitted in any Residential part of the Condominium or in any Unit therein.

-48-

BOOK 2833 ▮▮ 0312

10.  Nothing shall be altered or constructed in or removed from the Common Elements except upon the written consent of the Board of Trustees.

11.  The Common Elements shall not be decorated or furnished by any Unit Owner in any manner without the prior written consent of the Board of Trustees.

12.  The Board of Trustees shall maintain the Common Elements and all areas outside the boundaries of the Units which are granted exclusively to a Unit Owner.

13.  Except for air conditioning units, nothing shall be hung from the windows or placed upon the window sills.  The foregoing shall not, however, interfere with the right of Unit Owners to select draperies and curtains for their Units.  Rugs or mops shall not be shaken or hung from or on any of the windows or doors.  Garbage cans shall not be placed outside of any Unit.  Garbage and refuse from the Units shall be disposed of only at such times and in such manner as the Board of Trustees may direct.

14.  No washing or repairing of automobiles shall take place within the Condominium, nor shall driveways be used for any purpose other than to park motor vehicles and bicycles, without the prior written consent of the Board of Trustees.  No Unit Owner shall utilize more than two (2) parking spaces within the Condominium overnight, except on a space available basis, without the prior written consent of the Board of Trustees.

15.  If any key or keys are entrusted by a Unit Owner or occupant or by any member of his family, or by his agent, servant, employee, licensee, lessee or visitor, to an employee of the Board of Trustees, whether for such Unit or an automobile, trunk or other item of personal property, the acceptance of the key shall be at the sole risk of such Unit Owner or occupant, and the Board of Trustees shall not be liable for injury, loss or damage of any nature whatsoever directly or indirectly resulting therefrom or connected therewith.

16.  The use of the Common Elements, by Unit Owners, as well as the safety and maintenance of all personal proprety of the Unit Owners kept in such areas and in the Units themselves, shall be the responsibility and at the sole risk of the respective Unit Owners, and neither the Trustees, nor their respective agents, servants, employees, successors or assigns, shall bear any responsibility therefor.

17.  Each Unit Owner assumes responsibility for his own safety and that of his family, guests, agents, servants, employees, licensees, lessees, and tenants.

18.  Dumpsters or other refuse collection facilities shall be sited on the common areas in locations approved by the Trustees.  Units 1 through 12 shall have such a facility arranged by the Board of Managers, the cost being treated as a Residential Beneficial Interest cost (see Exhibit 3A of the Master Deed).  Each commercial unit must arrange for its refuse removal either separate from other commercial units or involuntary co-operation.

-46-

BOOK 2833 PAGE 0313

19.  Any consent or approval given under these Rules and Regulations may be added to, amended, or repealed at any time by the Board of Trustees, provided reasonable transition periods are allowed in case of revoked permission.

28.  These Rules and Regulations may be amended from time to time as provided in the Trust.

-47-

BOOK 2833 ▪ 0314

### SCHEDULE B
### CONDOMINIUM TRUST
### RESTRICTIONS ON THE USE OF THE UNITS

This Schedule B is incorporated into and made Section 13 of the By-Laws.

1. No Unit of the Condominium shall be used for any purpose forbidden by the Northampton Zoning Ordinance.

2. Each Unit Owner shall be obligated to maintain and keep in good order and repair his own Unit in accordance with the provisions of the Trust.

3. Customary house pets may be kept in any Unit, provided that such pets do not create a nuisance and that all dogs must be on a leash in the Common Elements. Breeding of pets shall not be permitted.

4. Nothing shall be done in any Unit which will impair the structural integrity of the buildings or which would structurally change the buildings without the prior written consent of the Board of Trustees. Any construction, alteration or remodeling work which affects the structure of any building and which is not otherwise prohibited by the Master Deed shall be undertaken by any Unit Owner (except only emergency repairs) only after written application to the Board of Trustees (specifying the nature and scope of the work in detail) and the written approval of the Trustees. Unit Owners may place air conditioning units in the windows of any Unit.

5. Each Unit Owner shall keep his Unit in good state of preservation and cleanliness and shall not sweep or throw or permit to be swept or thrown therefrom, or from the doors and windows thereof, any dirt or other substance.

6. All radio, television or other electrical equipment of any kind or nature installed or used in each Unit shall fully comply with all rules, regulations, requirements, or recommendations of the Board of Fire Underwriters and the public authorities having jurisdiction, and the Unit Owner alone shall be liable for any damage or injury caused by any radio, television, or other electrical equipment in such Unit.

7. The agents of the Board of Trustees or the managing agent, and any contractor or workman authorized by the Board of Trustees or the managing agent, may enter any room or Unit in the buildings at any reasonable hour of the day after notification and at a time that will not unreasonably interfere with business (except in case of emergency) for the purpose of inspecting such Unit and for the purpose of performing work.

8. No Unit Owner or occupant or any of his agents, servants, employees, licensees, lessees, or visitors shall at any time bring into or keep in his Unit any flammable, combustible or explosive fluid, material, chemical, or substance, except such lighting and cleaning fluids as are customary, or such items as are the normal materials used in the commercial activity conducted in a Commercial Unit.

-48-

BOOK 2833 PAGE 0315

9. The Board of Trustees, or its designated agent, may retain a pass key to each Unit. No Unit Owner shall alter any lock or install a new lock or a knocker on any door of a Unit without the written consent of the Board of Trustees. In case such consent is given, the Unit Owner shall provide the Board of Trustees, or its agent, with an additional key pursuant to its rights of access to the Unit.

