UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLLEEN A. CLOUTIER ) <br> and DONALD L. CLOUTIER, ) <br> Plaintiffs ) <br> ) <br> v. ) <br> ) <br> ) <br> TRUSTEES OF MILBANK PLACE ) <br> CONDOMINIUM TRUST; HAMPSHIRE ) <br> PROPERTY MANAGEMENT GROUP, ) <br> INC.; and MARCUS, ERRICO, EMMER ) <br> & BROOKS, P.C., ) <br> Defendants ) | Civil Action No. 05-30093-KPN |

<u>MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS
COUNTS I, III-VI AND VIII OF PLAINTIFFS' COMPLAINT (Document No. 2)</u>
December 15, 2005

NEIMAN, U.S.M.J.

Colleen and Donald Cloutier ("Plaintiffs"), former owners of a condominium unit in Northampton, Massachusetts, bring this eight-count action against (1) the condominium trustees (Trustees of Millbank Place Condominium Trust, hereinafter "the Trustees"), (2) the property manager of the complex (Hampshire Property Management Group, Inc., hereinafter "Hampshire Property"), and (3) the Trustees' former law firm (Marcus, Errico, Emmer & Brooks, P.C., hereinafter "the Law Firm") (collectively "Defendants").  Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants have moved to dismiss six of the counts and the parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons indicated below, the court will

allow Defendants' motion in part.

## I. BACKGROUND

Most of the following allegations come directly from Plaintiffs' complaint and are stated in a light most favorable to them. *See Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992). To give a complete picture, however, the court has also considered documents attached to the complaint or specifically relied upon therein. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (noting that such documents may be properly considered on a Rule 12(b)(6) motion).

Until recently, Plaintiffs owned, and rented out, one of the condominium's units. (See Complaint ¶¶ 5, 19, 32.) On or about October 18, 2002, Plaintiffs requested that the Trustees repair a skylight "window" in their unit which had leaked and caused water damage. (*Id.* ¶¶ 12-14.) On October 30, 2002, Hampshire Property indicated to Plaintiffs that the Trustees' responsibility for repairs was uncertain. (*Id.* ¶ 13.) Thus, it did not perform any work on the window.

Plaintiffs contend that the Trustees' responsibility for the repairs derived from the Master Deed, a document signed "under seal" in 1986. (*Id.*, Ex. A.) As Plaintiffs point out, the Master Deed lists as "common elements" the following: "The foundations, structural members, beams, supports, exterior walls, exterior doors, *frames for the exterior windows* and doors leading from Units common areas, *roof* and entrances and exits of the Building, common walls within the Building, and structural walls or other structural components contained entirely within any Unit." (*Id.* ¶ 6(B)(i) (emphasis

added).)  The Master Deed also provides, however, that "[t]he glass in windows of the Units are not Common Elements."  (*Id*. ¶ 6(D).)

Because the repairs had not been made, Plaintiffs' tenants withheld their rent. (Complaint ¶ 19.)  Accordingly, on December 27, 2002, Hampshire Property demanded that Plaintiffs' tenants make further rent payments.  (*Id*. ¶ 15.)  A second demand was made, this time by the Law Firm, on March 25, 2003.  (*Id*. ¶ 16.)  The tenants made a partial rent payment ($310 out of $1,200) in April of 2003, but paid nothing further.  (*Id*. ¶¶ 17-18.)  As a result, the Trustees demanded that Plaintiffs pay late fees of $10 per month and compounded monthly the accrued balance.  (See *id*. ¶¶ 34-35.)  The tenants vacated the unit in September of 2003.  (*Id*. ¶ 17.)

Claiming they were unable to continue renting the unit, Plaintiffs put it up for sale in November of 2003.  (*Id*. ¶¶ 20-21.)  By November 17th, they had signed a purchase and sale agreement with a prospective buyer which was conditioned on the Trustees having remedied, or having a plan to repair, the leak.  (*Id*. ¶ 22.)  The buyer was prepared to close as early as January 28, 2004, but the closing date was moved to April 23, 2004, due, Plaintiffs assert, to Defendants' further delay.  (*Id*. ¶¶ 23-28.)