10. The use of the Units by Unit Owners, or any occupant or any member of his family, or his agent, servant, employee, licensee, lessee or visitor, as well as the safety and maintenance of all personal property of the Unit Owners kept in such areas and in the Units themselves, shall be the responsibility and at the sole risk of the respective Unit Owners, and neither the Trustees, the Seller, nor their respective agents, servants, employees, successors or assigns, shall bear any responsibility therefor.

11. Each Unit Owner assumes responsibility for his own safety and that of his family, guests, agents, servants, employees, licensees, lessees or visitors.

12. No Unit shall be used as a beauty salon, restaurant, liquor establishment, or fast food outlet.

13. Only one commercial establishment of any one type will be permitted. This means that the principal service or type of item being offered by one commercial Unit's activity cannot be offered by another Unit's, unless written agreement by both Unit Owners is presented to the Board of Managers for making any alterations to the premises for purposes of a change of use.

14. Prior to opening for business, or changing the business, every commercial activity, wherever located in the Condominium property, will submit a written resume of the business to be conducted to the Board of Managers. A committee of the Board consisting of the two members elected by the Commercial Units and the one member elected by all Units, will notify the other commercial Unit Owners and hold a hearing. If the committee affirmatively by two affirmative votes, approves of the proposed use, the ruling is final and reapplication cannot be made for two years.

15. Residential Units on the top two floors of the main building may be used for any purpose allowed by the zoning ordinances and rules of the City of Northampton, provided however, that the use of such a unit for business purposes, even if secondary to residential use, shall require approval under paragraph 14 above.

16. No Unit Owner shall make or permit any disturbing noises by himself, his family, servants, employees, agents, visitors, lessees, and licensees, nor do or permit anything by such persons that will interfere with the rights, comforts or convenience of other Unit Owners. Nothing in this paragraph will be construed to limit the normal operation of retail stores, including music stores.

17. The agents of the Board of Trustees or the managing agent, and any contractor or workman authorized by the Board of Trustees or the managing agent, may enter any room or Unit in the buildings at any reasonable hour of the day after notification and at a time that will not unreasonable interfere with business (except in case of emergency) for the purpose of inspecting such Unit and for the purposes of performing work.

-49-

BOOK 2833 ■ 0316

SCHEDULE C
INDEX
(For ready reference only, the text of the Trust governs)

ARTICLE I.  Name of Trust.

ARTICLE II.  The Trust and Its Purpose.
    Section 1.  Purpose.
    Section 2.  Trust, Not Partnership.

ARTICLE III.  The Trustees.
    Section 1.  Original Board, Successors, Vacancy.
    Section 2.  Majority Vote.
    Section 3.  Resignation.
    Section 4.  Bond.
    Section 5.  Good Faith Rule.
    Section 6.  Self Dealing.
    Section 7.  Indemnifications.
    Section 8.  Trust Officers.
    Section 9.  Compensation.

ARTICLE IV.  Beneficiaries and the Beneficial Interest in Trust.
    Section 1.  Definition.
    Section 2.  Interest Held as a Unit.
    Section 3.  Unit Owner Voting.

ARTICLE V.  By-Laws.
    Section 1.  Powers and Duties of Trustees.
    Section 2.  Common Expenses, Profit and Funds.
        A.  Charges.
        B.  Budget, Late Fees.
        C.  Use.
        D.  Default.
    Section 3.  Insurance.
    Section 4.  Rebuilding and Restoration; Improvements; Condemnation.
        A.  Casualty Loss.
        B.  Improvement.
        C.  Condemnation.
        D.  Awards.
    Section 5.  Restriction on Use of Building and Units:  Rules and
    Regulations.
    Section 6.  Meetings.
        A.  Board of Trustees.
        B.  Unit Owners.
    Section 7.  Notices to Unit Owners.
    Section 8.  Inspection of Books, Reports to Unit Owners.
    Section 9.  Checks, Notes, Drafts.
    Section 10.  Seal.
    Section 11.  Fiscal Year.
    Section 12.  Maintenance of Units.

ARTICLE VI.  Rights and Obligations of Third Parties in Dealing with the
Trustees; the Trustees; Limitation of Liability.
    Section 1.  Third Parties.
    Section 2.  Trustees as Agents, not Principals.
                            -50-

BOOK 2833 0317

Section 3. Agreements Subject to Trust.
Section 4. Conclusive Evidence.

ARTICLE VII. Amendments and Termination.
    Section 1. Amendment.
    Section 2. Termination.
    Section 3. Dissolution.

ARTICLE VIII. Sale of Units.
    Section 1. No Severance of Ownership.
    Section 2. Financing Purchase of Units by Trustees.
    Section 3. Waiver of Right of Partition.
    Section 4. Payment of Assessments.

ARTICLE IX. Disputes.
    Section 1. Informal Resolution.
    Section 2. Formal Resolution.

ARTICLE X. Construction and Interpretation.

ARTICLE XI. Tenants. .

ARTICLE XII. Miscellaneous.

    Section 1. Notices to Mortgagees.
    Section 2. Professional Management.
    Section 3. Votes of Mortgagees.
    Section 4. Priority of Liens.
    Section 5. Severability.
    Section 6. Explanation of Beneficial Interest.

Hampshire ss.
Oct. 24 1986 at 1 o'clock and 41 minutes P. M. Rec'd, ent'd and exam'd with Hampshire Reg. of Deeds, Book 2833 Page 267

Attest _____
REGISTER

-51-