On March 10, 2004, the Trustees attempted to repair the skylight windows.  (*Id*. ¶ 27.)[1]  However, during a "walk through" on April 22nd, the windows were leaking water and the closing had to be postponed once again, allegedly causing Plaintiffs to suffer further damages.  (*Id*. ¶¶ 28, 29.)  The windows were finally repaired on May 18,

---

[1] March 10th is also the date, Plaintiffs claim, that the law firm first gave them a written accounting as to the outstanding rent allegedly owed by their former tenants. (*Id*. ¶¶ 24-25.)

2004, and the unit was sold the next day. (*Id.* ¶¶ 30, 32.)

Plaintiff filed their complaint in state court on March 24, 2005, and Defendants removed it to federal court on May 9, 2005. The complaint contains eight causes of action. Count I alleges breach of contract, to wit, the Master Deed. Count II alleges negligence. Count III alleges breach of implied warranty. Count IV alleges breach of express warranty. Count V alleges breach of fiduciary duty. Count VI alleges that the monthly compounding of the late fees violated Mass. Gen. L. ch. 271, § 49, the state usury statute. Count VII alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Count VIII alleges violations of Mass. Gen. L. ch. 93A ("chapter 93A").

With the possible exception of the usury claim, Counts I through VI target only the Trustees, Count VII (the FDCPA claim) is directed at Hampshire Property as "the agent of the Trustees," and Count VIII (the chapter 93A claim) targets all three defendants. In due course, Defendants filed the instant motion dismiss, Plaintiffs tendered an opposition, and the court heard oral argument.

II.  DISCUSSION

Defendants' motion seeks to dismiss all but the negligence and FDCPA claims, *i.e.*, Counts I, III-VI and VIII. Defendants address each of these challenged counts in turn. The court will do likewise. In the end, the court will allow Defendants' motion with respect to Counts I, III, IV, and part of Count VIII. The remainder of Defendants' motion, however, will be denied.

A. Breach of Contract (Count I)

Count I alleges that the Master Deed is a contract which the Trustees breached "by failing to maintain, repair and . . . replace the Common Elements." (Complaint at 43.) Defendants argue that any obligations contained in the Master Deed are not contractual in nature, but are instead covenants running with the land. Therefore, Defendants assert, Count I fails to state a breach of contract claim upon which relief may be granted. For its part, the court agrees with Defendants that Count I ought to be dismissed, but for reasons somewhat different than those Defendants proffer.

Unlike Defendants, the court is not prepared to state that a condominium master deed can *never* be the subject of a breach of contract claim. To be sure, there is persuasive caselaw supporting Defendants' position, *i.e.*, that a master deed is not a contract "but a covenant running with the land, an equitable restriction with its roots not in contract law but in real property law." *Beeter v. Tri-City Property Mgmt. Servs., Inc.*, 173 B.R. 108, 114 (Bankr. W.D. Tex. 1994) (citing *In re Raymond*, 129 B.R. 354, 358 (Bankr. S.D.N.Y. 1991)). *Cf. Trustees of MacIntosh Condo. Ass'n v. Fed. Deposit Ins. Corp.*, 908 F. Supp. 58, 63 (D. Mass. 1995) (wherein this court noted distinctions between condominium master deeds and notices of contract establishing mechanics lien). As Plaintiffs observe, however, the Massachusetts Appeals Court has considered master deeds to be subject to the twenty-year limitations period for "[a]ctions upon *contracts* under seal," Mass. Gen. L. ch. 260, § 1 (emphasis added). *Locke v. Spaulding*, 512 N.E.2d 1145, 1146 (Mass. App. Ct. 1987). More recently, Superior Court Judge John C. Cratsley applied the twenty-year period, as well as black-letter principles of contract interpretation, to an action alleging breach of a master deed.

*Flag Wharf, Inc. v. Hickney*, 18 Mass. L. Rptr. 275, 2004 WL 2341334, at **3-5 (Mass. Super. Ct. Aug. 2, 2004).

The court need not address as a general proposition whether a master deed constitutes a breachable contract, interesting as the question may be. In the instant case, the Trustees' purported obligation to maintain, repair and replace the condominium's common elements does not flow from the Master Deed. A close reading of the paragraphs Plaintiffs cite reveal that the words "maintain," "repair" and "replace" are used only in the context of describing the Trustees' right of access to the interior of individual units. (See Complaint, Ex. A ¶¶ 6, 14.) In short, Plaintiffs' argument to the contrary, the Master Deed does not specify any duty on the Trustees' part to maintain, repair or replace the common elements.

To be sure, certain of the Trustees' obligations with regard to common areas are contained in the Declaration of Trust (which Plaintiffs recently attached to a supplemental memorandum addressing Count V, their breach of fiduciary duty cause of action). But Plaintiffs' breach of contract claim is not based on that document. Insofar as the Master Deed contains no contractual duty for which a breach by the Trustees may be claimed here, Plaintiffs' breach of contract claim cannot survive. *See* 14 Howard J. Alperin & Lawrence D. Shubow, *Massachusetts Practice Series* § 7.81 (3d ed. 2005) (observing that breach of contract can exist only where there is "a duty which is due under the contract") (citing, *inter alia*, *Realty Developing Co. v. Wakefield Ready-Mixed Concrete Co.*, 100 N.E.2d 28, 30 (Mass. 1951)). Accordingly, Defendants' motion with respect to Count I will be allowed.

B. <u>Breach of Implied and Express Warranties of Habitability (Counts III and IV)</u>

Defendants next assert that Plaintiffs' "warranty of habitability" claims, Counts III and IV, cannot survive for a number of reasons.[2] Defendants first argue that Plaintiffs, as owners of *a single unit*, may only sue the *builder-vendor* for habitability violations and then only within the appropriate limitation or repose period. *See Berish v. Bornstein*, 770 N.E.2d 961, 972 (Mass. 2002). Only the *organization of unit owners*, Defendants continue, has standing to sue for *common area* habitability violations, *see* Mass. Gen. L. ch. 183A, § 10(b)(4), but Plaintiffs are not attempting to sue on the organization's behalf. Finally, Defendants argue that, in any event, the Trustees cannot be liable for habitability claims because they were never Plaintiffs' "landlord."

In response, Plaintiffs assert that they may bring a claim for breach of the warranty of habitability against the Trustees in light of *McEneaney v. Chestnut Hill Realty Corp.*, 650 N.E.2d 93 (Mass. App. Ct. 1995). Although Plaintiffs concede that *McEneaney* involved nuisance and breach of fiduciary duty claims, they nonetheless rely on the court's observation there that condominium trustees "are subject to suit as to any cause of action involving the common areas." *Id.* at 97 (citing Mass. Gen. L. ch. 183A, § 10(b)(4)). "To hold otherwise," the court continued, " would leave a unit owner powerless (except to the extent of his ability to influence or persuade the trustees or the condominium membership)." *Id.*

In this court's view, Defendants have the better argument. While *McEneaney*

---

[2] Although Counts III and IV do not identify the type of warranty (or warranties) at issue, the parties discuss Counts III and IV as alleging violations of the purported warranty of *habitability*. The court does likewise.

does use broad language, it can be read to apply only to nuisance and breach of fiduciary claims. *See id.* at 577-79. To be sure, Plaintiffs asserted at oral argument that Counts III and IV have the "wrong title" and are more akin to "nuisance" claims. But the court must address the claims as presented in the complaint, *i.e.*, as alleged warranty breaches. As Plaintiffs must concede, warranty of habitability claims spring from the rental agreement between a landlord and a tenant. *See* Mass. Gen. L. ch. 186, § 14; *Boston Hous. Auth. v. Hemingway*, 293 N.E.2d 831, 842-43 (Mass. 1973) (describing contractual nature of landlord-tenant relationship as basis for warranty of habitability claims). Therefore, such claims are precluded in the factual scenario presented here. *See Frisch v. Bellmarc Mgmt., Inc.*, 597 N.Y.S.2d 962 (N.Y. App. Div. 1993) (holding, after extended discussion, that warranties of habitability do not run from condominium association to individual unit owners). *See also Moshyedi v. Council of Unit Owners*, 752 A.2d 279, 286 n.2 (Md. App. 2000), *and Agassiz W. Condo. Ass'n v. Solum*, 527 N.W.2d 244, 247 (N.D. 1995) (both applying *Frisch*). *But see* Note, *The Next Step in the Evolution of the Implied Warranty of Habitability: Applying the Warranty to Condominiums*, 67 Fordham L. Rev. 3041 (1999) (arguing that habitability claims should be available to condominium owners). Accordingly, Defendants' motion with respect to Counts III and IV will be allowed.

C. <u>Breach of Fiduciary Duty (Count V)</u>

In Count V, Plaintiffs assert that the Trustees breached their fiduciary duties to make repairs and to account for rents. As with the warranty causes of action, Defendants argue that Plaintiffs have no standing to make such a claim. For their part,

8

Plaintiffs again rely on *McEneaney* which, as indicated, refused to dismiss a breach of fiduciary duty cause of action by a condominium unit owner against his trustees. *Id.*, 650 N.E.2d at 98.

In this instance, Plaintiffs' reliance on *McEneaney* is more on target. True, in allowing the breach of fiduciary duty claim to proceed against the condominium's trustees, the court in *McEneaney* declined to define the exact duties owed by the trustees to the unit owners. *See id.* Nonetheless, the court at least implied that such duties might be grounded in "the condominium trust agreement, the master deed, or the condominium by-laws," none of which were before the court. *Id. See also Lilley v. Rich*, 545 N.E.2d 622, 622-23 (Mass. App. Ct. 1989) (duty owed by condominium trustees to unit owners measured by duty defined in condominium trust agreement).

Here, as noted, the court has before it the Declaration of Trust. While it may be premature to dissect that document -- since it is not referred to in the complaint, *see Young v. Lepone*, 305 F.3d 1, 10-11 (1st Cir. 2002) ("The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint.") -- a variety of duties and other obligations owed by the Trustees to unit owners are clearly set forth therein. And, unlike the breach of contract claim, which is based solely on the Master Deed, Plaintiffs' fiduciary duty claim is broadly grounded in the "relationship of the parties." (Complaint ¶ 62.) Plaintiffs are entitled to flesh out this theory. *See Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 216 (1st Cir. 2000) ("[T]he notice pleading permitted by the federal rules requires only a short and plain statement of the claim that will give the defendant fair notice of

9

what the plaintiff's claim is and the grounds upon which it rests."). Accordingly, Defendants' motion with respect to Count V will be denied.[3]

D. Usury (Count VI)

Although the usury claim appears to target only the Trustees, one paragraph in Plaintiffs' chapter 93A claim (Count VIII) alleges that all three defendants have violated the state usury statute, Mass. Gen. L. ch. 271, § 49. (Complaint ¶ 78.) Accordingly, the court will consider Count VI as applying to all three Defendants. In the end, however, the court concludes that Count VI fails to state a claim upon which relief may be granted.

According to the complaint, the act of "compounding the late charges each month for each late monthly condominium charge . . . is punitive in nature." (Complaint ¶ 67.) As the late charges exceed twenty percent annual interest, Plaintiffs allege, they are usurious and in violation of Mass. Gen. L. 271, § 49. (*Id.* ¶ 68.) That statute, in pertinent part, provides as follows:

> (a) Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury . . . .

*Id.,* § 49(a). Although it is a criminal statute, "the person to whom the loan was made"

---

[3] Defendants also contend that Count V fails to comply with Mass. R. Civ. P. 23.1, which describes certain procedures for derivative actions by shareholders. The state rules of procedure, however, do not apply to this case and, in any event, Plaintiffs are not pursuing Count V as a derivative action, but as an action by individual unit owners under the authority of *McEneaney.*

10

can seek an equitable remedy for the statute's violation in a civil enforcement proceeding. *Id.*, § 49(c). *See Clean Harbors, Inc. v. John Hancock Life Ins. Co.*, 833 N.E.2d 611, 625 (Mass. App. Ct. 2005).

As Defendants argue, the usury statute does not apply because this action does not involve a "loan of money or other property." As the court observed in *Peck v. Coffman*, 3 Mass. L. Rptr. 697, 1995 WL 809892 (Mass. Super. Ct. June 19, 1995), "[t]he usury statute, by its own language, does not apply to transactions other than loans of money or property." *Id.* at *3. Since late fees assessed against a condominium unit owner by the trustees "do not arise out of a loan of money or property," the court held, "the fees are not rendered unlawful by the usury statute." *Id. See also Allegheny Int'l Credit Corp. v. Bio-Energy of Lincoln, Inc.*, 485 N.E.2d 965, 971 (Mass. App. Ct. 1985) (opining that usury statute does not apply to lease transaction that does not qualify as a loan). Plaintiffs' attempt to distinguish *Peck* as involving only one late charge per month falls short. Accordingly, Defendants' motion with respect to Count VI will be allowed.

E.  Chapter 93A (Count VIII)

Plaintiffs' chapter 93A claim alleges that Defendants have engaged in a variety of unfair or deceptive acts or practices. *See* Mass. Gen. L. ch. 93A, §§ 2, 9. Plaintiffs' claim, however, cannot be based on the breach of contract, breach of warranty, and usury causes of action which the court is dismissing this day for failing to state claims upon which relief may be granted. In those limited respects, therefore, the chapter 93A claim will be dismissed.

The court, however, will not dismiss the chapter 93A claim in its entirety. For one thing, the claim also alleges that Hampshire Property and the Law Firm -- as the Trustees' agent -- violated several of Massachusetts' debt collection regulations, breach of which constitutes "unfair" and/or "deceptive acts or practices" within the meaning of chapter 93A. See 940 C.M.R. §§ 7.04, 7.07 (2005). Moreover, as indicated, there continues to exist an as yet unchallenged violation by Hampshire Property of the FDCPA (Count VII), a transgression which could constitute a *per se* violation of chapter 93A. See *Martin v. Sands*, 62 F. Supp.2d 196, 201 (D. Mass. 1999); *Pettway v. Harmon Law Offices, P.C.*, 2005 WL 2365331, at *6 n.11 (D. Mass. Sep. 27, 2005).

Finally, Plaintiffs have cited at least one Massachusetts decision factually similar to the case at bar in which the court refused to dismiss a chapter 93A claim brought by a condominium unit owner against his trustees. See *Kurker v. Malloy*, 1994 WL 879878, *2 (Mass. Sup. Ct. June 27, 1994). True, the court there conceded that the dispute likely failed to meet the "trade or commerce" requirement. See *id*.[4] Nonetheless, the court observed that the plaintiff's chapter 93A allegations were also

---

[4] According to chapter 93A, the challenged acts or practices must occur "in the conduct of any trade or commerce." Mass. Gen. L. ch. 93A, § 2. As Defendants point out, if a chapter 93A claim "arises . . . from the private relationship between the trustees and the plaintiffs as condominium owners," the transactions "are principally private in nature [and] do not fall within the purview of [chapter] 93A." *Office One, Inc. v. Lopez*, 769 N.E.2d 749, 759 (Mass. 2002) (citations and internal quotation marks omitted). Plaintiffs concede the point. (See Plaintiffs' Brief at 10 (acknowledging that "disputes between an individual unit owner and a trustee association are generally private in nature, and therefore barred by [chapter] 93A for failing to meet the 'trade or commerce' requirement").)

premised on actions by the trustees' agent, a management company, and its employee. *Id.* "Where, as here," the court explained, "the plaintiff alleges either an agency theory of liability or a vicarious liability theory, his or her chapter 93A claim is not barred." *Id.* (citing *Greenstein v. Flatley*, 474 N.E.2d 1130 (1985)).  Considering the nascency of the instant action, that appears to be an appropriate conclusion here as well. Accordingly, except as specifically noted above, Defendants' motion with respect to Count VIII will be denied.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is ALLOWED with respect to Counts I, III, IV and VI.  Defendants' motion is also ALLOWED with respect to Count VIII, but only insofar as that claim is based on the breach of contract, breach of warranty, and usury causes of action which this court is dismissing this day for failing to state claims upon which relief may be granted.  In all other respects, Defendants' motion is DENIED.  As a result, all that remain are Counts II, V and VII, as well as Count VIII (as limited above).  The clerk shall set the matter down for a Rule 16 scheduling conference.

DATED: December 15, 2005

                                             /s/ Kenneth P. Neiman
                                             KENNETH P. NEIMAN
                                             U.S. Magistrate Judge